**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MYCHOICE, LLC, | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. _____ |
| v. | ) |
| TAIV, INC. | ) |
| | ) **JURY TRIAL DEMANDED** |
|     Defendant. | ) |

## COMPLAINT

Plaintiff MyChoice, LLC, for its complaint against Defendant Taiv, Inc., hereby states and alleges as follows:

### Nature of the Action

1. This is an action for patent infringement. MyChoice, LLC is the owner of U.S. Patent No. 10,708,658 (the "'658 Patent") entitled "Video Viewing Experience Enhanced Through Custom Curation," which duly issued on July 7, 2020, to inventor Richard Theriault. A true and correct copy of the '658 Patent is attached hereto as Exhibit "A". Taiv, Inc. has made, used, offered for sale, sold, and imported in the United States products that infringe the '658 Patent, and it has induced and contributed to its customers' infringement of that patent.

### The Parties

2. MyChoice, LLC ("MyChoice") is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts and has a principal place of business at 5 Brooks Hill Road, Lincoln, Massachusetts 01773. Its Managing Member is Mr. Richard Theriault. Mr. Theriault assigned the '658 Patent to MyChoice, including without

limitation, all rights to enforce and collect damages and remedies for infringement of the '658 Patent.

3.  Taiv, Inc. ("Taiv") is a corporation organized and existing under the laws of the Province of Manitoba, Canada and has a principal place of business at 195 McPhillips Street, Winnipeg, Province of Manitoba, Canada.

## Jurisdiction and Venue

4.  This Court has subject matter jurisdiction pursuant to 35 U.S.C. §§ 1331 and 1338(a), as this action arises under the Acts of Congress relating to patents, namely, 35 U.S.C. §§ 271, 281-285.  This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the action is between a citizen of the United States and an alien, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

5.  This Court has personal jurisdiction over Taiv pursuant to the Long-Arm Statute of the State of Texas, Tex. Civ. Prac. & Rem. Code § 17.042.  As explained in more detail below, Taiv's business consists of a hardware/software system that allows bars and restaurants, almost all of which now have continuously operating TV screens viewable by their customers, to swap out network TV ads on those TV screens for ads from Taiv's network of advertisers (Taiv's "Custom Content Replacement System"). Taiv has employed and/or contracted with individuals in Texas to install, service, and maintain its Custom Content Replacement Systems throughout the state of Texas, including in this District, and likewise contracted with its customers in Texas regarding their use of the hardware, software, and services provided in connection with such systems.

6.  At least as early as 2022, Taiv began promoting and selling its Customer Content Replacement System to bars, restaurants, and other businesses in Texas.  Taiv's sales team went door to door to sports bars and restaurants seeking to interest them in Taiv's offering.  By April 2023, Taiv entered into contracts with the owners or managers of at least 67 sports bars and

restaurants in Texas. By way of example, those contracts provide that Taiv would install and maintain its hardware/software at their sports bar or restaurant in Texas and then pay them at their location in Texas. Again, these contracts called for Taiv's performance at the location of the sports bar or restaurant in Texas; performance could not as a practical matter take place at any other location. Taiv maintained ownership of all the hardware, software, and "all intellectual property right" included in its Custom Content Replacement System installed at its customer's locations in Texas. Taiv also agreed to provide free customer support including "on-site service" for any issues related to its hardware or software that it installed at its customers' locations in Texas.

7. On information and belief, Taiv is now operating out of more than 130 sports bars and restaurants located in Texas. Taiv's contracts with its customers in Texas provide that the contracts will "stay in effect until terminated." Such contracts are sometimes known as "evergreen" contracts; they are perpetual unless affirmatively terminated. By such contracts, Taiv seeks to and does establish long-term business relationships with its sports bar and restaurant customers located in Texas. According to Taiv's web site, 99.7% of Taiv's customers have remained its customers. At each of the 130 or more locations in Texas where Taiv owns and operates its Custom Content Replacement System, it directly infringes the '658 Patent, and induces and contributes to the infringement of that patent by its customers. Thus, Taiv is systematically and continuously committing torts in the State of Texas, including in this District.

8. In addition, Taiv's current web site is highly interactive. It exists on the world-wide-web and is available in the State of Texas at the web address of https://www.taiv.tv. On its web site it now offers a case study of the success of its relationship with its customer known as "Texas Lone-Star Taco" located in Houston, Texas. On its web site, Taiv also markets its services and provides that potential customers may contact it directly to make inquiries. The web site

states: "GET STARTED Interested? Let's chat We'll reach out within 1 business day Full Name Email Address Phone Number Business Name Business Address." Its web site provides a sample address filling in these blanks of "1234 Main Street, New York NY 12345." Based on its web site, once a potential customer in Texas contacts Taiv's headquarters in Canada, one or more of Taiv's salespeople and/or executives then arranges to contact that potential customer in Texas. If such contact results in an agreement: (1) the new customer located in Texas signs its contract with Taiv in Texas; (2) Taiv agrees to and does perform all the installation of its hardware/software equipment at the customer's location in Texas; (3) Taiv arranges to perform all on-site service at the customer's location in Texas; and (4) Taiv pays that customer at its location in Texas.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c)(3) as acts of infringement occurred in this District and Taiv is not a resident of the United States and therefore venue is proper in any judicial district of the United States. Section 1400(b) of Title 28 does not govern venue determination as to foreign defendants in a patent infringement action. *Brunette v. Mach. Works, Ltd. v. Kockum Indus., Inc.* 406 U.S. 706 (1972)

**Factual Background**

10. MyChoice is a privately held media technology company.

11. Through many years of research and trial and error, Mr. Theriault developed groundbreaking technology in the form of a system and method for replacing undesirable content in a media stream that provides viewers with an individualized viewing experience ("Individualized Content Replacement").

12. The details of this Individualized Content Replacement system and method include the following: (1) this system allows a television user who subscribes to the system to avoid viewing commercials by use of an on-site hardware and software component ultimately connected to a control unit that retrieves real-time viewable content and applies logic to switch from a

4

commercial to other preferred viewable content; and (2) the commercial-skipping function is available for both commercial and private home use by businesses that feature television viewing on site, typically consisting of sports entertainment.

13. Mr. Theriault filed a patent application to protect his valuable Individualized Content Replacement technology with a patent. The U.S. Patent and Trademark Office awarded Mr. Theriault a patent covering various aspects of his Individualized Content Replacement technology, specifically, the '658 Patent.

14. MyChoice has communicated with Taiv regarding its infringing Custom Content Replacement System. Taiv has actual knowledge of MyChoice's '658 Patent and its applicability to Taiv's products and methods.

15. For example, on or about August 4, 2022, Mr. Theriault sent a Linked-In communication to Mr. Noah Palansky, Taiv's CEO, detailing MyChoice's technology, attaching a copy of MyChoice's '658 Patent, stating directly that Taiv was infringing MyChoice's patent, and attaching a detailed claims analysis showing the infringement.

16. Also, on February 28, 2023, counsel for MyChoice sent a letter to Taiv directed to its Chief Executive Officer, namely, Mr. Noah Palansky, again describing MyChoice's technology, giving the number of MyChoice's '658 Patent , and calling for a collaboration between MyChoice and Taiv.

17. Upon information and belief, Taiv's infringement of the '658 Patent is intentional and willful.

18. The following is a claim chart illustrating how Taiv's systems and methods infringe at least Claim 1 of the '658 Patent.

| '658 Patent, Claim 1 | Taiv |
|---|---|
| A method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of: | https://www.taiv.tv/venues<br>"How it Works":<br><br>"Our cable box [OUTPUT DEVICE] add-on connects to your existing system to make the content [FIRST MEDIA STREAM] more relevant and interesting [ATTRIBUTES] to your customers" |
| detecting in real-time, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database; | https://techcrunch.com/2020/03/16/no-mute-necessary-taiv-replaces-live-tv-ads-at-bars-with-custom-content/<br><br>"Taiv installs hardware [MONITORING STATION] at the restaurant that sits between the live feed and the TV, analyzing the image so that it can instantly understand [IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content before anyone even notices." |
| selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability; | https://www.taiv.tv/venues<br>"How it Works":<br>"You can use any extra ad slots to advertise your own upsells, specials, and events. [SUBSTITUTE CONTENT]<br><br>Optionally play music during commercial breaks to improve your atmosphere" [USER PREFERENCE INDICATING DESIRABILITY] |
| responsive to detecting in real-time the undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content; | https://www.taiv.tv/venues<br>"How it Works":<br><br>"…analyzing the image [FIRST MEDIA STREAM] so that it can instantly understand [DETECTING IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and |

|  | switch over to custom content [SECOND MEDIA STREAM] before anyone even notices. Taiv is totally seamless so your customers won't notice anything different" |
|---|---|
| further responsive to detecting in real-time the undesirable content in the first media stream, configuring, in the system database, an undesirable content attribute and associating the undesirable content attribute with the first media stream; | https://www.ycombinator.com/ companies/taiv/jobs/iV709M2 -full-stack-software-engineer-at- taiv#:~:text=Cool%2C%20But%20 How%20Does%20It,are%20perfect %20for%20that%20environment<br><br>"we build our own hardware and use a heuristics-based computer vision approach for classification. We're the first (and only) company in the world that can detect TV commercials accurately." |
| wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal; | https://www.ycombinator.com/companies/ taiv/jobs/iV709M2-full-stack-software- engineer-at- taiv#:~:text=Cool%2C%20But%20How% 20Does%20It,are%20perfect%20for%20t hat%20environment<br>"When it cuts to commercial break, we dynamically insert ads that are perfect for that environment." |
| after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to the undesirable content; | Confirmed that TAIV system in use switches to alternate content at the beginning of a commercial break and alternate content runs through the end of commercial break and returns to regular programming [FIRST MEDIA STREAM] when commercial break is over, not before [AN END TO THE UNDESIRABLE CONTENT]<br><br>See also Demo video: https://youtu.be/JjI_jZRoesY |
| responsive to detecting the end to the undesirable content in the first media stream, transmitting, from the monitoring station, a second | Confirmed that TAIV system in use runs alternate content through the end of commercial break [UNDESIRABLE CONTENT] and returns to regular programming when commercial break is over, not |

| | |
|---|---|
| trigger signal to the output device; | before [DETECTING THE END TO THE UNDESIRABLE CONTENT] |
| further responsive to detecting the end to the undesirable content in the first media stream, changing, in the system database, the undesirable content attribute associated with the first media stream; and, | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br><br>*"we build our own hardware and use a heuristics-based computer vision approach for classification. We're the first (and only) company in the world that can detect TV commercials accurately."* |
| wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal. | Confirmed that TAIV system in use switches from alternate content [SECOND MEDIA STREAM] back to regular programming [FIRST MEDIA STREAM] when commercial break is over. |

The claim chart above is provided solely for the purpose of satisfying the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure. No part of the claim chart construes, or is intended to construe, the claims, specification, or prosecution history of the '658 Patent. The claim chart does not represent MyChoice's preliminary or final infringement contentions, and MyChoice reserves the right to modify its infringement positions as discovery progresses in this case. The claim chart does not limit, and is not intended to limit, MyChoice's positions or contentions on claim construction, infringement, or validity.

19. MyChoice complied with the notice provision of the Patent Act, 35 U.S.C. § 287 by providing actual notice to Taiv of the '658 Patent and its infringement thereof.

## COUNT I:
## Infringement of U.S. Patent No. 10,708,658

20. MyChoice incorporates by reference the allegations in all preceding paragraphs.

21. Taiv has used, offered for sale, sold, and imported in the United States systems and methods that infringe every limitation of one or more claims of the '658 Patent.

22. As set forth above, Taiv's systems and methods satisfy every limitation of at least Claim 1 of the '658 Patent.

23. Taiv has had actual knowledge of the '658 Patent since at least as early as its issue date through the filing of this Complaint. Upon information and belief, Taiv was provided written notice of the '658 Patent and its infringement thereof. On information and belief, Taiv had actual knowledge of that patent or was at least willfully blind as to its existence and had actual knowledge or was at least willfully blind that its actions would cause its employees, agents, partners, customers, users, and/or suppliers to infringe that patent. Taiv was also made aware of the '658 Patent and its infringement through the filing and service of this Complaint.

24. On information and belief, since August 2022, and by no later than the filing and service of this Complaint, Taiv has induced infringement and continues to induce infringement of the '658 Patent under 35 U.S.C. § 271(b).

25. On information and belief, Taiv makes, provides, uses, tests, distributes, sells, offers to sell, advertises, and/or imports its Custom Content Replacement System as part of Taiv's knowing and intentional inducement of Taiv's employees, agents, partners, customers, users, and/or suppliers to directly infringe one or more of the asserted claims of the '658 Patent by directing, encouraging, instructing, supporting, and aiding those persons to make, use, sell, or offer to sell that system in a manner that infringes. On information and belief, Taiv acted with intent to cause direct infringement. Specifically, Taiv had actual knowledge of the '658 Patent or was at

least willfully blind as to its existence and had actual knowledge or was at least willfully blind that its actions would cause its employees, agents, partners, customers, users, and/or suppliers to directly infringe.

26.     On information and belief, Taiv has taken active steps to induce infringement of the '658 Patent, such as, the providing of instruction materials, engineering support, customer support, customer training, and other services for Taiv's employees, agents, partners, customers, users, and/or suppliers regarding the features, functions, operation, and use of its Custom Content Replacement System.

27.     On information and belief, since August 2022, and by no later than the filing and service of this Complaint, Taiv has contributed to and continues to contribute to infringement of the '658 Patent under 35 U.S.C. § 271(c).

28.     On information and belief, Taiv makes, provides, uses, tests, distributes, sells, offers to sell, advertises, and/or imports components of a location tracking system that constitute a material part of the invention claimed in the '658 Patent, knowing the same to be especially made or especially adapted for use in an infringement of the patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

29.     MyChoice has been and continues to be damaged by Taiv's infringement of the '658 Patent.

30.     On information and belief, since August 2022, and by no later than the filing and service of this Complaint, Taiv has willfully infringed the '658 Patent.

31.     On information and belief, the conduct by Taiv in infringing the '658 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

32. On information and belief, Taiv has had at least the following policies or practices that make its infringement of the '658 Patent willful and make this an exceptional case: (1) not substantively investigating or responding to written notices of patent infringement; (2) not conducting sufficient due diligence to determine whether the company, business, and its Custom Content Replacement System were infringing, especially when notified of such infringement; and (3) continuing with infringing acts of promoting, selling, using, offering for sale, and selling its Custom Content Replacement System after receiving notice thereof.

33. My Choice has been damaged and irreparably harmed by Taiv's infringement of the '658 Patent, which will continue unless and until permanently enjoined.

## **Prayer for Relief**

MyChoice respectfully requests that the Court award the following relief:

A. Enter judgment in favor of MyChoice and against Taiv that Taiv has infringed U.S. Patent No. 10,708,658;

B. Enter judgment in favor of MyChoice awarding it damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention of MyChoice, together with interest and costs as fixed by the court, pursuant to 35 U.S.C. § 284;

C. Enter judgment in favor of MyChoice, awarding it three times the amount of its actual damages pursuant to 35 U.S.C. § 284;

D. Enter judgment in favor of MyChoice directing Taiv to pay MyChoice its reasonable attorney fees in connection with this action pursuant to 35 U.S.C. § 285;

E. Enter judgment permanently enjoining Taiv from making, using, selling, offering to sell, or importing any products or services that infringe the patent-in-suit; and

F. Award such other and further relief to MyChoice as the Court deems just and equitable.

**Demand for Jury Trial**

Plaintiff MyChoice hereby demands a jury trial on all issues so triable.

Dated: November 2, 2023                    Respectfully submitted,

*/s / Michael C. Gilleran*
Michael C. Gilleran (Mass. BBO No. 192210)
Pro hac vice to be submitted
michael.gilleran@fisherbroyles.com
FISHERBROYLES, LLP
75 State Street, Suite 100, PMB 4418
Boston, Massachusetts 02109
Direct: 781.489.5680
Mobile: 339.237.1384
LEAD ATTORNEY

*/s/Chris P. Perque/s/*
Chris P. Perque
Texas State Bar No. 24005828
FisherBroyles, LLP
2925 Richmond Ave., Suite 1200
Houston, TX 77098
Phone: 832.604.4417
Facsimile: 832.377.5929
Email: chris.perque@fisherbroyles.com

*Attorneys for Plaintiff*
*MyChoice LLC*