**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MYCHOICE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TAIV, INC. <br><br> Defendant. | Civil Action No. 2:23-cv-00507-JRG-RSP |

**DEFENDANT TAIV INC.'S OPPOSED MOTION TO TRANSFER VENUE TO THE DISTRICT OF MASSACHUSETTS PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION ................................................................................................................. 1 | | |
| II. | STATEMENT OF FACTS ................................................................................................... 1 | | |
| | A. | The Patent-in-Suit and MyChoice's Prior Art MyTVChoice System .................... 1 | |
| | | 1. | Plaintiff My Choice ...................................................................................... 1 |
| | | 2. | The Patent-in-Suit ........................................................................................ 2 |
| | | 3. | MyChoice's Prior Art MyTVChoice System .............................................. 2 |
| | B. | TaiV Canada and the Accused Taiv Platform .......................................................... 3 | |
| | | 1. | Defendant TaiV Canada ............................................................................... 3 |
| | | 2. | The Accused Taiv Platform ........................................................................ 3 |
| | | 3. | TaiV Canada's Relationship with its Subsidiary Taiv USA ...................... 4 |
| III. | ARGUMENT ........................................................................................................................ 5 | | |
| | A. | This Case Could Have Been Brought in the District of Massachusetts .................. 5 | |
| | B. | There Is Good Cause to Transfer the Case to the District of Massachusetts .......... 8 | |
| | | 1. | The Private Interest Factors Clearly Favor Transfer to the District of Massachusetts ............................................................................................... 9 |
| | | | a. Relative Ease of Access to Sources of Proof Favors Transfer ........ 9 |
| | | | b. Availability of Compulsory Process to Secure the Attendance of Witnesses Is Neutral ................................................................. 10 |
| | | | c. Cost of Attendance of Willing Witnesses Also Heavily Favors Transfer ............................................................................ 11 |
| | | | d. The "Practical Problems" Factor Is Neutral ................................. 12 |
| | C. | The Public Interest Factors Favor Transfer to the District of Massachusetts ....... 12 | |
| | | 1. | The "Court Congestion" Factor is Neutral ................................................ 12 |
| | | 2. | The "Local Interest" Factor Favors the District of Massachusetts ........... 13 |
| | | 3. | The "Familiarity with Law" and "Conflict of Law" Factors are Neutral . 13 |
| IV. | CONCLUSION .................................................................................................................. 14 | | |

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Adams*,
    601 F.3d 1 (1st Cir. 2010) .................................................................................................... 6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) .............................................................................................. 6

*Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*,
    406 U.S. 706 (1972) ............................................................................................................. 5

*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005) ............................................................................................ 5

*Durrett v. Walmart, Inc.*,
    No. 2:18-CV-00332-JRG, 2018 WL 5630521 (E.D. Tex. Oct. 31, 2018) ............................ 9

*Graphic Controls Corp. v. Utah Med. Prods.*,
    149 F.3d 1382 (Fed. Cir. 1998) ............................................................................................ 6

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
    No. W-20-CV-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021) ..................... 13

*In re Apple Inc.*,
    No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ............................................ 10

*In re Apple, Inc.*,
    581 Fed. App'x 886 (Fed. Cir. 2014) ................................................................................. 10

*In re HP Inc.*,
    826 Fed. App'x 899 (Fed. Cir. 2020) ................................................................................. 10

*In re HTC Corp.*,
    889 F.3d 1349 (Fed Cir. 2018) ............................................................................................ 5

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) .......................................................................................... 12

*In re Pandora Media, LLC*,
    No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ............................................. 10

*In re Radmax, Ltd.*,
    720 F.3d 285 (5th Cir. 2013) ............................................................................................... 8

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") ..................................................... 11, 12, 13

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ..................................................... 5, 8, 9, 13

*Massachusetts Inst. of Tech. v. Shire PLC*,
 13-cv-10020-MLW, 2014 WL 404696 (D. Mass. Feb. 2, 2014) .............................................. 7

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
 890 F.3d 995 (Fed. Cir. 2018) ................................................................................................ 8

*North American Philips Corp. v. American Vending Sales, Inc.*,
 35 F.3d 1576  (Fed. Cir. 1994) (same) ................................................................................... 6

*Nuance Commns., Inc. v. Abbyy Software House*,
 626 F.3d 1222 (Fed. Cir. 2010) .......................................................................................... 5, 6

*Nuance Comms., Inc. v. Omilia Nat. Language Sols., Ltd.*,
 19-cv-11438-PBS, 2019 WL 6841796 (D. Mass Dec. 16, 2019) ........................................... 7

*PetEdge, Inc. v. Fortress Secure Solutions, LLC*,
 144 F. Supp. 3d 249 (D. Mass. Nov. 17, 2015) .................................................................. 6, 7

*R2 Sols. LLC v. Target Corp.*,
 4:21-cv-92, 2021 WL 2550908 (E.D. Tex. June 22, 2021) .................................................. 11

*Solta Medical, Inc. v. Lumenis, Inc.*,
 454 F. Supp. 3d 107 (D. Mass. Apr. 14, 2020) ...................................................................... 7

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988) ................................................................................................................. 8

*Wireless Recognition Techs. LLC v. A9.com*,
 2:10-cv-364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) .................................................. 12

**<u>Statutes</u>**

28 U.S.C. § 1391(c)(3) ................................................................................................................... 5

28 U.S.C. § 1404(a) ....................................................................................................................... 1

iii

I.      INTRODUCTION

Defendant TaiV, Inc. ("TaiV Canada") respectfully requests that the Court transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

This patent infringement suit was brought by MyChoice, LLC ("MyChoice"), a Massachusetts limited liability company. Its principal place of business is in Massachusetts. In addition, MyChoice's prior art MyTVChoice system was developed in Massachusetts, marketed by a Massachusetts public relations firm, and sold to and used by customers in Massachusetts. Thus, witnesses and evidence regarding the conception and reduction to practice of the purported invention are located in Massachusetts, as are witnesses and information regarding the development, offer for sale, sale, and use of MyChoice's potentially invalidating prior art system.

Meanwhile, this case has almost no connection to Texas. TaiV Canada is a Canadian corporation with no employees in Texas (or anywhere else in the United States). The accused Taiv platform was developed and manufactured in Canada; there are no individuals with knowledge of (and no evidence regarding) the design, development, operation, or implementation of the accused Taiv platform in Texas. And there are no witnesses or documents regarding the sales and marketing of the accused Taiv platform in Texas.

Because Massachusetts is clearly the more convenient venue, TaiV Canada respectfully requests the Court grant its motion to transfer this case to the District of Massachusetts.

II.     STATEMENT OF FACTS

     A.      **The Patent-in-Suit and MyChoice's Prior Art MyTVChoice System**

          1.      <u>Plaintiff My Choice</u>

Plaintiff MyChoice is a Massachusetts limited liability company with a principal place of business in Lincoln, Massachusetts. *See* Complaint (D.I. 1) ¶ 2; Declaration of Ryan J. Marton

in Support of Motion to Transfer ("Marton Decl."), Ex. 9.  Employees of MyChoice, including Mr. Dale Bearden, who lists himself as President of MyTVChoice since 2019, and Mr. John Ringuette, who lists himself as a Supervisor at MyTVChoice since 2016, are also residents of Massachusetts.  Marton Decl., Exs. 4-5.

2.   The Patent-in-Suit

Mr. Richard Theriault, the managing member of MyChoice, is the named inventor of U.S. Patent No. 10,708,658 (the "'658 patent"), the patent-in-suit.  *See* '658 patent (Complaint, Ex. A (D.I. 1-1); Complaint ¶ 2.  The '658 patent claims priority to a provisional patent application filed on June 27, 2017.  '658 patent at cover.  The patent "is directed to a system and method for replacing undesirable content in a media stream" by detecting undesirable content and selecting substitute content with certain attributes.  *E.g. id*. at 2:45-60.  But more than five years before he filed the provisional patent application that led to the '658 patent, Mr. Theriault had already formed MyChoice.  Marton Decl., Ex. 9 (Certificate of Organization).  And by 2013, four years before Mr. Theriault filed his patent application, he had already developed and was offering for sale on the MyChoice website (at www.mytvchoice.com) MyTVChoice, a system that lets users "avoid the annoying and offensive TV commercials" that play during TV programming.  *Id*., Ex. 6; *see also id*., Ex. 7.

3.   MyChoice's Prior Art MyTVChoice System

In 2013, the public could order the MyTVChoice system through the MyChoice website.  *Id*., Ex. 7.  The website also directed press inquiries to a Massachusetts public relations consultant, Ms. Sherry Alpert.  *See id*., Exs. 3, 8.  In October 2013, Ms. Alpert released an article about the MyTVChoice system, explaining that MyTVChoice "allows viewers to skip commercials on games and select shows they want to watch live.  Commercials are automatically replaced with the channel of choice during live sports, select reality shows, and award shows."

2

*Id.*, Ex. 2.  In October 2013, the MyTVChoice system "was available for national broadcasts of major league baseball, basketball, hockey and the NFL[.]" *Id*. And customers, including the Executive Vice President of the Massachusetts Family Institute, as well as other residents of Massachusetts, had already used the MyTVChoice system by 2013. *Id*.

### B. TaiV Canada and the Accused Taiv Platform

#### 1. Defendant TaiV Canada

Defendant TaiV Canada is a Canadian federal corporation formed in 2018 that is headquartered in Manitoba, Canada. Declaration of Noah Palansky in Support of Motion to Transfer ("Palansky Decl.") ¶ 2. All of TaiV Canada's employees are located in Canada. *Id.* ¶ 2. TaiV Canada does not have any offices or employees in Texas or anywhere else in the United States; all TaiV Canada's employees, offices, documents, files and information are located in Canada. *Id*.

#### 2. The Accused Taiv Platform

TaiV Canada developed the Taiv hardware and software platform ("Taiv platform") accused of infringement in this lawsuit. *Id.* ¶ 3. The Taiv platform includes devices that can be installed on televisions mounted in venues, such as bars and restaurants. *Id*. The Taiv platform device uses computer vision to detect when a commercial breaks starts and switches the TV input to ads provided through the Taiv platform. *Id*. The Taiv platform was developed by an engineering and manufacturing team that is located in Canada and is employed by TaiV Canada. *Id.* ¶ 4. Thus, all individuals with knowledge and understanding regarding the development, implementation, and operation of the accused Taiv platform, as well as all associated evidence is located in Canada. *Id*. There are no technical witnesses or evidence (such as source code, development documents, or specifications) located in Texas. *See id*.

The Taiv platform is marketed to two types of customers—venues (such as bars and restaurants) and advertisers. *Id*. ¶ 5. Venues that agree to install Taiv devices on their televisions share in advertising revenue and can add their own in-house ads to the rotation. *Id*. Advertisers that sign on to provide ads through the Taiv platform are able to extend their advertising reach. *Id*. The marketing and sales personnel that responsible for identifying, contacting, negotiating, and forming partnerships with advertisers and venues in the United States are all employed by TaiV Canada and located in Canada. *Id.* Venues located throughout the United States, including in Massachusetts, have signed on to use the Taiv platform in their restaurants and bars. *Id*. ¶ 6, Ex. 1.

### 3. TaiV Canada's Relationship with its Subsidiary Taiv USA

Partner Agreements with venues in the United States are negotiated and executed by TaiV Canada. *Id*. ¶ 9. TaiV Canada's wholly owned subsidiary Taiv USA, Inc. ("Taiv USA"), is responsible for installation and maintenance of Taiv platform devices on-site at venues in the United States. *Id.* ¶ 8. TaiV Canada and Taiv USA share overlapping management personnel (*id*. ¶¶ 2, 7), and Taiv USA contracts TaiV Canada to assist with Taiv USA's day-to-day operations, including keeping proper books, records, and accounts. *Id*. ¶ 8.

Taiv USA has only four employees, all of whom work remotely: a chief revenue officer (residing in California) and three A/V technicians responsible for installation and maintenance of Taiv platform devices at venues in the United States (two residing in Florida, and one in Texas (but not in this District). *Id*. ¶¶ 7-8. While the Taiv USA A/V technicians are responsible for on-site installation and maintenance of the Taiv platform devices, TaiV Canada owns the devices installed in the United States. *Id*. ¶ 10. TaiV Canada owns the hardware, rents the hardware to Taiv USA, and ships the hardware to Taiv USA employees or contractors for installation. *Id*. In addition, TaiV Canada employees in Canada remain responsible for identifying, initiating,

4

managing, and maintaining the customer relationship with venues and advertisers in the United States. *Id*. ¶¶5, 10.

### III.   ARGUMENT

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a). Thus, the threshold question is whether a civil action "might have been brought" in the District of Massachusetts. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). If so, then a determination must be made as to whether there is good cause to transfer, i.e., whether the District of Massachusetts is clearly more convenient. *Id.* at 315. Here, both the threshold and good cause inquiry is satisfied and transfer to the District of Massachusetts is warranted.

#### A.   This Case Could Have Been Brought in the District of Massachusetts

As a foreign defendant, TaiV Canada is subject to suit in any judicial district that has personal jurisdiction over it. 28 U.S.C. § 1391(c)(3); *see also Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 709-10 (1972); *In re HTC Corp.*, 889 F.3d 1349, 1356-1361 (Fed Cir. 2018). Thus, this case may have been brought in the District of Massachusetts if the District of Massachusetts has personal jurisdiction over TaiV Canada in this case.

In determining whether a district court has personal jurisdiction over a non-resident defendant, Federal Circuit law applies. *Nuance Commns., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). To establish personal jurisdiction in a patent infringement case over a non-resident defendant, the state long-arm statute and the requirements of due process must be satisfied. *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). Federal Circuit laws provides that when interpreting a state long-arm statute in the patent infringement context, a district court should

defer to the interpretations of the relevant state and federal courts. *Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

Assessment of personal jurisdiction in this case "may proceed directly to the constitutional analysis, because 'the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over [a] person to the limits allowed by the Constitution of the United States." *PetEdge, Inc. v. Fortress Secure Solutions, LLC*, 144 F. Supp. 3d 249, 253 (D. Mass. Nov. 17, 2015), citing *Adams v. Adams*, 601 F.3d 1, 5 (1st Cir. 2010). For specific jurisdiction, the Federal Circuit applies a three-prong test to determine if due-process requirements have been met: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *See Nuance Commns., Inc. v. Abbyy Software House*, 626 F.3d at 1231, citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995).

With respect to the first prong of whether TaiV Canada purposefully directed activities at residents of Massachusetts, the Federal Circuit has consistently held that an accused infringer is subject to personal jurisdiction where it sells the allegedly infringing product. *See PetEdge*, 144 F. Supp. 3d at 254-55, discussing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed. Cir. 1994) (finding patent infringement injury occurs at place of infringing sale) and *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) (same). Here, TaiV Canada has sold the accused Taiv product to at least one customer in Massachusetts. *See* Palansky Decl. ¶¶ 6 & 9, Ex. 1; *see PetEdge*, 144 F. Supp. 3d at 256 (finding D. Mass. had personal jurisdiction Massachusetts residents purchased foreign defendant's product through Amazon.com). TaiV Canada executed the Partner Agreement with the customer

6

in Massachusetts. *Id*. ¶ 9. TaiV Canada also owns the equipment that is contracted to be installed at the customer site in Massachusetts, and will rent the equipment and ship it to Taiv USA for installation in Massachusetts. *Id*. ¶ 10; see *Solta Medical, Inc. v. Lumenis, Inc.*, 454 F. Supp. 3d 107, 113 (D. Mass. Apr. 14, 2020), citing *Massachusetts Inst. of Tech. v. Shire PLC*, 13-cv-10020-MLW, 2014 WL 404696, at * 4 (D. Mass. Feb. 2, 2014) (ruling that the parent company's involvement in the marketing and distribution of the accused products subjected it to personal jurisdiction).

Furthermore, it was a TaiV Canada employee that made the initial sales communications with the Massachusetts customer and negotiated the Partner Agreement, and it will be TaiV Canada that continues to manage and maintain the customer relationship. *Id*. ¶¶ 5, 10. These acts alone are sufficient to establish personal jurisdiction in Massachusetts. *See PetEdge*, 144 F. Supp. 3d at 257-258 (discussing marketing and attempted sales activities sufficient to establish personal jurisdiction).

With respect to the second prong, TaiV Canada's activities are clearly related to MyChoice's patent infringement claims. The Federal Circuit has held that attempted sales and marketing of the accused product in the forum state meets the relatedness prong. *Solta Med.*, 454 F. Supp. 3d at 114, citing *Nuance Comms., Inc. v. Omilia Nat. Language Sols., Ltd.*, 19-cv-11438-PBS, 2019 WL 6841796, at *4 (D. Mass Dec. 16, 2019) (applying Federal Circuit law and holding that the relatedness prong was satisfied where defendant attempted to market infringing products in Massachusetts). Finally, exercise of jurisdiction would be reasonable here. Where a claim of infringement arises out a defendant's activities purposefully directed at the forum, there needs to be a compelling case that would render the exercise of jurisdiction unreasonable. *See*

7

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1001 (Fed. Cir. 2018). No such compelling circumstances exist here.

      **B.**      **There Is Good Cause to Transfer the Case to the District of Massachusetts**

The determination of convenience and whether good cause exists turns on several private and public interest factors. The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315 (citations omitted). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law. *Id.* (citations omitted). These factors are not necessarily exhaustive or exclusive, and none can be said to be of dispositive weight. *Id.* (citation omitted). A court should not deny transfer "where only the plaintiff's choice weighs in favor of denying transfer and where the case has no connection to the transferor forum and virtually all of the events and witnesses regarding the case…are in the transferee forum." *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013). Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

1. The Private Interest Factors Clearly Favor Transfer to the District of Massachusetts

a. *Relative Ease of Access to Sources of Proof Favors Transfer*

When considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Durrett v. Walmart, Inc.*, No. 2:18-CV-00332-JRG, 2018 WL 5630521, at *2 (E.D. Tex. Oct. 31, 2018), citing *Volkswagen II*, 545 F.3d at 316. There is very little relevant documentary evidence located in Texas. All of TaiV Canada's documents and physical evidence are located in Canada, where all of TaiV Canada's operations (including technical, marketing, and sales operations) take place. Palansky Decl. ¶¶ 2, 4-5, 10. The only evidence that may exist in Texas is evidence that may be at customer sites in Texas. But there is nothing unique about that evidence, which would be redundant of evidence available at other customer sites, including the location of TaiV Canada's Massachusetts customer.

While TaiV Canada's documents are all located in Canada, MyChoice's documents are all likely to be in Massachusetts. *See* Complaint ¶ 2; Marton Decl., Ex. 9 (November 2022 Annual Report). Therefore, any of MyChoice's documents or physical evidence regarding regarding the conception and reduction to practice of the '658 patent would also likely be located in Massachusetts. Furthermore, a key issue in this case will be whether MyChoice's prior art MyTVChoice system invalidates the asserted '658 patent. By 2013, almost 4 years before filing for patent protection, MyChoice was already marketing and offering its MyTVChoice system for sale. *See* Marton Decl. ¶¶ 3, 7-8, Exs. 2, 6-7. MyChoice is located in Massachusetts and its MyTVChoice product was developed in Massachusetts. *See id.*; *see also id.*, Ex. 9. Documents regarding the features and functionality of the MyTVChoice product and each of its iterations

9

prior to the 2017 filing of the patent application are highly relevant to invalidity.  These documents exist in Massachusetts.

Additionally, MyChoice appears to have retained a public relations consultant in 2013 who is located Massachusetts.  *Id*. ¶¶ 3-4, 9 & Exs. 2-3, 8.  This consultant published articles about the features and functionality MyTVChoice, as well as use of the system by customers in Massachusetts.  *Id*. ¶ 3, Ex. 2.  Documents that she may have regarding her marketing of MyChoice TV or discussions with personnel at MyChoice and with customer users of the MyTVChoice would be located in Massachusetts.  *Id*. ¶¶ 4, 9 & Ex. 3, 8.  Furthermore, early customers of the prior art MyTVChoice system are located in Massachusetts and any documents or physical evidence they may have regarding their use of the product or the features and functionality of the product would be located in Massachusetts.  Thus, the overwhelming amount of important documents exist in Massachusetts as compared to Texas.  Accordingly, this factor favors transfer to the District of Massachusetts. .

> b. *Availability of Compulsory Process to Secure the Attendance of Witnesses Is Neutral*

This second private factor "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue."  *In re Apple, Inc*., 581 Fed. App'x 886, 889 (Fed. Cir. 2014), citing *In re Genentech, Inc*., 566 F.3d at 1345. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling."  *In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021) (citations omitted).  Further, relevant third-party entities cannot be discounted "just because individual employees were not identified."  *In re Apple Inc*., No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021), citing *In re HP Inc*., 826 Fed. App'x 899, 903 (Fed. Cir. 2020).

Here, almost all of the relevant non-party witnesses are located within the District of Massachusetts' subpoena power and outside the Eastern District of Texas' subpoena power. For example, the District of Massachusetts has power to subpoena the early MyTVChoice system customer's identified in MyChoice's 2013 marketing article. *See* Marton Decl. ¶ 3, Ex. 2. The District of Massachusetts will also have subpoena power over MyChoice's public relations consultant involved in publishing the 2013 marketing article about MyTVChoice and handling press inquiries for MyChoice during the time period before filing of the application that issued as the '658 patent. *See id*. ¶¶ 4, 9 & Exs. 3, 8. The District of Massachusetts will have the power to subpoena any former employees of MyChoice residing in Massachusetts. And the District of Massachusetts will have the power to subpoena representatives of TaiV Canada's customer in Massachusetts, if necessary. In contrast, the only known potential relevant non-party witnesses in Texas are representatives of Taiv customers in Texas, and the Court would only have compulsory process if he would not incur substantial expense. *See, e.g.*, *R2 Sols. LLC v. Target Corp.*, 4:21-cv-92, 2021 WL 2550908, at *3 (E.D. Tex. June 22, 2021). Given that there are similarly situated customer witnesses available in Massachusetts, there is nothing unique about the customers in Texas. As the number and importance of relevant non-party witnesses over whom the District of Massachusetts would have compulsory process far outweighs any witnesses in Texas, this factor heavily weighs in favor of transfer.

        c.       *Cost of Attendance of Willing Witnesses Also Heavily Favors Transfer*

The third private factor looks to "the cost of attendance for willing witnesses." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The convenience of the witnesses is probably "the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d at 1343 (citation omitted). "[W]hen the distance between an existing venue for

11

trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*. This factor favors transfer.

Here, the District of Massachusetts is equally accessible to TaiV Canada's witnesses as the Eastern District of Texas, but will be far more convenient for MyChoice's witnesses. MyChoice's office and employees are in Massachusetts. *See* Complaint ¶ 2; Marton Decl. ¶¶ 5-6, Ex. 4-5. TaiV Canada is aware of no party witnesses of MyChoice in Texas. Because the number of relevant witnesses residing in Texas "pales in comparison to the number of party and non-party witnesses with relevant information" residing in Massachusetts, this factor weighs in favor of transfer. *Wireless Recognition Techs. LLC v. A9.com*, 2:10-cv-364, 2012 WL 506669, at *5 (E.D. Tex. Feb. 15, 2012); *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318-19 (Fed. Cir. 2021).

### d. The "Practical Problems" Factor Is Neutral

The last private interest factor looks at "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203. There are no other practical problems that favors proceeding in the Eastern District of Texas and thus, this factor is neutral.

### C. The Public Interest Factors Favor Transfer to the District of Massachusetts

#### 1. The "Court Congestion" Factor is Neutral

The first public interest factor looks at "the administrative difficulties flowing from court congestion." *Volkswagen I*, 371 F.3d at 203. This is "the most speculative" factor. *See In re Genentech*, 566 F.3d at 1347 (stating "case-disposition statistics may not always tell the whole story"). Moreover, "when, as here, several relevant factors weigh in favor of transfer and others

12

are neutral," "the speed of the transferee district court should not alone outweigh all of those other factors." *Id*.

Here, this factor slightly favors transfer. Time to disposition is about one month faster in the District of Massachusetts. *See* Marton Decl. ¶ 2, Ex. 1 (Federal Court Management Statistics for the District of Massachusetts and the Eastern District of Texas for the 12-month period ending December 23, 2023). And the District of Massachusetts have half as many civil cases and trials on a per judge basis. *Id*.

### 2. The "Local Interest" Factor Favors the District of Massachusetts

The second public interest factor looks to "the local interest in having localized interests decided at home." *Volkswagen I*, 371 F.3d at 203. "The most relevant considerations are therefore where the design, development, and sale of the accused products occurred." *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. W-20-CV-01092-ADA, 2021 WL 4953884, at *6 (W.D. Tex. Oct. 25, 2021). This factor is neutral with respect to the accused Taiv platform as all design and development occurred in Canada.

This factor, however, weighs in favor of transfer to the District of Massachusetts when considering the interests of Massachusetts with respect to MyChoice. MyChoice is a Massachusetts company. *See* Complaint ¶ 2; Marton Decl., Ex. 9. MyChoice's design and development efforts with respect to the '658 patent and the development of the MyTVChoice product all occurred in Massachusetts. *See id*.

### 3. The "Familiarity with Law" and "Conflict of Law" Factors are Neutral

The final two public interest factors are "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws." *Volkswagen II,* 545 F.3d at 315. These two factors are neutral as both the District of

13

Massachusetts and the Eastern District of Texas have extensive familiarity with patent law and the law to be applied is the same in both districts.

## IV.     CONCLUSION

Given that the District of Massachusetts is clearly the more convenient venue for the reasons discussed in this Motion to Transfer, TaiV Canada respectfully requests its motion be granted and that the Court transfer this case to the District of Massachusetts.

Dated:  April 9, 2024                                         */s/ Ryan Marton*

Ryan J. Marton
ryan@martonribera.com
**MARTON RIBERA SCHUMANN & CHANG LLP**
548 Market St. Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2515


***COUNSEL FOR DEFENDANT TAIV, INC.***

14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System, which will send notification to the registered participants of the ECF System as listed on the Court's Notice of Electronic Filing.

*/s/ Ryan Marton*
Ryan Marton

**CERTIFICATE OF CONFERENCE**

On February 8, 2024, the undersigned counsel notified counsel for Plaintiff that TaiV, Inc. would be moving to transfer this action to the District of Massachusetts, and counsel for Plaintiff responded that the motion would be opposed. No agreement was reached, thereby leaving the issue open for the Court to resolve.

Dated:  April 9, 2024
*/s/ Ryan Marton*
Ryan Marton

15