IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MYCHOICE, LLC, | ) |
|  Plaintiff, | ) ) ) ) |
| v. | ) Civil Action No. 2:23-cv-00507-JRG-RSP ) ) |
| TAIV, INC. | ) ) |
|  Defendant. | ) ) |

### AFFIDAVIT OF RICHARD THERIAULT

Richard Theriault, upon oath, deposes and states:

#### Introduction

1. My name is Richard Theriault. I have been and am the sole Managing Member of Plaintiff MyChoice, LLC. ("MyChoice").

2. I make this affidavit under oath on facts of my own personal knowledge except where I state I am relying on facts or information provided by others in which case I am relying on such information because I believe it to be true.

3. I was the sole inventor of a method and system known as "Video Viewing Experience Enhanced Through Custom Curation." I was granted a patent on this invention in the form of U.S. Patent No. 10,708,658 (the "'658 Patent") which was duly issued on July 7, 2020. I assigned the '658 Patent to MyChoice.

#### Theriault's And MyChoice's Locations And Records

4. As noted above, I am the sole Managing Member of Plaintiff MyChoice. I have been the sole Managing Member of MyChoice since 2013, as shown by MyChoice's 2013 Annual Report filed

with the Secretary of the Commonwealth (Massachusetts) on March 3, 2015, a copy of which is attached as Exhibit "1."

5.  As shown on MyChoice's 2013 Annual Report, Ex. "1," hereto, the "Location of its principal office" was "5 Brooks Hill Road, Lincoln, MA 02420." The 5 Brooks Hill Road address was also the home of my wife and I from 1986 until December 2023 (the "Lincoln Mass. Home").

6.  I maintained all of the records for MyChoice and the 2020 '658 Patent, that is the subject of this suit, on my computer at our Lincoln Mass. Home. A copy of the '658 Patent is attached hereto as Exhibit "2." As shown at the "Inventor" line on the first page, at the upper left-hand corner of the '658 Patent, I was the sole inventor of that Patent. These records, electronically maintained on my computer, would include all records for the design and development of the '658 Patent and all filings with the USPTO for obtaining the '658 Patent. No one else at any other location had access to my computer and its records, which were all kept electronically on my computer at our Lincoln Mass. Home.

7.  My wife and I sold our Lincoln, Mass. Home on November 17, 2023. A copy of our Quitclaim Deed for the sale of our Lincoln Mass. Home, showing the date of the Quitclaim Deed as November 17, 2023, is attached as Exhibit "3." As shown on the first page of Exhibit "3," the Quitclaim Deed was recorded on December 15, 2023. We physically left our Lincoln Mass. Home that same day.

8.  We then moved over the next few days to New Orleans, Louisiana, to live with our daughter, Raminta Theriault. She is an Orthopedic Surgeon at Ochsner Medical Center in New Orleans, Louisiana. I attach a copy of our daughter's Condominium Lease for a property located at 774 Topaz Street, New Orleans, Louisiana. See Exhibit "4."

9.  When my wife and I relocated to New Orleans of course I took my computer with me. Since our move in December 2023 all records of MyChoice and the '658 Patent have been maintained

by me at 774 Topaz Street, New Orleans. There are no remaining records of MyChoice or the '658 Patent maintained at 5 Brooks Hill Road, Lincoln, Massachusetts, or anywhere else in Massachusetts.

### Taiv Has Known Of My Current Location in Louisiana

10. I understand that MyChoice's lead counsel, Michael Gilleran, told Taiv's lead counsel, Ryan Marton, several times the Motion to Transfer was filed, specifically that I had permanently sold my house in Massachusetts and had moved to New Orleans, Louisiana (to live with my daughter). Those times include February 8, 2024, February 19, 2024, and February 21, 2024.

### My Earlier 2015 '518 Patent

11. Taiv in its Motion for Transfer labels my 2015 Patent, U.S. Patent No. 9,021,518 (the "'518 Patent") as "Prior Art." See Motion to Transfer, at 2. See a copy of the 2015 '518 Patent, attached as Ex. "5." My 2015 '518 Patent was a different invention than my 2020 "658 Patent in suit. The 2015 '518 Patent was for home use only and not for the different commercial use as is the 2020 '658 Patent in suit. See this 2013 ad, a copy of which is attached as Ex. "6," describing the users of this 2013 technology, as "consumers," a "parent," "my family," "parents with young kids," and "our kids." At least one advertisement appeared in 2013 describing in the most general terms (discussed just below), the technology represented in the 2015 '518 Patent for which, again, the patent application was filed on May 21, 2013, as shown on its cover page at Ex. "5." Taiv has previously claimed to MyChoice's attorneys that the 2013 general advertisement somehow violates the § 102 On Sale Bar because the 2013 general advertisement for the 2015 '518 Patent appeared in 2013 before the 2020 '658 Patent in suit was filed in 2017. But the 2013 advertisement spoke of a different invention, and even that only generally, than that shown in the 2020 '658 Patent. And the 2015 '518 Patent was cited during the prosecution of the 2020 '658 Patent, was considered by the USPTO examiner, and is listed on the cover of the issued 2020 '658 Patent, Ex. "2" hereto.

### Sherry Alpert And Others Claimed To Be Possible Witnesses

12. <u>Sherry Alpert</u>. As indicated in the Taiv's Marton Declaration, as Exhibit 2, I did, on behalf of MyChoice, engage Sherry Alpert Corporate Communications LLC ("Sherry Alpert") to publicize MyChoice's business as it was in 2013 using the 2015 '518 Patent (filed on May 21, 2013). Sherry Alpert did publish an article on the PRWeb on October 16, 2013 about MyChoice and generally about its technology as it existed in 2013 (discussed just above). Ex. "6." However, MyChoice did not engage Sherry Albert in any respect in connection with the 2020 '658 Patent in suit. Sherry Alpert has no information or documents of any kind in connection with the '658 Patent.

13. <u>John Ringuette</u>. As indicated in Taiv's Marton Declaration, at Exhibit 5, is the LinkedIn page for a Mr. John Ringuette, whom Taiv indicates has been a Supervisor at Taiv since 2016. This is not accurate. Mr. Ringuette died in 2020 at the age of 20. See his Obituary at Ex. "7."

14. <u>Dale Bearden</u>. As indicated in Taiv's Marton Declaration, at Exhibit 4, is the LinkedIn page for a Mr. Dale Bearden, whom Taiv indicates is the "President of MyChoice since 2016 and is located in Massachusetts…" This is not accurate. First, MyChoice is a limited liability company, not a corporation, and has no president. I have been the sole managing partner of MyChoice since 2013, a year after it was founded. See as Exhibit "8," all of MyChoice's Annual Report filings with the Mass. Secretary of the Commonwealth showing this. Second, Mr. Bearden has no current operational or management affiliation with MyChoice (he has a small ownership interest), which makes me conclude he has no reason to be a willing witness. Third, I understand he currently splits his time between Portland, Maine, and Savannah, Georgia. He does not live in Massachusetts. Fourth, his affiliation with MyChoice, solely in a marketing role, began in mid-2019, long after the 2017 filing for the 2020 '658 Patent. He never had anything to do with the design or development of the 2020 '658 Patent. If he was

a witness to anything relevant here, which is highly doubtful (due to the limited timing and breadth of his role), he would not be a key witness.

15.     No Other Employees.  Currently MyChoice has no other employees, let alone managers, than me.

16.     Early Customers of MyChoice.  Taiv guesses in its Motion, at page 10, that MyChoice's "early customers" and "any documents or physical evidence they have … would be located in Massachusetts." Again, any documentation regarding MyChoice's early 2015 '518 Patent is electronically stored and in my possession. As for physical evidence, that consisted of some devices in homes in Massachusetts, but MyChoice stopped operating that technology over 7 years ago.

17.     Current Customers of MyChoice.  The reality is that MyChoice's growth from selling its technology to sports bars, hotels, and other chains, was stopped by COVID-19, and MyChoice has no current customers.

### Taiv's Customers in Texas

18.     Before this suit was filed on November 2, 2023, Taiv used to list on its web site the locations with which it had contracted and where its equipment was installed. Before November 2023 its major markets were in Texas and Florida. See as Ex. "9," a printout from the Taiv website on October 17, 2023. It shows four markets in Texas and two in Florida, plus other scattered markets in Arizona, Illinois, and New York. See as Ex. "10," another printout also from the Taiv website also taken on October 17, 2023. This printout has the title "Where's Taiv?" It then goes on to say, "In 2022, we were in just 4 markets. We're currently in 8, and our market expansion is only going up from hear heading into 2024." See as Exs. "11," through "14," showing respectively Taiv's moves in 2022 and 2023 into the Texas markets of Austin, Dallas, Houston, and San Antonio. Note Ex. "14," with respect to the San Antonio market, says, "Exciting news – we're expanding across Texas!" As of April 2023, Taiv was

operating in at least 67 locations in Texas. How do we know this, because we counted them as they then appeared on Taiv's web site. And I personally have observed that Taiv has been doubling in size every six months. For that reason, I now believe it is likely that Taiv has as many as around 200 locations in Texas.

19. Some of Taiv's current customers in Texas, taken from its web site, include: (1) 512 On 6th, located at 408 East 6th Street, Austin, TX – Ex. "15"; (2) El Tiemp Cantina, located at 5602 Washington Ave., Houston, TX – Ex. "16"; and (3) Lone Star Taco, 1001 Texas Ave., Houston, TX – Ex. "17."

### Taiv's Late-Appearing Single Customer In Massachusetts

20. Taiv now says in the Palansky Declaration, at ¶ 6 and Ex. 1 thereto, that it has a contract with and installed technology at Paddy Kelly's restaurant and pub in Peabody, Massachusetts. Paddy Kelly's Partner Application Form is undated. See Palansky Declaration, at Ex. 1, page 2. However, Taiv's Certificate of Acceptance for Paddy Kelly's has a date on it and that is March 28, 2023, before this suit was filed. However, see my Ex. "9," above, taken from the Taiv web site in October, 2023, before this suit was filed. It shows Taiv in markets in nine locations, but none in Massachusetts. For several reasons I believe this one Taiv location in Massachusetts was back-dated from some actual date after this case was filed to a date before this suit was filed, so as to give Taiv some (very limited) evidence to support its Motion to Transfer to Massachusetts: (1) the printout from Taiv's web site in October 2023, which I checked, shows no Massachusetts location – See Ex. "9"; (2) before this suit was filed Taiv listed most or all of its locations right on its web site, now there are just a small number of names of locations shown; (3) the Massachusetts location is not part of any chain and is completely isolated, while Taiv's business plan has been to grow simultaneously in an entire market; (4) Paddy Kelly's "Taiv Partner Application Form" appears to be an online form and not the result of any actual visit to the Paddy Kelly's

location in Massachusetts; (5) Taiv made other changes to its web site post suit to try and support a motion to transfer out of Texas, see Ex. "18," which is a pre-suit printout from Taiv's web site of its "Business Terms and Conditions" which says only that the contracting party is "Taiv," while a post-suit printout of that same contract, see Ex. "19," now says the contracting party is "Taiv USA Inc.," thus setting up the possibility of claiming transfer to Delaware where Taiv USA Inc. is incorporated; and (6) it's awfully convenient that this one isolated Taiv location in Massachusetts should appear out of the blue to at least provide some (very limited) hook for Taiv's Motion to Transfer to Massachusetts and get this case out of this court.

<b><u>Relative Distances to the Courthouses</u></b>

21.   <u>Distances for Mr. Theriault</u>.  The distance from New Orleans, Louisiana to Marshall, Texas is about 359 miles.  See Ex. "20."  The distance from New Orleans, Louisiana to Boston, Massachusetts is about 1,525 miles.  See Ex. "21."

22.   <u>Distances for Taiv Witnesses</u>.  The distance from Winnipeg, Manitoba to Boston, Massachusetts is about 2,972 kilometers or 1,842 miles.  See Ex. "22."  The distance from Winnipeg, Manitoba to Marshall, Texas is about 2,122 kilometers or 1,315 miles.  See Ex. "23."

Signed under the pains and penalties of perjury.

*[signature]*

Richard H. Theriault

Dated: April 22, 2024