IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| MYCHOICE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> TAIV, INC. <br><br> Defendant. | Civil Action No. 2:23-cv-00507-JRG-RSP |

**OPPOSITION TO MOTION TO COMPEL OF DEFENDANT TAIV, INC.**

Defendant, Taiv, Inc. ("Taiv"), respectfully submits this Opposition to Plaintiff MyChoice, LLC's ("Plaintiff") Motion to Compel (Dkt. 37, the "Motion").

The Motion represents Plaintiff's attempt to shift the costs and burden of unnecessary discovery to Defendant in order to force Defendant to give up its defense of this baseless litigation. Taiv has complied with its discovery obligations. Taiv has produced the source code for the accused system in accordance with the Court's protective order, has produced relevant documents regarding damages, and remains an open book, having offered to let MyChoice inspect its records for any additional relevant documents.

Plaintiff's Motion fails to identify any discovery request by name or explain the relevance of any individual request under Rule 26's standards of proportionality and relevance. Instead, it variously requests: 1) written responses it never asked for prior to filing this Motion, 2) that the Court rewrite the model Order Regarding e-Discovery to shift the burden of discovery fully to Taiv, 3) that Taiv produce documents it has already offered for inspection, 4) that the Court modify its already entered Protective Order to force Taiv relocate its source code to a new

1

location to shift the cost and burden of travel on Taiv, and 5) that Taiv be compelled to produce documents in response to a third party subpoena to its U.S. subsidiary that Plaintiff chose not to name in its Complaint. None of this relief is proper.

While the Motion recites a litany of mischaracterized facts about Taiv and its discovery efforts to date, the following is incontrovertible: 1) Taiv has made its source code available for inspection pursuant to the Court's Protective Order; 2) Taiv has produced financial information relevant to this case; and 3) Taiv has offered to let MyChoice inspect its business records for other categories of information, an offer MyChoice has refused.

MyChoice is a Massachusetts limited liability company. Defendant Taiv is a Canadian company, but it also has a U.S. subsidiary in New York. Taiv has requested that this case be transferred to a more convenient forum.[1] While MyChoice opposed that motion, it now wishes to circumvent the Federal Rules of Civil Procedure and the Court's discovery orders by asking the Court to have a Canadian-based defendant provide all its documents and source code in Texas, refusing to go where the documents are kept in the ordinary course or to go to Taiv's selected location to keep its source code secured as allowed under the Court's Protective Order. Throughout the Motion, MyChoice alleges that Taiv is "refusing to produce documents" where Taiv has offered MyChoice the option to come inspect its business records for whatever other documents it believes are relevant. MyChoice's refusal to do so does not impose a separate burden on Taiv. MyChoice's motion should be denied.

I.  **TAIV HAS COMPLIED WITH ITS DISCOVERY OBLIGATIONS**

Plaintiff's assertion that Taiv has failed to produce relevant documents is not true. Taiv has produced the relevant documents typically needed in a patent litigation action, including the

---

[1] Taiv's motion to change venue is pending. (Dkt. 14.)

source code for the accused system—one of the most critical elements in a software patent case. Taiv has also provided detailed financial information, including revenue, cost and profit information, and including information about revenues related to sales made by its (non-party) subsidiary, Taiv USA. Keeping in mind the scope of discovery and proportionality requirements of Rule 26, Taiv believes that is has fully complied with its discovery obligations. But Taiv is not seeking to hide any information. If Plaintiff believes there are additional relevant documents it needs to prosecute this case, Taiv has offered MyChoice the option to come inspect its business records to find whatever it may need.

  A. **Taiv Has Complied with P.R. 3-4**

MyChoice's Motion conflates two distinct issues: whether Taiv has complied with the local patent rules and whether MyChoice might be entitled to additional discovery of technical documents. Taiv has undoubtedly complied with its P.R. 3-4 and other discovery obligations.

Patent Rule 3-4 requires that "with the 'Invalidity Contentions,' the party opposing a claim of patent infringement must **produce or make available for inspection and copying** … Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation **sufficient to show** the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart." P.R. 3-4 (emphasis added). Taiv complied its 3-4 obligations by making its source code available for inspection under the Court's Protective Order. It is incontrovertible that the source code for the accused software is more than "sufficient to show the operation" of Taiv's accused system. That MyChoice has now decided it would rather not inspect the source code does not mean Taiv has failed to meet its obligations under P.R. 3-4.

During the parties' conferences of counsel, Taiv noted that the source code was the most accurate and best evidence to show how the accused system operates, because it is the human-

readable version of the accused software itself. And while any other documentation is necessarily less accurate than the source code, Taiv nonetheless offered to let MyChoice inspect its technical documents for other relevant information. MyChoice simply does not wish to do so.

### B. Inspection of Records is Standard, and the e-Discovery Order Does not Mandate Otherwise

In response to MyChoice's additional requests for documents, which are necessarily less relevant that the actual source code of the system and would require substantial expense to Taiv to collect, review, and produce, Taiv offered to allow Plaintiff to inspect its documents and business records at its offices in Canada, where they are kept in the ordinary course of business. Plaintiff has refused this offer, instead demanding that all documents be produced to it electronically in Texas.

The Federal Rules of Civil Procedure contemplate that a party responding to a request for production may either allow inspection of its records or produce copies. *See* Fed. R. Civ. P. 34. Indeed, the rule is written such that production is the alternative, even for electronically stored information. Fed. R. Civ. P. 34(b)(2)(B) ("The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection."). In response to many of the overbroad and less relevant document requests from MyChoice, Taiv exercised its right to offer inspection of its business records at its offices in Canada, as is proper under the Federal Rules.

As the courts have recognized, "the general rule [is] that business records should be examined at the place where they are kept, at least where the documents requested are large in number and their production poses some inconvenience." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 220–21 (C.D. Cal. 2009) (citing *Petruska v. Johns–Manville*, 83 F.R.D. 32, 36 (D. Pa. 1979)); *see also Betts v. Agri-Tech Servs., Inc.*, No. 87-4110-R, 1990 WL 5731, at *1

(D. Kan. Jan. 23, 1990) ("Business records should usually be examined at the place where they are kept and at reasonable hours."). This is true even if it may be less convenient for MyChoice to travel for the inspection. *See Kleppinger v. Texas Dep't of Transp.*, No. CV L-10-124, 2012 WL 12893651, at *2 (S.D. Tex. Mar. 4, 2012) ("The Court notes that, under Rule 34, Defendant is only required to make the requested documents available for inspection and copying, and Defendant is not required to incur the costs of copying those documents for Plaintiff.") (citing *Monarch Ins. v. Spach*, 281 F.2d 401, 413 n. 30 (5th Cir. 1960)); *see also Williams v. Taser Intern., Inc.*, 2006 WL 1835437, at *6 (N.D. Ga. 2006) (finding that where voluminous documents were requested, it was reasonable to produce them where kept and have the requesting party bear the cost of travel to inspect, or to copy and ship them); *Cardenas v. Grp. Dorel Juv., Inc.,* 230 F.R.D. 611, 620 (D. Kan. 2005) (stating that "under Rule 34, a responding party need only make requested documents available for inspection and copying; it need not pay the copying costs[,]").

The E-Discovery Order (Dkt. 33) does not change this default rule and does not require that Taiv review and produce all documents electronically. The E-Discovery Order, essentially identical to the model order, governs the form of production and limits what ESI is generally discoverable. Indeed, as Plaintiff admits, Taiv produced its financial records and other information following the form of production in the E-Discovery Order. Motion at 5. The E-Discovery Order does not prohibit making documents available for inspection, and MyChoice does not identify any clause that prohibits it.

If, after inspecting the business records, Plaintiff wishes to have copies of specific documents produced electronically, Taiv would comply with the E-Discovery Order's formatting requirements if any production is needed.

Plaintiff's refusal to inspect the documents where they are kept in the ordinary course of business—despite this established rule—appears to be merely an improper attempt to shift the costs and burdens of discovery onto Taiv. The Court should reject MyChoice's attempt to circumvent the Federal Rules.

C. **In-Person Inspection of Source Code is the Typical Practice and is Reasonable Here**

Plaintiff's objection to inspecting the source code in San Francisco also lacks merit. The Protective Order, which was negotiated and agreed to by both parties, and entered by the Court, expressly states that the stand-alone computer containing the source code "may only be located at the offices of the producing Party's outside counsel." (Dkt. 32 at 5, ¶ 10(a).) This provision is part of the Court's model protective order and was in the original draft proposed by MyChoice's counsel. Plaintiff was fully aware of this provision when it agreed to the Protective Order and raised no objections at that time.

MyChoice protests that it assumed Taiv would hire Texas counsel, but never discussed this assumption with Taiv. And even if Taiv had hired Texas counsel, the Protective Order does not require Taiv to make its source code available any specific office of its outside counsel; it is up to Taiv to choose where to keep its source code safe and secured. By its own admission, MyChoice's request to move the source code inspection to Texas would require Taiv to hire different or additional counsel, step that is obviously prejudicial to Taiv, who should be entitled to its counsel of choice. Plaintiff does not get to dictate which counsel Taiv must hire or which outside counsel offices Taiv chooses to protect its source code.

MyChoice's proposal to perform the review remotely is also flawed. Taiv offered a compromise by considering secure remote source code review options, provided MyChoice agreed to cover the costs. MyChoice rejected this offer and instead proposed using an insecure

system, "TeamViewer" software. *See* Ex. A (Sept. 19 Email from MyChoice counsel). TeamViewer is remote control software for system administration, not for secure source code review, and is software that is "cherished by scammers and even ransomware actors, who use it to gain access to remote desktops, dropping and executing malicious files unhindered." *See* Ex. B (Bill Toulas, *TeamViewer abused to breach networks in new ransomware attacks*, Bleeping Computer (January 18, 2024 )) at 2. It also has had high-profile security issues which have been reported by the press within the last several months. *See* Ex. C (Eduard Kovacs, *TeamViewer Hack Officially Attributed to Russian Cyberspies*, SecurityWeek (July 1, 2024); *see also* Ex. D. (Zack Whittaker, *Remote access giant TeamViewer says Russian spies hacked its corporate network*, TechCrunch (June 28, 2024)) at 2 ("TeamViewer is also known to be abused by malicious hackers for its ability to be used to remotely plant malware on a victim's device."). Thus, Taiv was understandably unwilling to agree to the use of TeamViewer because it would unacceptably expose its highly confidential source code to risk of compromise. MyChoice's proposal, given the security risks, is inconsistent with the stringent protections required for handling source code in litigation.

MyChoice refusal to pay for a secure remote inspection software in order to avoid its travelling inconvenience is unreasonable and inconsistent with the proportionality notions of discovery under Rule 26.

Moreover, Plaintiff has shown no legitimate hardship resulting from in-person inspection of Taiv's source code. MyChoice's complaints about the cost burden are belied by the fact that it has not yet disclosed an expert for review of the source code, and there is no evidence that any such expert would also be in this District and therefore avoid travel costs for review. The requirement to inspect source code in person at outside counsel's office is standard practice in

7

software-related patent litigation and balances the security concerns of the producing party with the discovery needs of the requesting party. There is no reason to deviate from it here.

### D. MyChoice's Motion is Improper as to its Third-Party Subpoena

Plaintiff's attempt to enforce its subpoena against non-party Taiv USA through this motion is procedurally improper. Taiv USA and Taiv Inc. are independent corporate entities, and MyChoice has not demonstrated otherwise. If Plaintiff seeks to compel production from Taiv USA, it should follow the requirements of Rule 45 and move to enforce in the proper district. Fed. R. Civ. P. 45(d)(2)(B) ("on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection"). MyChoice cannot ask a party to produce documents in response to a subpoena to a third party, nor can it properly ask the Court to enforce a subpoena to a third party by compelling its parent company to have the third party produce the records. Plaintiff had the option to name Taiv USA as a defendant, but that would have required it to file this case in the proper venue, where the defendant resides. Instead, Plaintiff chose to sue the foreign parent company, without naming the subsidiary in the U.S. Now Plaintiff must follow the proper procedure to seek discovery from it.

If MyChoice believes that Taiv Inc. has documents responsive to similar requests in its possession, custody, or control, then it should request that Taiv Inc. to provide them via the normal course of discovery, not by asking this court to compel Taiv to produce documents in response to "document requests, which were served on [a third party] via a subpoena." Motion at 7.

Even putting procedural improprieties aside, as a practical matter Taiv has already agreed to produce relevant information from Taiv USA. After the parties conferred regarding the information sought by MyChoice, Taiv produced updated financial information, including

8

information related to revenue received by Taiv USA for U.S. sales of the accused products. At this point, it is unclear what additional relevant documents would be available from non-party Taiv USA that are unavailable from Taiv, but, again, Taiv has offered to let MyChoice inspect its business records and MyChoice has refused.

## II.    MYCHOICE'S DISCOVERY REQUESTS ARE FACIALLY OVERBROAD

MyChoice's laundry list of overbroad categories of documents call for nearly every possible document Taiv has, clearly an effort to harass Taiv with discovery. MyChoice simply took the contents of its overbroad subpoena to Taiv USA and applied them to Taiv as well.

For example, MyChoice requests "[a]ll Defendant Taiv financial statements from January 1, 2021, to the present," a request that would apparently include any internal or external presentation regarding Taiv's finances from world-wide operations or sales, regardless of whether it is relevant to accused products sold in the United States. Dkt. 37-1 at 1 (Request No. 3). This request is particularly excessive, as this case involves only sales in the United States and Taiv has already produced comprehensive financial information, including revenue, cost and profit information that includes information from Taiv's U.S. subsidiary. Indeed, when the parties conferred on this issue, MyChoice could not identify information it was lacking that would be provided by this request, yet it is included in its motion to compel.

Similarly, Plaintiff requests "[a]ll product documentation and marketing literature regarding any Accused Instrumentality provided to any subsidiary, affiliate, sales representatives, wholesalers, resellers, integrators, third-party support organizations, and end-users of Accused Instrumentalities." Dkt. 37-1 at 1 (Request No. 4). This request is clearly overbroad, as it seeks **every document** about Taiv's products, regardless of whether it is cumulative information, duplicative or even relevant. In addition to every external document regarding Taiv's products, MyChoice asks for every internal document—"[a]ll business plans,

9

marketing plans, and product development proposals for any Accused Instrumentality"—and documents showing the identity of any person or who has ever received any document regarding Taiv's products. *Id.* (Request Nos. 5, 10).

Another example of Plaintiff's excessive requests is its demand for "[a]ll documents provided to any financial institution, investor, or potential investor of Defendant Taiv or Taiv USA, its wholly owned subsidiary, that includes any sales information, sales projections, market information, or financial projections based on whole or part on revenues derived from any Accused Instrumentality." This request seeks virtually any communication regarding any sale, or any characterization of Taiv's finances, which is unnecessary and overly broad in light of the detailed financial disclosures already provided.

Notwithstanding the overbreadth of MyChoice's document requests, Taiv met its discovery obligations by collecting source code for its accused instrumentalities and producing detailed financial information to MyChoice. Then, after conferring with MyChoice regarding its overbroad requests, given that these requests essentially call for every document of the company, Taiv offered to make its records available for inspection in the location where they are kept. That MyChoice refuses to perform this inspection is telling; it either does not really need the documents it seeks, or it is simply attempting to increase the cost of litigation to harass Taiv. It is equally revealing that, other than non-source code technical documents, MyChoice's Motion does not actually make the case that any of its other requests for documents are relevant and proportional to the needs of the case. Instead, it asks the Court to compel Taiv to produce all documents responsive to 41 requests for production without any further explanation.

### III. MYCHOICE'S DEMAND FOR ADDITIONAL RESPONSES IS PREMATURE

Contrary to Plaintiff's assertions, Taiv has responded to each of MyChoice's discovery requests. Taiv conferred at length with MyChoice regarding the 41 requests attached as Exhibit A to the Motion, and MyChoice did not ask for (or even mention) written responses prior to the filing of its Motion to Compel. Indeed, MyChoice agreed to drop or table several of these requests during those conferences of counsel, yet the Motion includes all of them.

Although this motion is untimely with regard to written responses, Taiv does not object to providing formal written responses and objections to each category of documents—MyChoice need only have asked. At the same time, the filing of this motion appears to be an attempt to create a discovery dispute where none exists.

### IV. CONCLUSION

For these reasons, Defendant Taiv, Inc. respectfully requests that the Court deny Plaintiff's Motion to Compel in its entirety.

Dated: October 21, 2024

Respectfully submitted,

By: /s/ *Phillip Haack*
Ryan Marton (CA 223979 *admitted E.D. Tex.*)
Hector Ribera (CA 221511 *admitted E.D. Tex.*)
Phillip Haack (CA 262060 *admitted E.D. Tex.*)
**MARTON RIBERA SCHUMANN & CHANG LLP**
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone: (415) 360-2515
Email: ryan@martonribera.com
hector@martonribera.com
phaack@martonribera.com

***COUNSEL FOR DEFENDANT TAIV, INC.***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on October 21, 2024.

By: /s/ *Phillip J. Haack*
      Phillip J. Haack