**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MYCHOICE, LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>TAIV, INC.<br><br>           Defendant. | Civil Action No. 2:23-cv-00507-JRG-RSP |

**OPPOSITION TO MOTION TO COMPEL OF DEFENDANT TAIV, INC.**

Plaintiff MyChoice, LLC's Motion to Compel (Dkt. 37, the "Motion") is an attempt to shift the costs and burden of unnecessary discovery to Defendant, Taiv, Inc. Taiv has complied with its discovery obligations, having produced the source code for the accused system and relevant documents regarding damages, and remains an open book, having offered to let MyChoice inspect its records for any additional relevant documents.

Plaintiff's Motion fails to identify any discovery request by name or explain the relevance of any request under Rule 26's standards of proportionality and relevance. Instead, it requests: 1) written responses it never asked for prior to filing this Motion, 2) that the Court rewrite the Order Regarding e-Discovery to shift the discovery burden fully to Taiv, 3) that Taiv produce documents it has offered for inspection, 4) that the Court modify the Protective Order to force Taiv relocate its source code to a new, more burdensome location, and 5) that Taiv be compelled to produce documents in response to a subpoena to a U.S. subsidiary that Plaintiff chose not to name in its Complaint. None of this relief is proper. While the Motion recites a litany of mischaracterizations about Taiv and its discovery efforts, the following is indisputable: 1) Taiv has made its source code available for inspection under the Court's Protective Order; 2) Taiv has produced the relevant financial information; and 3) Taiv has offered to let MyChoice inspect its records for other information, an offer MyChoice has refused.

MyChoice is a Massachusetts limited liability company. Defendant Taiv is a Canadian company, and it has a U.S. subsidiary in New York. Taiv has requested that this case be transferred to a more convenient forum. (Dkt. 14.) Plaintiff opposed that motion but now wishes to circumvent the Federal Rules of Civil Procedure by asking the Court to have a Canada-based defendant provide all its documents and source code in Texas, refusing to go where the documents are kept in the ordinary course or to Taiv's selected location to keep its source code

secured as allowed under the Court's Protective Order. MyChoice repeatedly alleges that Taiv is "refusing to produce documents" where Taiv has offered MyChoice the option to come inspect its business records for whatever documents it believes are relevant. Its refusal to do so does not mandate an additional burden on Taiv and the Motion should be denied.

## I. TAIV HAS COMPLIED WITH ITS DISCOVERY OBLIGATIONS

Taiv has produced the documents typically needed in a patent litigation action, including the source code for the accused system and detailed financial information, including revenue, cost and profit information, and including information about revenues related to sales made by its (non-party) subsidiary, Taiv USA. Keeping in mind the scope of discovery and proportionality requirements of Rule 26, Taiv believes that is has fully complied with its discovery obligations. But it Taiv is not seeking to hide any information. If Plaintiff believes there are additional relevant documents it needs to prosecute this case, Taiv has offered MyChoice the option to come inspect its business records to find whatever it may need.

### A.  Taiv Complied with P.R. 3-4

The Motion conflates two distinct issues: whether Taiv has complied with the local patent rules and whether MyChoice might be entitled to additional discovery of technical documents. Patent Rule 3-4 requires that Taiv " must produce or make available for inspection and copying … Source code … or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant…" P.R. 3-4. Taiv complied by making its source code available for inspection under the Court's Protective Order. It is incontrovertible that the source code is more than "sufficient to show the operation" of Taiv's accused system. That MyChoice has now decided it would rather not inspect the source code does not mean Taiv has failed to meet its obligations under P.R. 3-4.

During the parties' conferences, Taiv noted that the source code is the best evidence of

how the accused system operates, because it is the human-readable version of the accused software. And while any other documentation is necessarily less accurate than the source code, Taiv offered to let MyChoice inspect its technical documents. MyChoice just does not want to.

**B.    Inspection of Records is Standard, and the e-Discovery Order Does not Mandate Otherwise**

In response to MyChoice's requests for additional but less relevant technical documents, which would incur substantial expense to collect, review, and produce, Taiv offered to allow Plaintiff to inspect its documents and business records where they are kept in the ordinary course of business. Plaintiff refused, demanding that all documents be produced electronically in Texas.

The Federal Rules of Civil Procedure contemplate that a party responding to a request for production may either allow inspection of its records or produce copies. *See* Fed. R. Civ. P. 34. Indeed, production is the alternative, even for electronically stored information. Fed. R. Civ. P. 34(b)(2)(B) ("The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection."). In response to many of MyChoice's overbroad and less relevant document requests, Taiv exercised its right to offer inspection of its business records at its offices in Canada, as is proper under the Federal Rules.

Courts recognize that "the general rule [is] that business records should be examined at the place where they are kept, at least where the documents requested are large in number and their production poses some inconvenience." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 220–21 (C.D. Cal. 2009); *Betts v. Agri-Tech Servs., Inc.*, No. 87-4110-R, 1990 WL 5731, at *1 (D. Kan. Jan. 23, 1990). This is true even if it may be less convenient for MyChoice to travel for the inspection. *See Kleppinger v. Texas Dep't of Transp.*, No. CV L-10-124, 2012 WL 12893651, at *2 (S.D. Tex. Mar. 4, 2012) ("…Defendant is only required to make the requested documents available for inspection and copying, and Defendant is not required to incur the costs

of copying those documents for Plaintiff.") (citing *Monarch Ins. v. Spach*, 281 F.2d 401, 413 n. 30 (5th Cir. 1960)); *see also Williams v. Taser Intern., Inc.*, 2006 WL 1835437, at *6 (N.D. Ga. 2006); *Cardenas v. Grp. Dorel Juv., Inc.,* 230 F.R.D. 611, 620 (D. Kan. 2005).

The E-Discovery Order (Dkt. 33) does not change this rule. It governs the form of production and limits what ESI is generally discoverable. As Plaintiff admits, Taiv produced its financial records and other information following the form of production in the E-Discovery Order. Motion at 5. The E-Discovery Order does not prohibit making documents available for inspection, and MyChoice does not identify any clause that prohibits it. If, after inspection, Plaintiff wishes to have copies of specific documents produced electronically, Taiv will do comply with the E-Discovery Order's formatting requirements. Plaintiff's refusal to inspect the documents where they are kept in the ordinary course of business, despite the established rule, appears to be an attempt to shift the burden of discovery onto Taiv. The Court should reject it.

### C.      In-Person Inspection of Source Code is Typical and is Reasonable Here

Plaintiff's objection to inspecting the source code in San Francisco also lacks merit. The Protective Order, agreed to by both parties and entered by the Court, expressly states that the computer containing the source code "may only be located at the offices of the producing Party's outside counsel." Dkt. 32 at 5. This provision is in the model protective order and the draft proposed by MyChoice. Plaintiff was aware of this provision when it agreed to the Protective Order and raised no objections. MyChoice protests that it assumed Taiv would hire Texas counsel, but it never discussed this assumption with Taiv. As it admits, MyChoice's request to move the source code inspection to Texas would require Taiv to hire different or additional counsel, which is obviously prejudicial to Taiv, who is entitled to its counsel of choice.

MyChoice's remote review proposal is also flawed. Taiv compromised and offered to consider secure remote review provided MyChoice covered the costs. MyChoice rejected this

offer and instead proposed insecure "TeamViewer" software.  Ex. A.  TeamViewer is for remote control system administration, not for secure code review, and it has serious security issues.[1]  *See Remote access giant TeamViewer says Russian spies hacked its corporate network*, TechCrunch (June 28, 2024), https://techcrunch.com/2024/06/28/teamviewer-cyberattack-apt29-russia-government-hackers/.  Taiv was understandably unwilling to agree to TeamViewer and expose its sensitive source code to an unacceptable risk of compromise.  Plaintiff's proposal is inconsistent with the protections required for handling source code in litigation.

Plaintiff's refusal to pay for secure remote inspection software in order to avoid travelling inconvenience is unreasonable and inconsistent with the proportionality requirements of Rule 26.  And it has shown no legitimate hardship.  MyChoice's complaints about the cost burden are belied by the fact that it has not yet disclosed an expert for source code review, and there is no evidence that its expert will also be in this District and able to avoid travel costs for review.  The requirement to inspect source code in person at outside counsel's office is standard practice in software-related patent litigation and balances the security concerns of the producing party with the discovery needs of the requesting party.  There is no reason to deviate from it here.

D.    **MyChoice's Motion is Improper as to its Third-Party Subpoena**

Plaintiff's attempt to enforce its subpoena against non-party Taiv USA through this motion is procedurally improper.  If Plaintiff seeks to compel production from Taiv USA, it should follow the requirements of Rule 45.  Fed. R. Civ. P. 45(d)(2)(B) ("…the serving party may move the court for the district where compliance is required for an order compelling production or inspection").  MyChoice cannot ask Taiv to produce documents in response to a

---

[1] TeamViewer also enables file transfers off of the remote computer.  *See* https://www.teamviewer.com/en-us/solutions/use-cases/file-transfer/.

third-party subpoena, nor can it properly ask the Court to enforce a subpoena by compelling its parent company to have the third party produce the records. Plaintiff could have named Taiv USA as a defendant, but that would have required it to file this case where defendant resides. Instead, Plaintiff chose to sue only the foreign parent company. Now Plaintiff must follow the proper procedure to seek discovery. If MyChoice believes that Taiv Inc. has documents responsive to similar requests in its possession, custody, or control, then it should request that Taiv Inc. provide them via normal discovery, not by asking the Court to compel Taiv to respond to "document requests, which were served on [a third party] via a subpoena." Motion at 7.

And as a practical matter, Taiv has already agreed to produce relevant information from Taiv USA. After the parties conferred regarding the information sought by MyChoice, Taiv produced updated financial information, including information related to revenue received by Taiv USA for U.S. sales of the accused products. It is unclear what additional relevant documents would be available from non-party Taiv USA that are unavailable from Taiv, and again, Taiv has offered to let MyChoice inspect its business records.

## II.     MYCHOICE'S DISCOVERY REQUESTS ARE FACIALLY OVERBROAD

MyChoice's list of overbroad categories of documents—copied from its subpoena to Taiv USA—call for nearly every document Taiv has, seemingly an effort to harass Taiv with discovery. For example, MyChoice demands "[a]ll Defendant Taiv financial statements from January 1, 2021, to the present," a request that would apparently include all financial documents from world-wide operations or sales, regardless of whether it is relevant to accused products sold in the United States, the only sales at issue. Dkt. 37-1 at 1 (Request No. 3). Taiv has already produced comprehensive financial information, including information from Taiv's U.S. subsidiary. When the parties conferred on this issue, MyChoice could not identify information it was lacking that would be provided by this request, yet it is included in its motion to compel.

Plaintiff also requests "[a]ll product documentation and marketing literature regarding any Accused Instrumentality provided to any subsidiary, affiliate, sales representatives, wholesalers, resellers, integrators, third-party support organizations, and end-users of Accused Instrumentalities." *Id.* (Request No. 4). This request is overbroad as it seeks **every document** about Taiv's products, regardless of whether it is cumulative, duplicative or even relevant. In addition to every external document regarding Taiv's products, MyChoice asks for every internal document ("[a]ll business plans, marketing plans, and product development proposals for any Accused Instrumentality"), documents to showing the identity of any person or who has ever received any document regarding Taiv's products, and virtually any communication regarding any sale, or any characterization of Taiv's finances. *Id.* (Requests Nos. 5, 6, 10).

Notwithstanding the overbreadth of MyChoice's document requests, Taiv met its discovery obligations by collecting source code for its accused instrumentalities and producing detailed financial information to MyChoice. After conferring with MyChoice regarding its overbroad requests, Taiv offered to make its records available for inspection in the location where they are kept. That MyChoice refuses to perform this inspection is telling; it either does not really need the documents it seeks, or it is simply attempting to increase the cost of litigation to harass Taiv. It is equally revealing the Motion does not argue that any documents other than additional technical documents are relevant and proportional to the needs of the case. Instead, it asks the Court to compel Taiv to produce all documents responsive to 41 requests for production without any further explanation.

## III.    CONCLUSION

For these reasons, Defendant Taiv, Inc. respectfully requests that the Court deny Plaintiff's Motion to Compel in its entirety.

Dated: October 22, 2024                                 Respectfully submitted,

By:    /s/ *Phillip Haack*
Ryan Marton (CA 223979 *admitted E.D. Tex.*)
Hector Ribera (CA 221511 *admitted E.D. Tex.*)
Phillip Haack(CA 262060 *admitted E.D. Tex.*)
**MARTON RIBERA SCHUMANN & CHANG LLP**
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:   (415) 360-2515
Email:       ryan@martonribera.com
                 hector@martonribera.com
                 phaack@martonribera.com

***COUNSEL FOR DEFENDANT***
***TAIV, INC.***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing is being served on the

counsel of record via the CM/ECF system on October 22, 2024.


By:    */s/ Phillip J. Haack*
           Phillip J. Haack