# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MYCHOICE, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-507-JRG-RSP |
| | § | |
| TAIV, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Taiv, Inc.'s Motion to Transfer Venue to the District of Massachusetts Pursuant to 28 U.S.C. § 1404(a). **(Dkt. No. 14)**. For the reasons discussed below, the Motion is **DENIED**.

### I.   LEGAL STANDARD

A federal district court may transfer a case "for the convenience of parties and witnesses" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 202–03 (5th Cir. 2004) ("*Volkswagen I*"). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and proper venue. *Id.* at 203. Only if this statutory requirement is met should the Court determine whether convenience warrants a transfer of the case. *See id.*; *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*"). The burden to prove that a case could have been brought in the transferee forum falls on the party seeking transfer. *See Volkswagen II*, 545 F.3d at 315; *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963).

Regarding the propriety of venue specifically, the Judicial Code provides that 28 U.S.C. §

1

1400(b) is the "sole and exclusive provision controlling venue in patent infringement actions" and is not supplemented by the general venue statutes. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 266 (2017) (citing *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 229 (1957)). Pursuant to 28 U.S.C. § 1400(b), venue lies "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).

Three elements must be met in order to establish that a defendant has a regular and established place of business in the district: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. *In re: Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Once the moving party has established that the instant case could have been brought in the transferee forum, the Court moves on to consider the private and public factors provided in *Volkswagen I*. The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quoting *Volkswagen I*, 371 F.3d at 203). The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *Volkswagen I*, 371 F.3d at 203) (alterations in original). The factors are neither exclusive nor exhaustive, and no one factor is dispositive. *Id.*

"It is the movant's burden—and the movant's alone—to adduce evidence and arguments

that clearly establish good cause for transfer based on convenience and justice." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). "[S]howing 'good cause' requires the movant to 'clearly demonstrate' that its chosen venue is 'clearly more convenient.' *Id*. That standard is not met if the movant merely shows that the transferee venue is more likely than not to be more convenient. *Id*. Likewise, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. *Id*."

"Accordingly, to establish good cause, a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id*. (emphasis in original).

In considering a transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings but must draw all reasonable inferences and resolve factual disputes in favor of the non-movant. *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-cv-00123, 2019 U.S. Dist. LEXIS 205696, 2019 WL 6345191, at *2 (E.D. Tex. Nov. 27, 2019); *cf. Trois v. Apple Tree Auction Cent. Inc.*, 882 F.3d 485, 492-93 (5th Cir. 2018) (reviewing a transfer under § 1406); *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (reviewing enforcement of a forum-selection clause).

## II.   ANALYSIS

*In re Clarke* shows that motion to transfer under 1404(a) carries a substantial burden. *See generally*, *In re Clarke*, 94 F.4th 502. Here, Taiv has failed to meet that burden.

### A.   Propriety of the Transferee Forum

Taiv argues that as a foreign defendant, it is subject to suit in any judicial district that has personal jurisdiction over it. Dkt. No. 14 at 5 (citing 28 U.S.C. § 1391(c)(3); *Brunette Mach.*

*Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 709–10 (1972)); *In re HTC Corp.*, 889 F.3d 1349, 1356–61 (Fed. Cir. 2018)); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 268 n.2 (2017) (reserving question of patent venue statute's applicability to foreign corporations). Thus, the only question is whether the transferee court could exercise personal jurisdiction over it. Taiv argues that it is subject to personal jurisdiction in Massachusetts. Dkt. No. 14 at 6. First, it argues that it has sold the accused product to at least one customer in Massachusetts. *Id.* (citing Dkt. No. 14-2 at ¶ 6 and Exhibit 1). Second, Taiv argues that the activity of selling the accused product to a Massachusetts company clearly relates to the allegation of patent infringement. *Id.* at 7. Third, Taiv argues that the exercise of jurisdiction would be reasonable in Massachusetts. *Id.*

MyChoice responds that at the time of filing the suit it could not have brought the suit in Massachusetts. Dkt. No. 17 at 6.[1] MyChoice accuses Taiv of backdating its certificate of acceptance for its Massachusetts location. *Id.* MyChoice has no direct evidence for this serious allegation, instead it relies on speculation from its Managing member. The Court reproduces MyChoice's argument below:

> MyChoice has many reasons to believe that the Certificate of Acceptance for the Massachusetts location was backdated to a pre-suit date in 2023, including: (1) the one loan location now claimed in Massachusetts is isolated where at least in 2023 Taiv tried to open entire markets at the same time; (2) Taiv has now removed all locations from its web site, where it used to list them all; and (3) Taiv began altering its contracts after this suit was filed to switch its contracts to Taiv USA Inc. and away from Taiv itself so as to position itself to claim jurisdiction and venue in Delaware, where Tavi USA Inc. was incorporated. Dkt. No. 17-3, at ¶ 20 Dkt. Nos. 17-21, 22. On top of all this, MyChoice, before filing suit, scoured Taiv's web site looking for venues with proper jurisdiction, it found no Taiv location in Massachusetts, and concluded it could not at that time file suit in Massachusetts. Dkt. No. 17-3, at ¶ 20. There is substantial, even compelling, doubt, taken from

---

[1] The Court notes that MyChoice has not complied with Local Rule CV-7(a), which requires that "[m]otions, responses, replies, and proposed orders, if filed electronically, shall be submitted in 'searchable PDF' format and shall not contain restrictions or security settings that prohibit copying, highlighting, or commenting." The Court expects MyChoice to strictly comply with this Order in future filings and reserves the right to strike them if they do not comply.

4

Taiv's own web site just before suit, that Taiv's late-appearing infringing Massachusetts location did not exist pre-suit.

Dkt. No. 17 at 6–7 (internal citations altered). MyChoice next argues that personal jurisdiction would be improper and unreasonable in Massachusetts because there was one alleged contact in Massachusetts and hundreds of contacts in Texas. *Id.* at 7.

Taiv has shown that Massachusetts courts would have jurisdiction over it. The Court does not find MyChoice's allegations of fabrication or "backdating" to be sufficiently supported. The Court expects parties to produce evidence beyond speculation when making such serious accusations. Furthermore, MyChoice's argument about Texas having more contacts with the suit than Massachusetts is misplaced. The relevant inquiry for personal jurisdiction is not to compare forums but to evaluate whether a forum has sufficient contacts—multiple forums can properly exercise personal jurisdiction over a defendant.

### B. Balancing the Private and Public Factors

The Fifth Circuit directs courts to avoid a mere tallying of the factors in resolving this dispute. *See In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). To that end, the Court considers not only each factor's outcome but also its weight to determine whether the actual convenience of the proposed transferee forum is "clearly more convenient" than that of this district. *In re Chamber of Commerce of United States of Am.*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *In re Clarke*, 94 F.4th at 508).

#### 1. Private Interest Factors

5

a.  Ease of Access to Sources of Proof

Taiv argues that all of its documents and physical evidence is located in Canada. Dkt. No. 14 at 9. It also argues that any evidence that may be found at customer sites is not unique and thus would be equally accessible in Massachusetts. *Id.* Taiv then argues that MyChoice's documents are likely to be found in Massachusetts. *Id.* Taiv specifically points to MyChoice's own prior art system that it claims is invalidating and was developed in Massachusetts. *Id.* Taiv points to other evidence that would be in Massachusetts based on this prior art system, such as information published by a MyChoice affiliated public relations consultant and evidence from customers of the MyChoice prior art system. *Id.* at 10.

MyChoice responds that by the time that Taiv filed its Motion, MyChoice's managing member, Mr. Theriault, had moved from Massachusetts to New Orleans, Louisiana with all of MyChoice's documents, which are electronically stored. Dkt. No. 17 at 8, 9. As to the prior art related documents, MyChoice represents that they are all electronically stored and under the control of Mr. Theriault in New Orleans. *Id.* at 9. MyChoice also argues that the evidence of infringement will come from the physical products located in bars around Texas. *Id.* at 10. Additionally, MyChoice argues that it has not had customers for the prior art system for over seven years. *Id.* at 9. Finally. MyChoice argues that the Patent Office looked at MyChoice's previous patent when it granted its Asserted Patent. *Id.*

The Court finds that this factor is neutral. MyChoice does not argue that Taiv's documents are more easily accessible in Texas than in Massachusetts, so the inquiry focuses on MyChoice's documentary evidence, the accused infringing products, and third-party evidence regarding invalidity.

6

i.  MyChoice's Evidence

The location of MyChoice's documents is a neutral factor. First, MyChoice avers that its evidence is all stored electronically. While courts should consider "the location of document custodians and [the] location[s] where documents are created and maintained," (*In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021)), "[w]hen the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis" (*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up) (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022))). Thus, although Mr. Theriault now resides in New Orleans, MyChoice's documentary evidence is equally accessible in either forum.

ii.  Accused Infringing Products

The location of the accused infringing products is also a neutral factor. While MyChoice argues that there are more bars featuring the accused products in Texas than there are in Massachusetts, the quantity is irrelevant. There is no indication that the products are not identical, so inspecting more than one would not lead to more evidence to prove infringement. Moreover, much of the evidence of infringement likely will come from the inspection of source code and technical documents as opposed to the physical products. *See* Dkt. No.37 (Plaintiff's Motion to Compel technical documents and source code).

iii.  Prior Art Documents

Prior art related documents are not more easily located in Massachusetts than in Texas. Taiv points to speculative evidence from third parties (including customers and PR specialists) about prior art that would support its invalidity position. MyChoice's rebuttal indicates that no evidence could exist for its prior art system because it only had customers for the system over

7

seven years ago. Taiv does not identify specific evidence that the PR consultant would have that MyChoice lacks. Nor does Taiv profess any level of confidence in finding customers of the prior art system in Massachusetts. As the Fifth Circuit recently held, the movant must show "that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke,* 94 F.4th at 508. The availability of a witness is best addressed in the next category.

b. Availability of Compulsory Process

For the next factor, Taiv points to several sets of witnesses that are within the subpoena power of the District of Massachusetts but not the Eastern District of Texas. Dkt. No. 14 at 10–11. The first set is early customers of MyChoice's prior art system. *Id.* at 11. The next is MyChoice's public relations consultant. *Id.* Next is MyChoice employees residing in Massachusetts. Finally, Taiv points to the representatives of its customer in Massachusetts. *Id.*

MyChoice points out that Taiv has not pointed out a single unwilling witness. Dkt. No. 17 at 10. Additionally, MyChoice asserts that one of its former employees is now deceased and the other had nothing to do with the technology and now resides in Maine and Georgia. *Id.* MyChoice asserts that the public relations consultant has no information about the Asserted Patent in this case. MyChoice also points out specific bars in Texas where Taiv accused products are used. *Id.* at 10–11. Additionally, it argues that this Court could compel witnesses from the Texas customers to sit for a deposition.

This factor slightly favors transfer. First, as to customers of the prior art system, Taiv has not specifically identified any specific customers nor indicated that it would actually be able to find any of them after such a long period of time, so these do not factor in favor of Taiv's motion. Next, Taiv identifies the public relations consultant as a potentially relevant witness for their

8

invalidity argument. This witness factors in favor of transfer to Massachusetts, where she is subject to that court's subpoena power. While MyChoice asserts that its former employee had nothing to do with the technology at issue, the Court believes that Defendant is entitled to probe that assertion and thus that witness factors in favor of transfer. Finally, the current customers are a neutral component because to the extent the customers are relevant, there are customers subject to the subpoena power of both courts.

c.  Cost of Attendance for Willing Witnesses

The next private interest factor is the cost of attendance for willing witnesses.

Taiv argues that the District of Massachusetts is equally accessible as this district for its witnesses. Dkt. No. 14 at 12. However, Taiv argues that the District of Massachusetts. is far more convenient for MyChoice's witnesses because there are no MyChoice party witnesses in Texas. *Id.*

MyChoice responds that its "key and sole party witness," Mr. Theriault, resides in New Orleans, Louisiana and thus is much closer to this district than to the District of Massachusetts. Dkt. No. 17 at 11–12. MyChoice further argues that the distance from Winnipeg, Canada to Marshall, Texas is about 500 miles closer than from Winnipeg to Boston. *Id.* at 12.

The cost of attendance for willing witnesses factor has been described as the most important factor to weigh. *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit uses the "100-mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *In re Genentech*, 566 F.3d at 1343; *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020).

9

This factor weighs against transfer. MyChoice's key witness, Mr. Theriault, is clearly much closer to Marshall than he is to Boston. The Court finds that Taiv's witnesses' burden to travel to Marshall is about equal to traveling to Boston.

### d.  Other Practical Problems

Neither Taiv nor MyChoice identify any other practical problems. Dkt. No. 14 at 12; Dkt. No. 17 at 12. Thus, this factor is neutral.

## 2. Public Factors

### a.  Court Congestion

Taiv's section caption claims that "the 'Court Congestion' factor is neutral," but the body of its Motion says that "this factor slightly favors transfer." Dkt. No. 14 at 12, 13. Taiv argues that time to disposition is about one month faster in the District of Massachusetts than in this district and the District of Massachusetts has half as many civil cases and trials on a per-judge basis. *Id.* at 13.

MyChoice responds that Taiv's statistics are unhelpful. Dkt. No. 17 at 12. First, it argues that the statistics do not break down time to disposition by case type and thus do not factor in the typical complexity of a patent trial. *Id.* Next, MyChoice argues that the District of Massachusetts does not have specialized local patent rules. *Id.* Finally, MyChoice argues that this case has been pending in this Court since early November 2023, so a transfer would necessarily delay the case. *Id.* at 12–13.

The Court finds that this factor is neutral. Taiv's statistics are too general to be helpful and MyChoice does not provide any relevant factors in support of keeping the case here.

b. Local Interest

Taiv argues that the "local interest" factor favors the District of Massachusetts. Dkt. No. 14 at 13. First, it argues that the design, development, and sale of the accused products occurred in Canada, so that component is neutral. *Id.* It then argues that MyChoice is a Massachusetts company, and its design and development efforts happened there. *Id.*

MyChoice argues that the relevant test is the connections between a particular venue and the events that give rise to the suit, not the parties. Dkt. No. 17 at 13 (quoting *In re Clarke*, 94 F.4th at 511). MyChoice argues that the events that gave rise to the suit overwhelmingly occurred in Texas as compared to Massachusetts. *Id.*

The Court finds that this factor is neutral. While courts look to the location of the design and development of the accused infringing products, Taiv does not point out the relevance of the design and development of the asserted patent. *See R2 Sols. LLC v. Databricks Inc.,* No. 4:23-CV-1147, 2024 WL 4932719, at *6 (E.D. Tex. Dec. 2, 2024), *mandamus denied, sub nom. In re Databricks, Inc.,* No. 2025-113, 2025 WL 685916 (Fed. Cir. Mar. 4, 2025). For its part, MyChoice does not point to any alleged infringing acts in this district but relies on alleged infringement in other parts of Texas. The analysis is by district, not by state. *Volkswagen II*, 545 F.3d at 318.

c. Familiarity With Law and Conflict of Law

Both Parties agree that these factors are neutral. Dkt. No. 14 at 13; Dkt. No. 17 at 13.

### III. CONCLUSION

After reviewing each factor, one factor, Compulsory Process, slightly favors transfer, and one factor—arguably the most important factor—Cost of Attendance for Willing Witnesses, disfavors transfer. The remaining factors are neutral. Thus, the Court finds that Taiv has failed to

11

carry its burden to show that the District of Massachusetts is clearly more convenient than this District.

The Motion to Transfer (Dkt. No. 14) is **DENIED.**

**SIGNED this 23rd day of March, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE