# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MYCHOICE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:23-cv-00507-JRG-RSP |
| v. | ) |
| | ) |
| TAIV, INC., | ) |
| | ) |
| Defendant. | ) |

**Plaintiff MyChoice, LLC Local Patent Rules 3-1 and
3-2 Disclosure of Asserted Claims and Infringement Contentions**

Pursuant to the Court's Order dated April 17, 2024, setting this case for a scheduling conference on May 29, 2024, and Local Patent Rules 3-1 and 3-2, Plaintiff MyChoice, LLC. ("Plaintiff") hereby serves its disclosure of asserted claims and infringement contentions, including by reference the attachments hereto and accompanying document production, against defendant Taiv, Inc. ("Defendant").

**PRELIMINARY STATEMENT**

These disclosures reflect Plaintiff's current knowledge, understanding, belief and publicly available information. Plaintiff has not received any discovery from Defendant, particularly discovery of Defendants' confidential, proprietary, or non-public information and documents that describe the Accused Instrumentalities, or discovery on Defendant's past, discontinued, or other instrumentalities that are reasonably similar to the presently accused instrumentalities. The Asserted Patent describes technology, and the Asserted Claims recite elements that may be implemented in software, in whole or part.

1

Plaintiff intends to review Defendant's source code used or licensed in connection with the Accused Instrumentalities and reserves the right to supplement its infringement contentions in connection therewith, as contemplated in this Court's Discovery Order, ¶3(a)(i).

Any disclosure provided herein is not an admission of any factual or legal conclusion contained or otherwise implied in any Local Patent Rule or of the relevance of any particular document or subject matter. Plaintiff provides these disclosures without conceding the relevance or materiality of any subject matter. The following disclosures should not be construed as constituting Plaintiff's proposed construction of any claim term.

Plaintiff reserves all rights, including the right to amend, supplement, or clarify its disclosures and contentions, including its identification of infringed claims and accused instrumentalities, in view of the discovery and disclosures that will be forthcoming from Defendant, and as additional instrumentalities come into existence or become known to Plaintiff.

## I.    LOCAL RULE 3-1 DISCLOSURES

### A.    P.R. 3-1(a): Infringed Claims

Plaintiff identifies at least the following Asserted Patent and Asserted Claims as being infringed by Defendant in violation of 35 U.S.C § 271:  U.S. Patent No. 10,708,658, claims 1-14.  Plaintiff reserves the right to amend this list of Asserted Patent and Asserted Claims as additional information becomes available.

### B.    P.R. 3-1(b): Accused Instrumentalities

Plaintiff presently identifies the following Accused Instrumentalities that infringe the Asserted Claims:  Accused Instrumentalities refers to the taiv or "taivtv" services and related hardware and systems as generally described at www.taiv.tv for replacing undesirable content in a first media stream with desirable media based on content attributes associated with user preferences, generally referred to herein as its custom content replacement system.

A more detailed list of the Accused Instrumentalities, i.e., Defendant's products and services, and their features and components, is not easily accessible or otherwise publicly available and not determinable from simple inspection. Plaintiff anticipates that discovery and disclosures will be forthcoming from Defendant concerning all Accused Instrumentalities and any of their components, configurations, and implementations, thereby allowing Plaintiff to provide a definitive list of the Accused Instrumentalities.

### C.    P.R. 3-1(c): Infringement of Each Element

Plaintiff provides as Exhibit A hereto its Preliminary Claim Chart for Infringement of the Asserted Patent, which detail the correspondence between every element of every Asserted Claim and corresponding features of the Accused Instrumentalities, to the extent that information regarding such feature is publicly available. It is incorporated by reference within these Infringement Contentions as if fully set forth herein. The claim chart is exemplary, not limiting, and address the manner in which the Accused Instrumentalities infringe

the Asserted Patent and Asserted Claims without the benefit of any discovery or disclosures from Defendant. Citations included in the attached chart are exemplary only and should not be construed as limiting.

On information and belief, the Accused Instrumentalities utilize the same or substantially similar technology as presented in the attached claim chart, and the claim chart is therefore representative of the manner of infringement of each Accused Instrumentality. The mappings made in the attached claim chart between specific features of an Accused Instrumentality and corresponding elements of the Asserted Patent and Asserted Claims are representative of, and apply to, all Accused Instrumentalities and all known configurations, versions, and implementations of those Instrumentalities.

For at least the reasons provided in the attached Preliminary Claim Chart for Infringement, the Accused Instrumentalities infringe the Asserted Claims.

After a reasonable investigation of presently known and publicly available information, including Defendant's own website, Plaintiff has identified what it believes to be the current configurations, versions, and implementations of the Accused Instrumentalities. However, Plaintiff anticipates that the full scope of any configurations, versions, and implementations of the Accused Instrumentalities will be determined as a result of discovery and disclosures obtained from Defendant and from any third parties.

In the attached claim chart, Plaintiff has subdivided each Asserted Claim to illustrate where each claim element or limitation may be found within the Accused

Instrumentalities. These subdivisions should not be taken as an indication of the boundaries or limits of any claim element or limitation for purposes of the doctrine of equivalents, claim construction, or any other issue.

Plaintiff reserves the right to provide alternate claim mappings between features of an Accused Instrumentality and the claim elements, and to amend or supplement the claim chart, based on the disclosures and proceedings in this case, such as the contentions submitted by the parties and the results of any claim construction proceedings.

### D.    P.R. 3-1(d): Literal Infringement and Under the Doctrine of Equivalents

The attached Preliminary Claim Chart for Infringement set forth Plaintiff's claims for infringement, literally and under the doctrine of equivalents. Should Defendant contend that any element, step, or limitation is literally absent in an Accused Instrumentality, Plaintiff reserves the right to prove, based on the disclosures and proceedings in this case, such as the contentions submitted by the parties and the results of any claim construction proceedings, that there is at least an equivalent feature of the allegedly missing element, step, or limitation in the Accused Instrumentality, that any differences between the equivalent feature and the allegedly missing claim limitation are insubstantial, and that the Accused Instrumentality thus infringes under the doctrine of equivalents.

Plaintiff contends that Defendant directly infringes—literally and under the doctrine of equivalents—the Asserted Patent and Claims by making, providing, using, testing, distributing, selling, offering to sell, advertising, and/or

importing the Accused Instrumentalities in the United States, the State of Texas, and the Eastern District of Texas.

Plaintiff also contends that Defendant indirectly infringes—literally and under the doctrine of equivalents—the Asserted Patent and Claims by making, providing, using, testing, distributing, selling, offering to sell, advertising, and/or importing the Accused Instrumentalities in the United States, the State of Texas, and the Eastern District of Texas. Defendant has taken active steps to induce infringement of the Asserted Patent and Claims, such as the providing of instruction materials, engineering support, customer support, customer training, and other services for Defendant's employees, agents, partners, customers, users, and/or suppliers regarding the features, functions, operation, and use of the Accused Instrumentalities.

Plaintiff also contends that Defendant acted with intent to cause direct infringement. Specifically, Defendant had actual knowledge of the Asserted Patentt or was at least willfully blind as to their existence, and also had actual knowledge or was at least willfully blind that its actions would cause its employees, agents, partners, customers, users, and/or suppliers to directly infringe.

Plaintiff further contends that Defendant's infringement has been and continues to be knowing and willful in nature. Plaintiff has communicated with Defendant regarding its infringing custom content replacement system. Before this suit was filed Defendant had actual knowledge of the Asserted Patent and

its applicability to Defendant's products and methods. For example, on or about August 4, 2022, Plaintiff sent a Linked-In communication to Defendant describing Plaintiff's patented technology, attaching a copy of the Asserted Patent, and stating directly that Defendant was infringing that patent, and attaching a detailed patent claim analysis showing Defendant's infringement.

Also, on February 28, 2023, counsel for Plaintiff sent a letter to Defendant again providing notice of its infringement of the Asserted Patent.  In addition, Defendant has at least the following policies or practices that make its infringement of the Asserted Patent willful and make this an exceptional case: (1) not substantively investigating or responding to written notices of patent infringement; (2) not conducting sufficient due diligence to determine whether the company, business, and its custom content replacement system were infringing the Asserted Patent, especially when notified of such infringement; and (3) continuing with infringing acts of promoting, selling, using, offering for sale, and selling its custom content replacement system after receiving notice thereof.  Defendants's infringement of the Asserted Patent is intentional and willful.

### E.    P.R. 3-1(e): Priority Dates

The Asserted Patent each claim priority from U.S. Provisional Patent Application No. 62/623,661 filed on June 22, 2017.  Plaintiff reserves the right to amend the priority date of each Asserted Patent and Claim based on the disclosures and proceedings in this case, such as the contentions submitted by

the parties and the results of any claim construction proceedings.

### F.    P.R. 3-1(f): Plaintiff's Instrumentalities

Plaintiff is not presently asserting that it is currently offer for sale, selling, using, or importing any instrumentality that practice, incorporate, or reflect the Asserted Claims of the Asserted Patent.

## II.    LOCAL RULE 3-2 DOCUMENTS AND DISCLOSURES

### A.    P.R. 3-2(a): Disclosures Predating an Asserted Patent

Plaintiff is not presently aware of, or in possession, custody, or control, of any such documentation.  Plaintiff reserves the right to amend or supplement this disclosure based on further discovery and the disclosures and proceedings in this case.

### B.    P.R. 3-2(b): Conception and Reduction to Practice Predating an Asserted Patent or Priority Date

Plaintiff is not presently aware of, or in possession, custody, or control, of any such documentation.  Plaintiff reserves the right to amend or supplement this disclosure based on further discovery and the disclosures and proceedings in this case..

### C.    P.R. 3-2(c): File Histories

Plaintiff is producing documentation concerning the prosecution history of the Asserted Patent with the identification numbers MYCHOICE000001-213. Plaintiff reserves the right to amend or supplement this disclosure based on further discovery and the disclosures and proceedings in this case.

Date: May 15, 2024                       Respectfully submitted,

                                         */s / Michael C. Gilleran*
                                         Michael C. Gilleran
                                         (Mass. BBO No. 192210)
                                         *Pro hac vice* allowed
                                         michael.gilleran@fisherbroyles.com
                                         FISHERBROYLES, LLP
                                         75 State Street, Suite 100, PMB 4418
                                         Boston, Massachusetts 02109
                                         Direct: 781.489.5680
                                         Mobile: 339.237.1384
                                         LEAD ATTORNEY

                                         Chris P. Perque
                                         Texas State Bar No. 24005828
                                         FisherBroyles, LLP
                                         2925 Richmond Ave., Suite 1200
                                         Houston, TX 77098
                                         Phone: 832.604.4417
                                         Facsimile: 832.377.5929
                                         Email: chris.perque@fisherbroyles.com

                                         *Attorneys for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on the above date all counsel of record who are deemed to have consented to electronic service are being served with a copy of this filing via the Court's CM/ECF filing system.

                                         */s/ Chris P. Perque*
                                         Chris P. Perque

**Exhibit A**
MyChoice, LLC v Taiv, Inc.
PRELIMINARY INFRINGEMENT CONTENTIONS
U.S. Patent No. 10,708,658

This claim chart demonstrates Taiv's infringement of U.S. Patent No. 10,708,658 ("the '658 patent") by comparing each element of the asserted claims to corresponding components, aspects, and/or features of Taiv products and services identified below, which provide event-based notifications/alerts based on locations of fleets of vehicles, equipment, objects, drivers, and other assets (herein referred to as "Accused Instrumentalities"). These claim charts include information provided by way of example and not by way of limitation. As used herein, Accused Instrumentalities refers to the taiv or "taivtv" services and related hardware and systems as generally described at www.taiv.tv for replacing undesirable content in a first media stream with desirable media based on content attributes associated with user preferences.

The analysis set forth below is based only upon information from publicly available resources regarding the Accused Instrumentalities. An analysis of Taiv's (or other third parties') technical documentation and software source code will likely assist in more fully identifying all infringing features and functionality. Accordingly, MyChoice reserves the right to supplement this infringement analysis once such information is made available to MyChoice. Furthermore, MyChoice reserves the right to revise this infringement analysis, as appropriate, upon issuance of a Court Order construing any terms recited in the asserted claim.

Unless otherwise noted, MyChoice alleges that Taiv directly infringes the '658 patent in violation of 35 U.S.C. § 271(a) by selling, offering to sell, making, using, and/or importing the Accused Instrumentalities. The following exemplary analysis demonstrates that infringement. Unless otherwise noted, MyChoice further contends that the evidence below supports a finding of indirect or contributory infringement under 35 U.S.C. §§ 271(b) and/or (c), in conjunction with other evidence of liability under one or more of those subsections. Taiv makes, uses, sells, imports, or offers for sale in the United States, or has made, used, sold, imported, or offered for sale in the past, without authority, or induces others to make, use, sell, import, or offer for sale in the United States, or has induced others to make, use, sell, import, or offer for sale in the past, without authority products, equipment, or services that infringe claims of the '658 patent, including without limitation, the Accused Instrumentalities.

Unless otherwise noted, MyChoice alleges that each element of each claim asserted herein is literally met through Taiv's provision of the Accused Instrumentalities. However, to the extent that Taiv attempts to allege that any asserted claim element is not literally met, MyChoice believes and contends that such elements are met under the doctrine of equivalents. More specifically, in its investigation and analysis of the Accused Instrumentalities, MyChoice did not identify any substantial differences between the elements of the patent claims referenced in the chart below and the corresponding features of the Accused Instrumentalities, as set forth herein. In each instance, the identified feature of the Accused Instrumentalities performs at least substantially the same function in substantially the same way to achieve substantially the same result as the corresponding claim element.

To the extent the chart of an asserted claim relies on evidence about certain specifically identified Accused Instrumentalities, MyChoice asserts that, on information and belief, any similarly functioning instrumentalities also infringes the charted claim. MyChoice reserves the right to amend this infringement analysis based on other products made, used, sold, imported, or offered for sale by Taiv. MyChoice also reserves the right to amend this infringement analysis by citing other claims of the '658 patent, not listed in the claim chart, that are infringed by the Accused Instrumentalities. MyChoice further reserves the right to amend this

1

infringement analysis by adding, subtracting, or otherwise modifying content in the "Accused Instrumentalities" column of each chart.

The notes and/or cited excerpts utilized herein are set forth for illustrative purposes only and are not meant to be limiting in any manner. For example, the notes and/or cited excerpts, may or may not be supplemented or substituted with different excerpt(s) of the relevant reference(s), as appropriate. Further, to the extent any error(s) and/or omission(s) exist herein, all rights are reserved to correct the same.

| Patent #: 10,708,658 Claim 1: | TAIV System Features |
|---|---|
| A method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of: | https://www.taiv.tv/venues<br>"How it Works":<br>"Our cable box [OUTPUT DEVICE] add-on connects to your existing system to make the content [FIRST MEDIA STREAM] more relevant and interesting [ATTRIBUTES]to your customers" |
| detecting in real-time, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database; | https://techcrunch.com/2020/03/16/no-mute-necessary-taiv-replaces-live-tv-ads-at-bars-with-custom-content/<br>"Taiv installs hardware [MONITORING STATION] at the restaurant that sits between the live feed and the TV, analyzing the image so that it can instantly understand [IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content before anyone even notices."<br><br>*See also* https://www.taiv.tv/ |
| selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability; | https://www.taiv.tv/venues<br>"How it Works":<br>"You can use any extra ad slots to advertise your own upsells, specials, and events. [SUBSTITUTE CONTENT]<br>Optionally play music during commercial breaks to improve your atmosphere" [USER PREFERENCE INDICATING DESIRABILITY]<br><br>*See also* https://www.taiv.tv/ |
| responsive to detecting in real-time the undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content; | https://www.taiv.tv/venues<br>"How it Works":<br>"…analyzing the image [FIRST MEDIA STREAM] so that it can instantly understand [DETECTING IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content [SECOND MEDIA STREAM] before anyone even notices. Taiv is totally seamless so your customers won't notice anything different" |

| | |
|---|---|
| further responsive to detecting in real-time the undesirable content in the first media stream, configuring, in the system database, an undesirable content attribute and associating the undesirable content attribute with the first media stream; | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br><br>*"we build our own hardware and use a heuristics-based computer vision approach for classification. We're the first (and only) company in the world that can detect TV commercials accurately."* |
| wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal; | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br>"When it cuts to commercial break, we dynamically insert ads that are perfect for that environment." |
| after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to the undesirable content; | Confirmed that TAIV system in use switches to alternate content at the beginning of a commercial break and alternate content runs through the end of commercial break and returns to regular programming [FIRST MEDIA STREAM] when commercial break is over, not before [AN END TO THE UNDESIRABLE CONTENT]<br><br>*See also* Demo video: https://youtu.be/JjI_jZRoesY |
| responsive to detecting the end to the undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device; | Confirmed that TAIV system in use runs alternate content through the end of commercial break [UNDESIRABLE CONTENT] and returns to regular programming when commercial break is over, not before [DETECTING THE END TO THE UNDESIRABLE CONTENT] |
| further responsive to detecting the end to the undesirable content in the first media stream, changing, in the system database, the undesirable content attribute associated with the first media stream; and, | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br><br>*"we build our own hardware and use a heuristics-based computer vision approach for classification. We're the first (and only) company in the world that can detect TV commercials accurately."* |
| wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal. | Confirmed that TAIV system in use switches from alternate content [SECOND MEDIA STREAM] back to regular programming [FIRST MEDIA STREAM] when commercial break is over |
| | |

| Claim 2: | TAIV System Features |
|---|---|
| The method of claim 1, further including: prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for the undesirable content. | https://techcrunch.com/2020/03/16/no-mute-necessary-taiv-replaces-live-tv-ads-at-bars-with-custom-content/ "Taiv installs hardware [MONITORING STATION] at the restaurant that sits between the live feed and the TV, analyzing the image [MONITORING FIRST MEDIA STREAM] so that it can instantly understand that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content before anyone even notices." |
| | |
| Claim 3: | TAIV System Features |
| The method of claim 1, further including: assigning, by the monitoring station, a substitute content attribute to the substitute content and storing the substitute content attribute in the system database. | https://www.taiv.tv/venues "How it Works": "Our cable box add-on connects to your existing system to make the content more relevant and interesting [ATTRIBUTES] to your customers" |
| | |
| Claim 4: | TAIV System Features |
| The method of claim 1, further including: storing, in the system database, a directory of substitute content attributes and a directory of substitute content, each member of the directory of substitute content associated with at least one member of the directory of substitute content attributes; associating, by the monitoring station, at least one member of the directory of substitute content attributes with the primary content attribute; and, analyzing, by the monitoring station, the at least one member of the directory of substitute content attributes associated with the primary content attribute for correspondence to a user preference. | MyChoice believes that Taiv likely infringes this claim; however, the infringement analysis thereof will be based upon MyChoice's analysis of Taiv technical documents and source code when produced. MyChoice reserves the right to supplement its contentions regarding this claim after its review and analysis of such materials. |
| | |
| Claim 5: | TAIV System Features |
| The method of claim 1, further including: soliciting a user preference corresponding to the substitute content. | https://www.taiv.tv/venues "How it Works": "Our cable box add-on connects to your existing system to make the content more relevant and interesting to your customers [USER PREFERENCE]" |
| | |
| Claim 6: | TAIV System Features |
| The method of claim 1 wherein the at least one of the plurality of substitute content attributes associated with the primary content attribute is one of an event | https://www.taiv.tv/venues "How it Works": "Our cable box add-on connects to your existing system to make the content more relevant and interesting [ATTRIBUTES] to your customers" |

| attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof. | |
|---|---|
| **Claim 7:** | **TAIV System Features** |
| The method of claim 1 wherein the substitute content is one of broadcast network content, cable network content, satellite network content, internet media, user generated content, shared content, and content stored in the system database. | https://www.taiv.tv/venues<br>"How it Works":<br>"…analyzing the image so that it can instantly understand that a commercial has come on , and switch over to custom content [SUBSTITUTE CONTENT] before anyone even notices. Taiv is totally seamless so your customers won't notice anything different"<br><br>https://www.taiv.tv/channels/clash-tv<br>"ClashTV" [SUBSTITUTE CONTENT]<br>"The Best of street ball and high school basketball<br>ClashTV brings the biggest highlights from street basketball leagues and highschool basketball. Share the passion with short-form highlights of the greatest plays from unknown stars." |
| **Claim 8:** | **TAIV System Features** |
| The method of claim 1, further including: after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference. | MyChoice believes that Taiv likely infringes this claim; however, the infringement analysis thereof will be based upon MyChoice's analysis of Taiv technical documents and source code when produced.  MyChoice reserves the right to supplement its contentions regarding this claim after its review and analysis of such materials. |
| **Claim 9:** | **TAIV System Features** |
| An article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system, instruct the computer system to perform a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of: | https://www.linkedin.com/posts/taivbox_tech-innovation-selfinstalls-activity-7184196205088788480-ndfu?utm_source=share&utm_medium=member_android<br><br>"Taiv is proud to announce that we are continuing to expand throughout the country by offering self-installs [NON-TRANSITORY MEDIUM]! ✂ 📺<br><br>With step-by-step instructions provided to assist with the installation, this creates a straightforward setup for partners to complete on their own. " |
| communicating to a monitoring station a user preference indicating undesirability, the user preference indicating | https://techcrunch.com/2020/03/16/no-mute-necessary-taiv-replaces-live-tv-ads-at-bars-with-custom-content/<br>"Taiv installs hardware [MONITORING STATION] at the restaurant that sits between |

| | |
|---|---|
| undesirability corresponding to the undesirable content; | the live feed and the TV, analyzing the image so that it can instantly understand [IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content before anyone even notices." |
| receiving a first trigger signal from the monitoring station after the undesirable content corresponding to the user preference indicating undesirability is detected in real-time in the first media stream by the monitoring station and concurrent with an undesirable content attribute being associated with the first media stream and stored in the system database; | https://www.taiv.tv/venues<br>"How it Works":<br>"…analyzing the image [FIRST MEDIA STREAM] so that it can instantly understand [DETECTING IN REAL TIME] that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content before anyone even notices. Taiv is totally seamless so your customers won't notice anything different" |
| responsive to receiving the first trigger signal, signaling the output device to switch from the first media stream to a second media stream containing substitute content, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability; | https://www.taiv.tv/venues<br>"How it Works":<br>"…analyzing the image [FIRST MEDIA STREAM] so that it can instantly understand that a commercial has come on [UNDESIRABLE CONTENT], and switch over to custom content [SECOND MEDIA STREAM CONTAINING SUBSTITUTE CONTENT] before anyone even notices. Taiv is totally seamless so your customers won't notice anything different"<br><br>"Our cable box add-on connects to your existing system to make the content more relevant and interesting [ATTRIBUTES]to your customers" |
| receiving a second trigger signal from the monitoring station after an end to the undesirable content in the first media stream is detected by the monitoring station and concurrent with changing, in the system database, the undesirable content attribute associated with the first media stream; and, | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br><br>*"we build our own hardware and use a heuristics-based computer vision approach for classification. We're the first (and only) company in the world that can detect TV commercials accurately."* |
| responsive to receiving the second trigger signal, signaling the output device to switch from the second media stream to the first media stream. | https://www.ycombinator.com/companies/taiv/jobs/iV709M2-full-stack-software-engineer-at-taiv#:~:text=Cool%2C%20But%20How%20Does%20It,are%20perfect%20for%20that%20environment<br>"When it cuts to commercial break, we dynamically insert ads that are perfect for that environment." |
| | |
| **Claim 10:** | **TAIV System Features** |
| The article according to claim 9, wherein the method further comprises: communicating to the | https://www.taiv.tv/venues<br>"How it Works": |

6

| | |
|---|---|
| monitoring station a user preference corresponding to the substitute content. | "Our cable box add-on connects to your existing system to make the content more relevant and interesting to your customers [USER PREFERENCE]" |
| | |
| **Claim 11:** | **TAIV System Features** |
| The article according to claim 10, wherein the method further comprises: receiving a third trigger signal from the monitoring station after the user preference corresponding to the substitute content is received by the monitoring station; and, responsive to receiving the third trigger signal, signaling the output device to switch from the second media stream to a third media stream. | MyChoice believes that Taiv likely infringes this claim; however, the infringement analysis thereof will be based upon MyChoice's analysis of Taiv technical documents and source code when produced. MyChoice reserves the right to supplement its contentions regarding this claim after its review and analysis of such materials. |
| | |
| **Claim 12:** | **TAIV System Features** |
| The article according to claim 9, wherein the method further comprises: after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference. | MyChoice believes that Taiv likely infringes this claim; however, the infringement analysis thereof will be based upon MyChoice's analysis of Taiv technical documents and source code when produced. MyChoice reserves the right to supplement its contentions regarding this claim after its review and analysis of such materials. |
| | |
| **Claim 13:** | **TAIV System Features** |
| An output device which transmits media to a display viewable by a user, the output device comprising: a network interface in communication with a monitoring station; wherein the output device transmits the first media stream to the display; | https://www.taiv.tv/venues<br>"How it Works":<br>"Our cable box [OUTPUT DEVICE] add-on connects to your existing system [TRANSMITS TO DISPLAY] to make the content [FIRST MEDIA STREAM] more relevant and interesting to your customers" |
| wherein the network interface receives, from the monitor station, responsive to the monitor station detecting in real-time undesirable content in the first media stream, a first trigger signal and a second media stream containing substitute content, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database, an undesirable content attribute associated with the first media stream and stored in the system database, and wherein the substitute content has a plurality | https://www.taiv.tv/venues<br>"How it Works":<br>"You can use any extra ad slots to advertise your own upsells, specials, and events. [SUBSTITUTE CONTENT]<br>Optionally play music during commercial breaks to improve your atmosphere" [USER PREFERENCE INDICATING DESIRABILITY] |

| | |
|---|---|
| of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability; | |
| wherein the output device switches the media being transmitted to the display from the first media stream to the second media stream in response to the first trigger signal; | https://www.taiv.tv/venues<br>"How it Works":<br>"…analyzing the image [FIRST MEDIA STREAM] so that it can instantly understand that a commercial has come on, and switch over to custom content [SECOND MEDIA STREAM] before anyone even notices. Taiv is totally seamless so your customers won't notice anything different" |
| wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to the undesirable content in the first media stream, a second trigger signal, wherein the undesirable content attribute associated with the first media stream and stored in the system database is changed; and, | Confirmed that TAIV system in use switches to alternate content at the beginning of a commercial break and alternate content runs through the end of commercial break and returns to regular programming [FIRST MEDIA STREAM] when commercial break is over, not before [AN END TO THE UNDESIRABLE CONTENT]<br><br>See also Demo video:<br>https://youtu.be/JjI_jZRoesY |
| wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal | Confirmed that TAIV system in use runs alternate content through the end of commercial break [UNDESIRABLE CONTENT] and returns to regular programming when commercial break is over, not before [DETECTING THE END TO THE UNDESIRABLE CONTENT] |
| | |
| **Claim 14:** | **TAIV System Features** |
| The output device according to claim 13, wherein: the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content; and, the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal. | MyChoice believes that Taiv likely infringes this claim; however, the infringement analysis thereof will be based upon MyChoice's analysis of Taiv technical documents and source code when produced.  MyChoice reserves the right to supplement its contentions regarding this claim after its review and analysis of such materials. |

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 |

**CONFIRMATION NO. 1585**

116187
Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

**POA ACCEPTANCE LETTER**


*OC000000128198789*

Date Mailed: 09/07/2021

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 09/01/2021.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/agizaw/
_____

MYCHOICE000001

PTO/AIA/80 (07-17)
Approved for use through 01/31/2018. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no person is required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY TO PROSECUTE APPLICATIONS BEFORE THE USPTO

I hereby revoke all previous powers of attorney given in the application identified in the attached statement under 37 CFR 3.73(c).

I hereby appoint:

[X] Practitioners associated with Customer Number: **116187**

**OR**

[ ] Practitioner(s) named below (if more than ten patent practitioners are to be named, then a customer number must be used):

| Name | Registration Number | | Name | Registration Number |
|------|---------------------|---|------|---------------------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications assigned only to the undersigned according to the USPTO assignment records or assignment documents attached to this form in accordance with 37 CFR 3.73(c).

Please change the correspondence address for the application identified in the attached statement under 37 CFR 3.73(c) to:

[X] The address associated with Customer Number: **116187**

**OR**

[ ]
| Firm or individual name | | |
|---|---|---|
| Address | | |
| City | State | Zip |
| Country | | |
| Telephone | Email | |

Assignee name and address: MYCHOICE, LLC
5 Brooks Hill Rd, Lincoln, MA 01773

**A copy of this form, together with a statement under 37 CFR 3.73(c) (Form PTO/AIA/96 or equivalent) is required to be filed in each application in which this form is used. The statement under 37 CFR 3.73(c) may be completed by one of the practitioners appointed in this form, and must identify the application in which this Power of Attorney is to be filed.**

SIGNATURE of Assignee of Record
The individual whose signature and title is supplied below is authorized to act on behalf of the assignee.

| Signature | *Richard Theriault* | Date 8/30/2021 |
|-----------|---------------------|----------------|
| Name | Richard Theriault | Telephone 6174384315 |
| Title | CEO, MYCHOICE, LLC | |

This collection of information is required by 37 CFR 1.31, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public, which is to update (and by the USPTO to process) the file of a patent or reexamination proceeding. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 18 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000002

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.,* GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000003

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

Applicant/Patent Owner: **MYCHOICE, LLC**

Application No./Patent No.: **10,708,658**    Filed/Issue Date: **2020-07-07**

Titled: **VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION**

**MYCHOICE, LLC**                        , a  corporation

(Name of Assignee)                        (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.)

states that, for the patent application/patent identified above, it is (choose **one** of options 1, 2, 3 or 4 below):

1. [X]  The assignee of the entire right, title, and interest.

2. [ ]  An assignee of less than the entire right, title, and interest (check applicable box):

   [ ]  The extent (by percentage) of its ownership interest is _____%. Additional Statement(s) by the owners holding the balance of the interest <u>must be submitted</u> to account for 100% of the ownership interest.

   [ ]  There are unspecified percentages of ownership. The other parties, including inventors, who together own the entire right, title and interest are:

   

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

3. [ ]  The assignee of an undivided interest in the entirety (a complete assignment from one of the joint inventors was made). The other parties, including inventors, who together own the entire right, title, and interest are:

   

   Additional Statement(s) by the owner(s) holding the balance of the interest <u>must be submitted</u> to account for the entire right, title, and interest.

4. [ ]  The recipient, via a court proceeding or the like (*e.g.*, bankruptcy, probate), of an undivided interest in the entirety (a complete transfer of ownership interest was made). The certified document(s) showing the transfer is attached.

The interest identified in option 1, 2 or 3 above (not option 4) is evidenced by either (choose **one** of options A or B below):

A. [✓]  An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy thereof is attached.

B. [ ]  A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

   1. From: _____    To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

   2. From: _____    To: _____

      The document was recorded in the United States Patent and Trademark Office at

      Reel _____, Frame _____, or for which a copy thereof is attached.

[Page 1 of 2]

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA  22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000004

PTO/AIA/96 (08-12)
Approved for use through 01/31/2013. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(c)

3. From: _____    To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

4. From: _____    To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

5. From: _____    To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

6. From: _____    To: _____

        The document was recorded in the United States Patent and Trademark Office at

        Reel _____, Frame _____, or for which a copy thereof is attached.

[ ]   Additional documents in the chain of title are listed on a supplemental sheet(s).

[✔]   As required by 37 CFR 3.73(c)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

      [NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

| | |
|---|---|
| /Mary Frances Ludwig/ | 31-AUG-2021 |
| Signature | Date |
| Mary Frances Ludwig | 71619 |
| Printed or Typed Name | Title or Registration Number |

[Page 2 of 2]

MYCHOICE000005

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000006

# PATENT ASSIGNMENT OF RIGHTS

**Richard Theriault** of **Lincoln, MA, United States** ("Assignor") is an owner of the following invention, as described in U.S. Patent **10,708,658**, entitled **"VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION"**, signed by Assignor, and issued by the U.S. Patent and Trademark Office on June 21, 2018 (the "Patent").

**MYCHOICE, LLC** of **5 Brooks Hill Rd, Lincoln, MA 01773, United States** ("Assignee"), desires to acquire all rights in and to the Patent (and any reissues or extensions) that may be granted.

Therefore, for valuable consideration, the receipt of which is acknowledged, Assignor assigns to Assignee 100% of their right, title, and interest in the invention and Patent (as well as such rights in any divisions, continuations in whole or part, or substitute applications) to Assignee for the entire term of the issued Patents and any reissues or extensions that may be granted and for the entire terms of any and all foreign patents that may issue from foreign applications (as well as divisions, continuations in whole or part or substitute applications) filed claiming the benefit of the application for the Patent.

The right, title, and interest is to be held and enjoyed by Assignee and Assignee's successors and assigns as fully and exclusively as it would have been held and enjoyed by Assignor had this assignment not been made.

Assignor further agrees to: (a) cooperate with Assignee in the prosecution of any applications claiming benefit and foreign counterparts; (b) execute, verify, acknowledge, and deliver all such further papers, including patent applications and instruments of transfer; and (c) perform such other acts as Assignee lawfully may request to obtain or maintain the Patents for the invention in any and all countries.

Signature: _____     Date     8/30/2021

Assignor: Richard Theriault

Witness Signature: _____     Date     8/30/2021

Print Name: _____Vita S. Theriault_____

Address: _____5 Brooks Hill Rd, Lincoln, MA 01773_____

MYCHOICE000007

# Electronic Acknowledgement Receipt

| EFS ID: | 43660330 |
|---|---|
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard  Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig/Eddie Rowell |
| **Filer Authorized By:** | Mary Frances Ludwig |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 01-SEP-2021 |
| **Filing Date:** | 21-JUN-2018 |
| **Time Stamp:** | 14:19:50 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | MYCHOICE_AIA80_Scan.pdf | 171084 <br> d54b5f9f9248d12b16e6857c6ac02003b72 b3923 | no | 2 |

**Warnings:**

MYCHOICE000008

| Information: | | | | | |
|---|---|---|---|---|---|
| 2 | Assignee showing of ownership per 37 CFR 3.73 | MYCHOICE_USPTO_AIA96_20210831.pdf | 118401<br><br>150c39145aac9b5cd621ab03f1ff0c1fb36dd658 | no | 3 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Assignee showing of ownership per 37 CFR 3.73 | THERR18U01_ASSIGN_10708658.pdf | 139260<br><br>74a06f36466a32a7ccfe823ab62a6aaf7ca1ccf6 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 428745 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000009

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 07/07/2020 | 10708658 | THERR18U01 | 1585 |

116187        7590        06/17/2020

Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Richard Theriault, Lincoln, MA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

MYCHOICE000010

# Issue Fee Transmittal Form

| Application Number | Filing Date | First Named Inventor | Atty. Docket No. | Confirmation No. |
|---|---|---|---|---|
| 16013999 | 21-Jun-2018 | Richard Theriault | THERR18U01 | 1585 |

### TITLE OF INVENTION :

VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

| Entity Status | | Application Type | Art Unit | Class - Subclass | EXAMINER |
|---|---|---|---|---|---|
| Small | | Utility under 35 USC 111(a) | 2421 | 034000 | CYNTHIA FOGG |

| Issue Fee Due | Publication Due | Total Fee(s) Due | Date Due | Prev. Paid Fee |
|---|---|---|---|---|
| $500 | $0 | $500 | 11-Jun-2020 | $0 |

## 1.Change of Correspondence Address and/or Indication Of Fee Address (37 CFR 1.33 & 1.363)

| Current Correspondence Address: | Current Indicated Fee Address : |
|---|---|
| 116187<br>Kintner IP, LLC<br><br>PO Box 81<br><br>Kintnersville PA 18930-0081<br>UNITED STATES<br>215-693-6310<br>mludwig@kintnerip.com | Richard Theriault<br><br>5 Brooks Hill Rd<br><br>Lincoln MA 01773<br>UNITED STATES<br>2156936310 |
| ☐ Change of correspondence address requested, system generated AIA/122-EFS form attached | ☐ Fee Address indication requested, system generated SB/47-EFS form attached |

## 2.Entity Status

### Change in Entity Status

○ Applicant certifying micro entity status; system generated Micro Entity certification form attached. See 37 CFR 1.29.
Note: Absent a valid certification of micro entity status, issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
If  this box is checked, you will be prompted to choose a micro entity status on the gross income basis (37 CFR 1.29(a)) or the institution of higher education basis (37  CFR 1.29(d)), and make the applicable certification online.

◉ Applicant asserting small entity status. See 37 CFR 1.27.
Note: If the application was previously under micro entity status, checking this box will be taken as a notification of loss of entitlement to micro entity status.

○ Applicant changing to regular undiscounted fee status.
Note: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

MYCHOICE000011

**3.The Following Fee(s) Are Submitted:**

☒ Issue Fee

☐ I authorize USPTO to apply my previously paid issue fee to the current fees due

☐ Publication Fee

☐ The Director is hereby authorized to apply my previously paid issue fee to the current fee due and to charge deficient fees to Deposit Account Number _____

☐ Advance Order - # of copies _____

☒ If **in addition to** the payment of the issue fee amount submitted with this form, there are any discrepancies in any amount(s) due, the Director is authorized to charge any deficiency, or credit any overpayment, to Deposit Account Number 601375 .
The **issue fee must be submitted** with this form. **If payment of the issue fee does not accompany this form, checking this box and providing a deposit account number will NOT be effective to satisfy full payment of the fee(s) due.**

**4.Firm and/or Attorney Names To Be Printed**

**NOTE: If no name is listed, no name will be printed**
For printing on the patent front page, list to be displayed as entered

1. KINTNER IP, LLC

2. Mary Frances Ludwig

3.

**5.Assignee Name(s) and Residence Data To Be Printed**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

| Name | City | State | Country | Category |
|------|------|-------|---------|----------|
|      |      |       |         |          |
|      |      |       |         |          |

**6.Signature**

I certify, in accordance with 37 CFR 1.4(d)(4) that I am an attorney or agent registered to practice before the Patent and Trademark Office who has filed and has been granted power of attorney in this application. I also certify that this Fee(s) Transmittal form is being transmitted to the USPTO via EFS-WEB on the date indicated below.

| Signature | /Mary Frances Ludwig/ | Date | 06-01-2020 |
|-----------|----------------------|------|------------|
| Name | Mary Frances Ludwig | Registration Number | 71619 |

MYCHOICE000012

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 16013999 |
| **Filing Date:** | 21-Jun-2018 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Filer:** | Mary Frances Ludwig |
| **Attorney Docket Number:** | THERR18U01 |

Filed as Small Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 500 | 500 |
| PUBL. FEE- EARLY, VOLUNTARY, OR NORMAL | 1504 | 1 | 0 | 0 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

MYCHOICE000013

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **500** |

MYCHOICE000014

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 39586767 |
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 01-JUN-2020 |
| **Filing Date:** | 21-JUN-2018 |
| **Time Stamp:** | 14:00:39 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $500 |
| RAM confirmation Number | E202061E00364829 |
| Deposit Account | 601375 |
| Authorized User | Mary Frances Ludwig |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.21 (Miscellaneous fees and charges) | |

MYCHOICE000015

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | Web85b.pdf | 45764<br>0833bf2bbae52c56f16849d6a674f9b69ac84eb8 | no | 2 |

**Warnings:**

**Information:**

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 32190<br>46e7d99814ce9935a49e41eb8477a192fda51c94 | no | 2 |

**Warnings:**

**Information:**

| | | | Total Files Size (in bytes): | | 77954 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000016

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | PATENT NUMBER | GROUP ART UNIT | REQUEST ID |
|---|---|---|---|
| 16/013,999 | | 2421 | 108121 |

## PAIR Correspondence Address/Fee Address Change

The following fields have been changed to Customer Number 169680 on 03/20/2020 via Private PAIR in view of the certification copied below that authorized the change.

• Maintenance Fee Address

The address for Customer Number 169680 is:
169680
Richard Theriault
5 Brooks Hill Rd
Lincoln, MA 01773

### I certify, in accordance with 37 CFR 1.4(d)(4) that I am:

An attorney or Agent of Record registered to practice before the Patent and Trademark Office who has been given power of attorney in this application

| **Signature:** | /Mary Frances Ludwig/ |
|---|---|
| **Name:** | Mary Frances Ludwig |
| **Registration Number:** | 71619 |

MYCHOICE000017

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 116187 | 7590 | 03/11/2020 |
|---|---|---|

Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

| EXAMINER |
|---|
| FOGG, CYNTHIA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

DATE MAILED: 03/11/2020

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

TITLE OF INVENTION: VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 06/11/2020 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Maintenance fees are due in utility patents issuing on applications filed on or after Dec. 12, 1980. It is patentee's responsibility to ensure timely payment of maintenance fees when due. More information is available at www.uspto.gov/PatentMaintenanceFees.**

MYCHOICE000018

PTOL-85 (Rev. 02/11)

PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), by mail or fax, or via EFS-Web.

| By mail, send to: | Mail Stop ISSUE FEE | By fax, send to: | (571)-273-2885 |
| | Commissioner for Patents | | |
| | P.O. Box 1450 | | |
| | Alexandria, Virginia 22313-1450 | | |

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 116187 | 7590 | 03/11/2020 |

Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being transmitted to the USPTO via EFS-Web or by facsimile to (571) 273-2885, on the date below.

_____ (Typed or printed name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

TITLE OF INVENTION: VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $500 | $0.00 | $0.00 | $500 | 06/11/2020 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| FOGG, CYNTHIA M | 2421 | 725-034000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-09 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document must have been previously recorded, or filed for recordation, as set forth in 37 CFR 3.11 and 37 CFR 3.81(a). Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. Fees submitted: ☐Issue Fee ☐Publication Fee (if required) ☐Advance Order - # of Copies _____

4b. Method of Payment: *(Please first reapply any previously paid fee shown above)*

☐ Electronic Payment via EFS-Web ☐ Enclosed check ☐ Non-electronic payment by credit card (Attach form PTO-2038)

☐ The Director is hereby authorized to charge the required fee(s), any deficiency, or credit any overpayment to Deposit Account No. _____

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (08-18) Approved for use through 01/31/2020     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

MYCHOICE000019

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

| | |
|---|---|
| 116187          7590          03/11/2020 | EXAMINER |
| Kintner IP, LLC | FOGG, CYNTHIA M |
| PO Box 81 | |
| Kintnersville, PA 18930-0081 | ART UNIT          PAPER NUMBER |
| | 2421 |

DATE MAILED: 03/11/2020

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

MYCHOICE000020

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000021

| *Notice of Allowability* | Application No. 16/013,999 | | Applicant(s) Theriault, Richard | |
|---|---|---|---|---|
| | Examiner Cynthia M FOGG | | Art Unit 2421 | AIA (FITF) Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 2/18/2020.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are 1,3-5 and 7-16 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All    b) ☐ Some    *c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☑ Notice of References Cited (PTO-892)
2. ☐ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | |
|---|---|

MYCHOICE000022

Application/Control Number: 16/013,999                                    Page 2
Art Unit: 2421

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.

### *Allowable Subject Matter*

2.      Claims 1, 3 - 5 and 7 – 16 are allowed.

## REASONS FOR ALLOWANCE

3.      The following is an examiner's statement of reasons for allowance:

4.      Independent Claims 1, 10 and 13 are considered allowable since when reading the

claims in light of the specification, as per MPEP §2111.01 none of the references of record

alone or in combination disclose or suggest the combination of limitations specified in

independent claim 1, including

> "detecting in real-time, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database;
> selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;
> responsive to detecting in real-time the undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content;
> further responsive to detecting in real-time the undesirable content in the first media stream, configuring, in the system database, an undesirable content attribute and associating the undesirable content attribute with the first media stream;…
> responsive to detecting the end to the undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device;
> further responsive to detecting the end to the undesirable content in the first media stream, changing, in the system database, the undesirable content attribute associated with the first media stream;"

The examiner has found that the prior art(s) does not appear to teach or suggest or render

obvious the claimed limitation(s) in combination with the specific added limitations as recited in

independent claim(s). The prior art of record fail(s) to teach or suggest individually or in

combination the independent claims.

MYCHOICE000023

Application/Control Number: 16/013,999                                          Page 3
Art Unit: 2421

The Examiner has previously presented (see Office Action Mailed December 19, 2019) that White generally teaches replacing content with substitute content when there is an indication of objectionable content, (Abstract).  Advertisements are monitored for objectionable cotnet based on user profile, (paras. 10 and 47).  When objectionable content is identified, more appropriate content which is also associated with the primary content is substituted, (paras. 14 and 16).  However White does not clearly demonstrate substitute content attributes associated with a second user preference indicating desirability.

To supplement the teachings of White, the Examiner has previously presented Des Jardins as teaching selecting substitute content based on contextual information which for a football game, for example, may include which teams are playing, which team is winning, whether there is a blowout score, whether is it raining, etc. (paras. 35 and 84).  Use may have a first preference such as watching a user's favorite football team and a second preference such as during a live football game not includeing the user's favorite team, having a score of the two teams within 7 points and having 24 highlight plays in the game, (para. 85).  However, the combination of White and Des Jardins does not clearly demonstrate indicating an end to the undesired content.

To supplement the teachings of White and Des Jardins, the Examiner has previously presented Matz as teaching monitoring for the end of unwanted content and switching back to the first media stream in response to the detection of the end of undesirable content, (paras. 13 and 98).  However, the combination of White, Des Jardins and Matz does not clearly demonstrate the newly added limitations upon detection of undesirable content in the first media stream, associating an undesirable content attribute with the first media stream and upon detection of the end of undesirable content changing the undesirable content attribute.

The Examiner submits Meyers et al., US Pub. 2002/0087403 A1 as teaching that metadata for each pixel is set to a specific value which can be used to identify objectionable

MYCHOICE000024

Application/Control Number: 16/013,999                                          Page 4
Art Unit: 2421

content, (Abstract, Figs. 5A-5D and para. 44).  But Meyers does not cure the deficiencies of the

prior art.

Claims 10 and 13 are considered allowable for the same reasons stated above. The

dependent claims 3 – 5, 7 – 9, 11 – 12 and 14 - 16 are allowed because they further limit

independent claims 1, 10 and 13.

Any comments considered necessary by applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the

issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons

for Allowance."

### *Conclusion*

5.       The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

Meyers et al., US Pub. 2002/0087403 A1 teaches metadata for each pixel is set to a

specific value which can be used to identify objectionable content, (Abstract, Figs. 5A-5D and

para. 44).

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Cynthia M FOGG whose telephone number is (571)272-2741.  The

examiner can normally be reached on Monday-Friday 7:00-3:30.

Examiner interviews are available via telephone, in-person, and video conferencing

using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

MYCHOICE000025

Application/Control Number: 16/013,999                                              Page 5
Art Unit: 2421

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Nathan Flynn can be reached on (571)272-1915.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

      Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see https:/ppair-my.uspto.gov/pair/PrivatePair. Should you have questions on access

to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-

free). If you would like assistance from a USPTO Customer Service Representative or access to

the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CYNTHIA M FOGG/
Examiner, Art Unit 2421

| *Examiner-Initiated Interview Summary* | Application No. 16/013,999 | Applicant(s) Theriault, Richard | | |
|---|---|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 | AIA (First Inventor to File) Status Yes | Page 1 of   1 |

All participants (applicant, applicants representative, PTO personnel):

1. Cynthia M FOGG (Primary Examiner); Telephonic    2. Mary Frances Ludwig(Patent Agent); Telephonic

**Date of Interview:** <u>29 February 2020</u>

---

### Issues Discussed:

**Item(s) under 35 U.S.C. 103:**
According to the AFCP 2.0, examiner conducted a search of the new limitations presented in the amendment after Final. Applicant's amendment overcomes the prior art. Claims 1, 3-5 and 7 - 16 are allowed.

| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

U.S. Patent and Trademark Office
PTOL-413/413b (Rev. 01/01/2015)                    Interview Summary                    Paper No. 20200229

**Applicant recordation instructions:**It is not necessary for applicant to provide a separate record of the substance of interview .

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

MYCHOICE000027

| *Notice of References Cited* | Application/Control No. 16/013,999 | Applicant(s)/Patent Under Reexamination Theriault, Richard | |
|---|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20020087403-A1 | 07-2002 | Meyers, Stephan | G06Q30/02 | 705/14.64 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20200229

MYCHOICE000028

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

### CPC - Searched*

| Symbol | Date | Examiner |
|---|---|---|
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 06/10/2019 | cmf |
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 12/14/2019 | cmf |
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 02/29/2020 | cmf |
| H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668 | 02/29/2020 | cmf |

### CPC Combination Sets - Searched*

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US Classification - Searched*

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 34 | 06/10/2019 | cmf |
| 725 | 34 | 12/14/2019 | cmf |
| 725 | 34 | 02/29/2020 | cmf |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | |
|---|---|

MYCHOICE000029

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

**Search Notes**

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Search - Richard Theriault; EAST and PALM | 06/10/2019 | cmf |
| IP.com | 06/10/2019 | cmf |
| Consult - Justin Rider - 112 | 06/10/2019 | cmf |
| Consult - Nathan Flynn - 101 | 06/10/2019 | cmf |
| EAST Search - with key words (see Search History) | 06/10/2019 | cmf |
| Consult - Will Kim - Compact Prosecution, Search Help | 12/11/2019 | cmf |
| Update EAST Search - with key words (see Search History) | 12/14/2019 | cmf |
| Updated EAST Search - with key words (see Search History) | 02/29/2020 | cmf |

**Interference Search**

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| H04N21 | 4532, 4542, 25891, 440245, 4755, 4668, 458, 6543, 2668, 44213, 2407, 262 | 02/29/2020 | cmf |
| G06f16 | 735 | 02/29/2020 | cmf |
| 725 | 34 | 02/29/2020 | cmf |
| | EAST Search - with key words using .clm. | 02/29/2020 | cmf |

/CYNTHIA M FOGG/
Examiner, Art Unit 2421

MYCHOICE0000030    20200229

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

| ✓ | **Rejected** | - | **Cancelled** | N | **Non-Elected** | A | **Appeal** |
|---|---|---|---|---|---|---|---|
| = | **Allowed** | ÷ | **Restricted** | I | **Interference** | O | **Objected** |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 06/21/2018 | 09/06/2019 | 02/18/2020 | | | | | | |
| 1 | 1 | ✓ | ✓ | = | | | | | | |
| | 2 | ✓ | - | - | | | | | | |
| 2 | 3 | ✓ | ✓ | = | | | | | | |
| 3 | 4 | ✓ | ✓ | = | | | | | | |
| 4 | 5 | ✓ | ✓ | = | | | | | | |
| | 6 | ✓ | ✓ | - | | | | | | |
| 5 | 7 | ✓ | ✓ | = | | | | | | |
| 6 | 8 | ✓ | ✓ | = | | | | | | |
| 7 | 9 | ✓ | ✓ | = | | | | | | |
| 9 | 10 | ✓ | ✓ | = | | | | | | |
| 10 | 11 | ✓ | ✓ | = | | | | | | |
| 11 | 12 | ✓ | ✓ | = | | | | | | |
| 13 | 13 | ✓ | ✓ | = | | | | | | |
| 14 | 14 | ✓ | ✓ | = | | | | | | |
| 8 | 15 | | ✓ | = | | | | | | |
| 12 | 16 | | ✓ | = | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

MYCHOICE000031

| **Issue Classification** | Application/Control No. 16/013,999 | Applicant(s)/Patent Under Reexamination Theriault, Richard |
|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 |

**CPC**

| Symbol | | | | | Type | Version |
|---|---|---|---|---|---|---|
| H04N | / | 21 | / | 458 | F | 2013-01-01 |
| H04N | / | 21 | / | 2407 | I | 2013-01-01 |
| H04N | / | 21 | / | 44213 | I | 2013-01-01 |
| H04N | / | 21 | / | 262 | I | 2013-01-01 |
| G06F | | 16 | / | 735 | I | 2019-01-01 |
| H04N | / | 21 | / | 2668 | I | 2013-01-01 |
| H04N | / | 21 | / | 6543 | I | 2013-01-01 |
| H04N | / | 21 | / | 25891 | I | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 14 | |
| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | 29 February 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 4 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200229

MYCHOICE000032

| *Issue Classification* | Application/Control No.<br>16/013,999 | Applicant(s)/Patent Under Reexamination<br>Theriault, Richard |
|---|---|---|
| | Examiner<br>Cynthia M FOGG | Art Unit<br>2421 |

## INTERNATIONAL CLASSIFICATION

### CLAIMED

| H04N21/458 | | 21 | | 458 |
|---|---|---|---|---|
| H04N21/442 | / | 21 | / | 442 |
| G06F16/735 | | 16 | | 735 |
| H04N21/2668 | / | 21 | | 2668 |
| H04N21/6543 | / | 21 | | 6543 |
| H04N21/258 | | 21 | | 258 |

### NON-CLAIMED

| H04N21/24 | | 21 | | 24 |
|---|---|---|---|---|
| H04N21/262 | | 21 | / | 262 |

## US ORIGINAL CLASSIFICATION

| CLASS | SUBCLASS |
|---|---|
| 725 | 34 |

## CROSS REFERENCES(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| | | | | | |

| NONE<br><br>(Assistant Examiner)                          (Date) | Total Claims Allowed:<br>14 | |
|---|---|---|
| /CYNTHIA M FOGG/                          29 February 2020<br>Examiner, Art Unit 2421<br>(Primary Examiner)                          (Date) | O.G. Print Claim(s)<br>1 | O.G. Print Figure<br>4 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200229

MYCHOICE000033

| *Issue Classification* | **Application/Control No.** 16/013,999 | **Applicant(s)/Patent Under Reexamination** Theriault, Richard |
|---|---|---|
| | **Examiner** Cynthia M FOGG | **Art Unit** 2421 |

☐ Claims renumbered in the same order as presented by applicant   ☐ CPA   ☐ T.D.   ☐ R.1.47

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 9 | 10 | | | | | | | | | | | | |
| | 2 | 10 | 11 | | | | | | | | | | | | |
| 2 | 3 | 11 | 12 | | | | | | | | | | | | |
| 3 | 4 | 13 | 13 | | | | | | | | | | | | |
| 4 | 5 | 14 | 14 | | | | | | | | | | | | |
| | 6 | 8 | 15 | | | | | | | | | | | | |
| 5 | 7 | 12 | 16 | | | | | | | | | | | | |
| 6 | 8 | | | | | | | | | | | | | | |
| 7 | 9 | | | | | | | | | | | | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 14 | |
| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | 29 February 2020 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 4 |

U.S. Patent and Trademark Office

Part of Paper No.: 20200229

MYCHOICE000034

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L14 | 25 | (((("THERIAULT") near3 ("Richard"))).INV. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2020/02/29 16:25 |
| L15 | 3 | ("8949886" \| "9021518" \| "9479801").PN. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L16 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L17 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L18 | 551 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L19 | 53 | L16 and L18 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L20 | 64 | (L16 L17) and L18 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L21 | 7 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)same trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L22 | 154 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L23 | 104 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L24 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L25 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |

MYCHOICE000035

| L26 | 104 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
|---|---|---|---|---|---|---|
| L27 | 17 | (L24 L25) and L26 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L28 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L29 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L30 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L31 | 3 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L32 | 8 | (US-20010041053-$ or US-20030037329-$ or US-20030172381-$ or US-20090222853-$ or US-20150181291-$ or US-20180376204-$ or US-20180376200-$).did. or (US-5610653-$).did. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L33 | 8 | L32 and monitor$4 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L34 | 50 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L35 | 5 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) and ((content segment clip part media multimedia)with (match$3 similar "same" identical compar$4) with (genre attribute type)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L36 | 13 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |

MYCHOICE000036

| | | ((content segment clip part media multimedia) with (match$3 similar "same" identical compar$4) with (genre attribute type)) | | | | |
|---|---|---|---|---|---|---|
| L37 | 2 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same (trigger$3 same ((switch$3 chang$3) adj back return$4)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L38 | 100 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same ( ((switch$3 chang$3) adj back return$4)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L39 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L40 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L41 | 2 | (L39 L40) and L38 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L42 | 2 | H04N21/$.cpc. and L38 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L43 | 3607 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (((switch$3 chang$3) adj back return$4) (end$3 finish$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L44 | 1686 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (((switch$3 chang$3) adj back return$4) (end$3 finish$3) with (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L45 | 2 | (L39 L40) and L41 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L46 | 93 | (L39 L40) and L44 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L47 | 968 | "20090235297" "20090235298" "9420328" "20140373039" "20140006423" "8990223" "9451295" "9258577" "9762945" "20160345044" "9953344" "20100199299" "20160134935" "20160247199" "8726310" "20160345062" "20150195598" "8990852" "20170188106" "20080090513" "20140181859" "20180365733" "20140250459" "7706740" "20130339996" "9355405" "20110283310" "8516017" "8528036" "20130311278" "20030041159" "8739208" "8515336" "20140282735" "20130167173" "8166081" "20100169910" "20110283306" "9462341" "20100205628" | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |

```
"20190043090" "20170201779"
"20110281566" "20130340003"
"20160267546" "20120209848"
"10032190" "9648373" "20130152139"
"20070033531" "20050028207" "9043845"
"20170134784" "20110283329"
"20140089017" "20110283305" "9955215"
"6813775" "20110283328" "9094719"
"20140059587" "20090204640" "9438949"
"7634790" "9237368" "20170332126"
"8516533" "9282357" "9554199"
"9286388" "20150149473" "9396192"
"20110283319" "9230212" "8490128"
"20150245090" "20090249400" "9215510"
"20060010467" "20150163558"
"20140189764" "9918200" "20180167655"
"8949901" "20110231764" "9148684"
"9554182" "20090100473" "20130007809"
"20180077458" "20030110503" "9380329"
"8776101" "20190014368" "20150249864"
"9380342" "20150249852" "20150007213"
("20120222056" "9912973"
"20160157061" "20160098640"
"20150382069" "8418206" "20100251304"
"20080066111" "20180206077" "9729933"
"9203445" "8312484" "20180165794"
"20160044349" "20160044370" "9542649"
"7627824" "9716914" "20080235731"
"9788024" "20150019465" "9736527"
"20150248918" "8745661" "20160173934"
"8671423" "10158910" "20130227615"
"9307281" "20020166123" "20190141389"
"9712851" "20060253330" "9407854"
"20150382052" "20170318330"
"20140089958" "20140229992" "9668012"
"20160043747" "9451315" "20180192149"
"20170171617" "9565481" "9473819"
"20180091865" "20170034596"
"20090276807" "8984550" "20140307070"
"20180376203" "10009653"
"20130204825" "9560423" "20100094866"
"8640165" "20120136965" "9916639"
"20170180435" "20060282319"
"20140229996" "20110219421" "8997150"
"20140229887" "20170308993" "8621541"
"9549293" "20190020846" "7985134"
"20150245095" "20180192096"
"20080062318" "20100325653" "9215397"
"9477666" "20160127796" "20070256015"
"7818764" "20100146536" "20070250863"
"20080064490" "20110276993").pn.
```

| L48 | 1985 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L49 | 135 | (L39 L40) and L43 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L50 | 1686 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3)with | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |

MYCHOICE000038

| | | (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | | | | |
|---|---|---|---|---|---|---|
| L51 | 9 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4)same (end$3 finish$3)with (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L52 | 0 | (10/188930).APP. | US-PGPUB; USOCR | OR | ON | 2020/02/29 16:25 |
| L53 | 54 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L54 | 32 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (h04n21/$.cpc. tv television broadcast "725".clas.) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L55 | 19 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (recommend$4 suggest$4) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L56 | 65 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (recommend$4 suggest$4) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L57 | 5169 | (second another additional) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L58 | 551 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L59 | 54 | L57 and L58 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L60 | 421 | (replaced replacement substituted) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L61 | 252 | L58 and L60 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |

MYCHOICE000039

| | | | | | | |
|---|---|---|---|---|---|---|
| L62 | 364 | (replaced replacement substituted) near3(content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | | | 2020/02/29 16:25 |
| L63 | 209 | L58 and L62 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L64 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L65 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L66 | 32 | L63 and (L64 L65) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L67 | 128 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:25 |
| L68 | 82 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (metadata attribute) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L69 | 14 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) same (metadata attribute characteristic type) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L70 | 71 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3 defeat$3 destroy$3)) (rival dislike disliked hate hated) adj team near3 (scor$3 winning beating)) and ((metadata attribute characteristic type asset feature) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L71 | 62 | L70 not L69 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L72 | 6105 | (identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)same (attribute asset flag mark$4) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L73 | 2097 | (identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |

MYCHOICE000040

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| | | alter$3 set$3 configur$3)) | | | | |
| L74 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L75 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L76 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L77 | 13 | L76 AND ( (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. ) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L78 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 15 | ((replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time)).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L2 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L3 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L4 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L5 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L6 | 13 | L3 and (L4 L5 L2) | US-PGPUB; | OR | ON | 2020/02/29 16:08 |

MYCHOICE000041

| | | | | | | |
|---|---|---|---|---|---|---|
| L7 | 0 | L1 and L6 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:08 |
| L8 | 128 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:17 |
| L9 | 0 | ((sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating))).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:18 |
| L10 | 551 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:18 |
| L11 | 15 | ((replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time)).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:19 |
| L12 | 19 | (((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3))).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:20 |
| L13 | 0 | 11 and 12 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:21 |
| L79 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L80 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L81 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L82 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L83 | 19 | (((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3))).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |

MYCHOICE000042

| | | | | | | |
|---|---|---|---|---|---|---|
| L84 | 3 | L83 and (L79 L80 L81) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L85 | 0 | ((sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating))).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L86 | 551 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L87 | 15 | ((replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time)).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L88 | 7 | L1 and (L79 L80 L81) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L89 | 0 | L84 and L88 | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L90 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L91 | 197 | ((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3)) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L92 | 19 | (((identify$4 identification detect$4 recogniz$4 recognition) with (undesir$4 objectionable offensive unwant$3)near5 (content segment clip part media multimedia ad advertisement commercial)) same ((metadata attribute characteristic type asset feature flag mark$4) near5 (chang$3 alter$3 set$3 configur$3))).clm. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L93 | 18302 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L94 | 17910 | (H04N21/4532 OR H04N21/4542 OR H04N21/25891 OR H04N21/440245 OR H04N21/4755 OR H04N21/4668).CPC. | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L95 | 17910 | L2 and (L4 L5 L2) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |
| L96 | 13 | L3 and (L4 L5 L2) | US-PGPUB; USPAT | OR | ON | 2020/02/29 16:26 |

2/29/2020 4:57:54 PM
C:\Users\cfogg\Documents\EAST\Workspaces\16013999-after final.wsp

MYCHOICE000043

MYCHOICE000044

# Bibliographic Data

Application No: **16/013,999**

Foreign Priority claimed: ○ Yes  ◉ No

35 USC 119 (a-d) conditions met: ☐ Yes  ☑ No    ☐ Met After Allowance

Verified and Acknowledged: | /CYNTHIA M FOGG/ | | |
Examiner's Signature    Initials

Title: | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |

| FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 06/21/2018 **RULE** | 725 | 2421 | THERR18U01 |

**APPLICANTS**

**INVENTORS**

Richard Theriault Lincoln, MA, UNITED STATES

**CONTINUING DATA**

This application has PRO of 62523661 06/22/2017

**FOREIGN APPLICATIONS**

**IF REQUIRED, FOREIGN LICENSE GRANTED\*\***

07/10/2018

**\*\* SMALL ENTITY \*\***

**STATE OR COUNTRY**

UNITED STATES

**ADDRESS**

Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081
UNITED STATES

**FILING FEE RECEIVED**

$785

MYCHOICE000045

OK TO ENTER: /C.M.F./

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

| | | |
|---|---|---|
| Serial No: | 16/013,999 | I hereby certify that this correspondence is being |
| Inventor: | THERIAULT, Richard | filed via EFS Web on 18-FEB-2020. |
| Filed: | 06/21/2018 | /Mary Frances Ludwig/ |
| Examiner: | Cynthia M FOGG | Mary Frances Ludwig, Reg No. 71,619 |
| GAU: | 2421 | |
| Docket No.: | THERR18U01 | |
| Title: | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM | |
| | CURATION | |

**AMENDMENT UNDER RULE 116**

**AFCP 2.0 PROGRAM REQUEST**

Dear Examiner Fogg:

This amendment is being submitted as part of the After Final Consideration Pilot Program 2.0, certification and request for which is attached hereto.

In response to the Office Action dated 19-DEC-2019, please amend the above-identified application as follows:

    **Amendments to the Specification** begin on page 2;

    **Amendments to the Claims** begin on page 3;

    **Amendments to the Drawings** begin on page 9; and

    **Remarks** begin on page 10 of this Response.

No fees are included herewith. If it is determined that any fees are due at this time, the Office is hereby authorized to charge them to Deposit Acct. No. 601375.

MYCHOICE000046

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 16/013,999 | Filing Date 06/21/2018 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

## APPLICATION AS FILED - PART I

| FOR | (Column 1) NUMBER FILED | (Column 2) NUMBER EXTRA | | RATE ($) | FEE ($) |
|---|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | | x $50 = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | | x $230 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED - PART II

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 02/18/2020 | | | | | | |
| | Total (37 CFR 1.16(i)) | * 14 | Minus | ** 20 | = 0 | x $50 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $230 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /VIOLA D ROGERS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000047

Doc Code: A.NE.AFCP
Document Description: After Final Consideration Pilot Program Request

PTO/SB/434 (05-13)

## CERTIFICATION AND REQUEST FOR CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0

| Practitioner Docket No.: THERR18U01 | Application No.: 16/013,999 | Filing Date: 2018-06-21 |
|---|---|---|

| First Named Inventor: Richard Theriault | Title: VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

APPLICANT HEREBY CERTIFIES THE FOLLOWING AND REQUESTS CONSIDERATION UNDER THE AFTER FINAL CONSIDERATION PILOT PROGRAM 2.0 (AFCP 2.0) OF THE ACCOMPANYING RESPONSE UNDER 37 CFR 1.116.

1.  The above-identified application is (i) an original utility, plant, or design nonprovisional application filed under 35 U.S.C. 111(a) [a continuing application (*e.g.*, a continuation or divisional application) is filed under 35 U.S.C. 111(a) and is eligible under (i)], or (ii) an international application that has entered the national stage in compliance with 35 U.S.C. 371(c).

2.  The above-identified application contains an outstanding final rejection.

3.  Submitted herewith is a response under 37 CFR 1.116 to the outstanding final rejection. The response includes an amendment to at least one independent claim, and the amendment does not broaden the scope of the independent claim in any aspect.

4.  This certification and request for consideration under AFCP 2.0 is the only AFCP 2.0 certification and request filed in response to the outstanding final rejection.

5.  Applicant is willing and available to participate in any interview requested by the examiner concerning the present response.

6.  This certification and request is being filed electronically using the Office's electronic filing system (EFS-Web).

7.  Any fees that would be necessary consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, extension of time fees, are being concurrently filed herewith. [There is no additional fee required to request consideration under AFCP 2.0.]

8.  By filing this certification and request, applicant acknowledges the following:

    - Reissue applications and reexamination proceedings are not eligible to participate in AFCP 2.0.
    - The examiner will verify that the AFCP 2.0 submission is compliant, *i.e.*, that the requirements of the program have been met (see items 1 to 7 above). For compliant submissions:
        - The examiner will review the response under 37 CFR 1.116 to determine if additional search and/or consideration (i) is necessitated by the amendment and (ii) could be completed within the time allotted under AFCP 2.0. If additional search and/or consideration is required but cannot be completed within the allotted time, the examiner will process the submission consistent with current practice concerning responses after final rejection under 37 CFR 1.116, *e.g.*, by mailing an advisory action.
        - If the examiner determines that the amendment does not necessitate additional search and/or consideration, or if the examiner determines that additional search and/or consideration is required and could be completed within the allotted time, then the examiner will consider whether the amendment places the application in condition for allowance (after completing the additional search and/or consideration, if required). If the examiner determines that the amendment does not place the application in condition for allowance, then the examiner will contact the applicant and request an interview.
            - The interview will be conducted by the examiner, and if the examiner does not have negotiation authority, a primary examiner and/or supervisory patent examiner will also participate.
            - If the applicant declines the interview, or if the interview cannot be scheduled within ten (10) calendar days from the date that the examiner first contacts the applicant, then the examiner will proceed consistent with current practice concerning responses after final rejection under 37 CFR 1.116.

| Signature /Mary Frances Ludwig/ | Date 2020-02-18 |
|---|---|

| Name (Print/Typed) Mary Frances Ludwig | Practitioner Registration No. 71619 |
|---|---|

***Note:*** *This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. Submit multiple forms if more than one signature is required, see below\*.*

☐ * Total of _____ forms are submitted.

MYCHOICE000048

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record in this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA and Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000049

App. No. 16/013,999
Docket No. THERR18U01

*REPLACEMENT SHEET*

4/5



FIG. 4

App. No. 16/013,999
Docket No. THERR18U01

*ANNOTATED SHEET*

4/5



FIG. 4

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 38608226 |
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 18-FEB-2020 |
| **Filing Date:** | 21-JUN-2018 |
| **Time Stamp:** | 09:48:55 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | After Final Consideration Program Request | THERR18U01_SB434.pdf | 226822 <br> 31e9606fbee68c60fa8b1de558cf7424ad60e2c5 | no | 2 |

**Warnings:**

MYCHOICE000052

**Information:**

| 2 | Applicant Arguments/Remarks Made in an Amendment | Amend-AFCP_THERR18U01.pdf | 564019<br><br>bc5965c6c58aa51c196ff5a612e786202d69cdcd | no | 12 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Drawings-only black and white line drawings | DWG-Replace_Sht4_Fig4.pdf | 59269<br><br>ed2620268735b7f9d8cca20367b8cf68a798<br>5eeb | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Drawings-only black and white line drawings | DWG-Annot_Sht4_Fig4.pdf | 68050<br><br>f0a5f9e02ef5bc14f117ca26217e6e4a054b0<br>72e | no | 1 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | | 918160 | | |
|---|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000053

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

Serial No:  16/013,999

Inventor:    THERIAULT, Richard

Filed:        06/21/2018

Examiner:  Cynthia M FOGG

GAU:        2421

Docket No.:  THERR18U01

Title:    VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM
          CURATION

I hereby certify that this correspondence is being

filed via EFS Web on 18-FEB-2020.

<u>/Mary Frances Ludwig/</u>

Mary Frances Ludwig, Reg No. 71,619

**AMENDMENT UNDER RULE 116**

**AFCP 2.0 PROGRAM REQUEST**

Dear Examiner Fogg:

This amendment is being submitted as part of the After Final Consideration Pilot Program 2.0, certification and request for which is attached hereto.

In response to the Office Action dated 19-DEC-2019, please amend the above-identified application as follows:

**Amendments to the Specification** begin on page 2;

**Amendments to the Claims** begin on page 3;

**Amendments to the Drawings** begin on page 9; and

**Remarks** begin on page 10 of this Response.

No fees are included herewith. If it is determined that any fees are due at this time, the Office is hereby authorized to charge them to Deposit Acct. No. 601375.

1

App. No.:   16/013,999

Docket No.:   THERR18U01

## A.  Amendments to the Specification

Please replace the paragraph beginning on line 24 of page 10 of the specification with the following paragraph:

Dick was watching Game 3 at time t0. At time t2, the system detects that ~~Game 2~~ <u>Game 3</u> is a blowout as evidenced by the score spread or other metric. The 'Blowout' content attribute is switched on for Game 3. Dick and Harry, who are watching Game 3 at t2, both have a user preference of disliking blowouts. Dick likes halftime, and since Game 1 is still in halftime, the system displays Game 1 for Dick. However, for Harry, liking the Patriots outweighs his dislike of blowouts, therefore the system continues to display Game 3 for Harry.

MYCHOICE000055

App. No.:  16/013,999

Docket No.:  THERR18U01

**B.  Amendments to the Claims**

1.  (*Currently amended*)  A method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

detecting in real-time, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database;

selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;

responsive to detecting in real-time the undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content;

further responsive to detecting in real-time the undesirable content in the first media stream, configuring, in the system database, an undesirable content attribute and associating the undesirable content attribute with the first media stream;

wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal;

after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to the undesirable content;

responsive to detecting the end to the undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device;

3

App. No.:   16/013,999

Docket No.:   THERR18U01

<u>further responsive to detecting the end to the undesirable content in the first media stream, changing, in the system database, the undesirable content attribute associated with the first media stream;</u> and,

wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal.

2.  Canceled

3.  (*Previously amended*)  The method of claim 1, further including:

prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for the undesirable content.

4.  (*Previously amended*)  The method of claim 1, further including:

assigning, by the monitoring station, a substitute content attribute to the substitute content and storing the substitute content attribute in the system database.

5.  (*Previously amended*)  The method of claim 1, further including:

storing, in the system database, a directory of substitute content attributes and a directory of substitute content, each member of the directory of substitute content associated with at least one member of the directory of substitute content attributes;

associating, by the monitoring station, at least one member of the directory of substitute content attributes with the primary content attribute; and,

analyzing, by the monitoring station, the at least one member of the directory of substitute content attributes associated with the primary content attribute for correspondence to a user preference.

6.  Canceled

4

MYCHOICE000057

App. No.:  16/013,999

Docket No.:  THERR18U01

7.  (*Original*)  The method of claim 1, further including:

soliciting a user preference corresponding to the substitute content.

8.  (*Previously amended*)  The method of claim 1 wherein the at least one of the plurality of substitute content attributes associated with the primary content attribute is one of an event attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof.

9.  (*Previously amended*)  The method of claim 1 wherein the substitute content is one of broadcast network content, cable network content, satellite network content, internet media, user generated content, shared content, and content stored in the system database.

10. (*Currently amended*)  An article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system, instruct the computer system to perform a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

communicating to a monitoring station a user preference indicating undesirability, the user preference indicating undesirability corresponding to the undesirable content;

receiving a first trigger signal from the monitoring station after the undesirable content corresponding to the user preference indicating undesirability is detected <u>in real-time</u> in the first media stream by the monitoring station <u>and concurrent with an undesirable content attribute being associated with the first media stream and stored in the system database</u>;

responsive to receiving the first trigger signal, signaling the output device to switch from the first media stream to a second media stream containing substitute content, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least

MYCHOICE000058

App. No.:  16/013,999

Docket No.:  THERR18U01

one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;

receiving a second trigger signal from the monitoring station after an end to the undesirable content in the first media stream is detected by the monitoring station <u>and concurrent with changing, in the system database, the undesirable content attribute associated with the first media stream</u>; and,

responsive to receiving the second trigger signal, signaling the output device to switch from the second media stream to the first media stream.

11. (*Original*)  The article according to claim 10, wherein the method further comprises:

communicating to the monitoring station a user preference corresponding to the substitute content.

12. (*Original*)  The article according to claim 11, wherein the method further comprises:

receiving a third trigger signal from the monitoring station after the user preference corresponding to the substitute content is received by the monitoring station; and,

responsive to receiving the third trigger signal, signaling the output device to switch from the second media stream to a third media stream.

13. (*Currently amended*)  An output device which transmits media to a display viewable by a user, the output device comprising:

a network interface in communication with a monitoring station;

wherein the network interface receives a first media stream containing primary content having a primary content attribute;

wherein the output device transmits the first media stream to the display;

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting <u>in real-time</u> undesirable content in the first media stream, a first trigger signal and a second media stream containing substitute content, wherein the undesirable content corresponds to a user preference indicating undesirability, the user

6

MYCHOICE000059

App. No.:  16/013,999

Docket No.:  THERR18U01

preference indicating undesirability associated with the user and stored in a system database, an undesirable content attribute associated with the first media stream and stored in the system database, and wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;

wherein the output device switches the media being transmitted to the display from the first media stream to the second media stream in response to the first trigger signal;

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to the undesirable content in the first media stream, a second trigger signal, wherein the undesirable content attribute associated with the first media stream and stored in the system database is changed; and,

wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal.


14. (*Original*)  The output device according to claim 13, wherein:

the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content; and,

the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal.


15. (*Previously presented*)  The method of claim 1, further including:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference.

MYCHOICE000060

App. No.:   16/013,999

Docket No.:   THERR18U01

16. (*Previously presented*)  The article according to claim 10, wherein the method further comprises:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference.

MYCHOICE000061

App. No.:   16/013,999

Docket No.:  THERR18U01

## C.  Amendments to the Drawings

Please amend Figure 4 (sheet 4/5) in accordance with the attached Annotated and Replacement Drawing sheets.

9

MYCHOICE000062

App. No.:   16/013,999

Docket No.:  THERR18U01

## REMARKS

Claims 1, 10, and 13 are presently amended. Claim 6 is canceled by the present amendment. Claims 1, 3-5, and 7-16 remain in the application. The specification is amended to correct a typographical error; the amendment is supported at least by FIG. 4. The drawings are amended at FIG. 4 for consistency with the specification (p. 10, ll. 30 – p. 11 ll. 2). No new matter has been added. Reexamination and reconsideration of the application as amended are respectfully requested. The Examiner's comments are shown in bold.

### *Claim Rejections - 35 USC § 103*

**Claims 1 and 3-16 is/are rejected under 35 U.S.C. 103 as being unpatentable over White et al., US Pub 2009/0222853 A1 (hereinafter White) in view of Des Jardins et al., US Pub. 2015/0370818 A1 (hereinafter Des Jardins) and Matz, US Pub. 2004/0261096 A1 (hereinafter Matz).**

Claim 6 has been canceled.

<u>Regarding Claims 1, 10, and 13:</u>

The Applicant respectfully requests that the Examiner revisit the rejection of claim 1. Claim 1 as amended contains the following limitations:

> *detecting in real-time, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, …*

> *further responsive to detecting in real-time the undesirable content in the first media stream, configuring, in the system database, an undesirable content attribute and associating the undesirable content attribute with the first media stream; …*

> *further responsive to detecting the end to the undesirable content in the first media stream, changing, in the system database, the undesirable content attribute associated with the first media stream; …*

10

MYCHOICE000063

App. No.:   16/013,999

Docket No.:   THERR18U01

Claims 10 and 13 are amended to include comparable language. These amendments are supported in the original specification at least on p.10 ll. 1 - p.11 ll. 8 and FIG. 4.

None of White, Des Jardins, or Matz teach *detecting in real-time, by a monitoring station, the undesirable content in the first media stream*. This limitation was previously presented in claim 6 and rejected as being taught by Matz at [0141]. The Applicant respectfully posits that Matz does not in fact teach the recited limitation. Matz at [0141] states "the client device notifies servers of a need for alternative content, and in response, the servers provide real time data streams to the client device based upon predetermined user identified preferences". Matz teaches here that real time data may be provided as alternate content, but does not teach or suggest *detecting in real-time* anything about the content of the data stream.

Similarly, none of White, Des Jardins, or Matz teach <u>configuring</u> an undesirable content attribute in response to detecting in real-time the undesirable content in the first media stream or <u>changing</u> the undesirable content attribute in response to detecting the end to the undesirable content in the first media stream, as claimed. The system of White may "review metadata" [0009] to analyze or choose content, but White does not teach or suggest configuring or changing the metadata in response to content changes detected in real-time.

Des Jardins teaches that "Contextual information may include any descriptive information regarding what is actually happening in a show", but does not teach configuring or changing such contextual information in response to a real-time detection related to a user preference. To further illustrate, FIG. 4 of Des Jardins shows step 402 in which contextual features are analyzed at a single point in time. While process steps 404-420 may be re-iterated based user historical data (404), profile, and content recommendations (406), the contextual features are never even re-analyzed, much less changed or configured.

Therefore in accordance with MPEP 2143.03 (all claim limitations must be considered), the Applicant submits that Claims 1, 10, and 13 are unobvious over White in view of Matz, and should be allowable.

11

MYCHOICE000064

App. No.:   16/013,999

Docket No.:  THERR18U01

### *General Comments on Dependent Claims*

Because each of the dependent claims depends from a base claim that is believed to be in condition for allowance, Applicant believes that it is unnecessary at this time to argue the further distinguishing features of all of the dependent claims. However, the Applicant does not necessarily concur with the interpretation of the dependent claims as set forth in the Office Action, nor does the Applicant concur that the basis for the rejection of any of the dependent claims is proper. Therefore, the Applicant reserves the right to specifically address in the future the further patentability of the dependent claims not specifically addressed herein.

In view of the above, Applicant respectfully requests allowance of all the claims remaining in the application.

Respectfully submitted,

/Mary Frances Ludwig/          Date: 18-FEB-2020

Mary Frances Ludwig    Reg. 71,619

Kintner IP, LLC

PO Box 81, Kintnersville, PA 18930

215-693-6310

12

MYCHOICE000065

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

| | | | |
|---|---|---|---|
| 116187    7590    12/19/2019 | | EXAMINER | |
| Kintner IP, LLC | | FOGG, CYNTHIA M | |
| PO Box 81 | | | |
| Kintnersville, PA 18930-0081 | | ART UNIT | PAPER NUMBER |
| | | 2421 | |
| | | NOTIFICATION DATE | DELIVERY MODE |
| | | 12/19/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mludwig@kintnerip.com

MYCHOICE000066

| *Office Action Summary* | Application No. 16/013,999 | Applicant(s) Theriault, Richard |
|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 09/06/2019.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☑ This action is **FINAL.**   2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s)   1 and 3-16  is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 1 and 3-16 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on 6/21/2018 is/are:  a) ☑ accepted or  b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All   b) ☐ Some**   c) ☐ None of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☐ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

MYCHOICE000067

### Notice of Pre-AIA or AIA Status

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.


## DETAILED ACTION

2.      This Office action is made in response to Amendment, filed September 6, 2019

("Reply").  Applicant has amended Claims 1, 3 – 6, 8 – 10 and 13; cancelled Claim 2; and added

new Claims 15 - 16.  As amended, Claims 1 and 3 - 16 are presented for examination.

In Office action of June 13, 2019 ("Office Action"):

Claims 8 – 9 were objected to due to minor informalities.

Claims 1 – 9 were rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite because of lack of antecedent basis.

Claims 1 - 14 were rejected under 35 U.S.C. 103 as being unpatentable over White et

al., US Pub. 2009/0222853 A1 (hereinafter White) in view of Matz, US Pub. 2004/0261096 A1

(hereinafter Matz).


### Response to Arguments

3.      Applicant's arguments have been considered but are moot in view of the new grounds of

rejection.


### Response to Arguments - Claim Objections

4.      Applicant has amended Claims 8 – 9.  Therefore, the objection to Claims 8 – 9 is

withdrawn.

MYCHOICE000068

### Response to Arguments - Claim Rejections - 35 USC § 112

5.    Applicant has amended Claim 1 to clarify antecedent basis.  Therefore, the rejection of

Claims 1 – 9 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, is withdrawn.


### Claim Rejections - 35 USC § 103

6.    In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the

statutory basis for the rejection will not be considered a new ground of rejection if the prior art

relied upon, and the rationale supporting the rejection, would be the same under either status.

7.    The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

8.    The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103 are summarized as follows:

1. Determining the scope and contents of the prior art.

2. Ascertaining the differences between the prior art and the claims at issue.

3. Resolving the level of ordinary skill in the pertinent art.

4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

MYCHOICE000069

9.    **Claims 1 and 3 – 16** is/are rejected under 35 U.S.C. 103 as being unpatentable over **White et al., US Pub. 2009/0222853 A1** (hereinafter White) in view of **Des Jardins et al., US Pub. 2015/0370818 A1** (hereinafter Des Jardins) and **Matz, US Pub. 2004/0261096 A1** (hereinafter Matz).

10.    In regards to **Claim 1**,  White discloses a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute (**Set-top boxes include input for receiving multimedia stream that contains digital television content.  Advertisements have a rating; White: [0009], [0011] and [0015]**), the method comprising the steps of:

detecting, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database (**Monitoring advertisements for indicators of objectionable content according to stored user profiles including reviewing metadata associated with advertisement.  User profiles are stored in a user store or system storage resource managed by a database server included in database resources; White: [0010] and [0047]**);

selecting substitute content, by the monitoring station (**Objectionable advertisements may be substituted with more appropriate advertisements; White: [0014]**), wherein the substitute content has a substitute content attribute associated with the primary content attribute (**Simulcast or pre-staged alternate advertisement, e.g. a more acceptable edit or an advertisement for a different product from the same advertiser, may be substituted; White: [0016]**);

responsive to detecting undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media

stream containing the substitute content (**Metadata signals the beginning of the advertisement.  It is determined if the content is objectionable and if so, STB substitutes a more acceptable form of media for the duration of the advertisement; White: [0015] – [0016]**);

wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal (**Advertisements are tagged if they have objectionable content.  User application receives an input or an indication of an input regarding which content to block as objectionable content.  If objectionable content is detected, substitute content may be displayed; White: [0013] and [0046]**).

But White fails to explicitly disclose selecting substitute content, by the monitoring station, wherein the substitute content has *a plurality of substitute content attributes, at least one of the plurality of substitute content attributes* associated with the primary content attribute and *the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability* (emphasis added to distinguish elements not explicitly taught by White).

Des Jardins from a similar endeavor teaches detecting the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability (**User may stop accessing a live, recorded, or on-demand sporting event when the user's favorite football team is losing by a lot of points; Des Jardins: [0054]**),

selecting substitute content wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute (**Contextual information for a football game may include number of highlight plays that happened during the game, the score at a particular point during the game, which teams are playing, which team is winning, whether there is a blowout score, whether it is raining or snowing, whether an unusual event happened during the**

**game, whether the game lasted longer than an expected length of time, whether the game went into overtime, what time is left, which quarter the game is in, etc.; Des Jardins: [0035]**) and the primary content attribute associated with a first user preference indicating desirability (u**ser tends to watch football games that include the user's favorite team; Des Jardins: [0084]**), and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability (**A live football game not including the user's favorite team, but having a score of the two teams within 7 points and there has been 24 highlight plays in the game; Des Jardins: [0085]**).

There is an ever-present need to accurately produce content recommendations that fit into a user's daily schedule, (**Des Jardins: [0001]**).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify White in view of Des Jardins to determine a first user profile based on historical data associated with the first user, (**Des Jardins: [0003]**).  One or more content candidates may be determined based on a correlation between the historical data associated with the first user and one or more contextual feature associated with the plurality of content assets, (**Des Jardins: [0003]**).

But White and Des Jardins fail to explicitly disclose after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to undesirable content; responsive to detecting an end to undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device; and, wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal.

Matz from a similar endeavor teaches after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to undesirable content (**Unwanted content is monitored to determine when it terminates; Matz: [0013]**);

responsive to detecting an end to undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device (**When**

MYCHOICE000072

monitor identifies the end of unwanted content, monitor may generate a termination signal; Matz: [0098]); and,

wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal (**At the end of unwanted content, the content that was being presented prior to the substitute content is presented; Matz: [0013] and [0098]**).

Existing methods do not adequately provide users with alternative, substitute content without significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify White and Des Jardins in view of Matz to provide substitute content when the user is presented with unwanted content and monitor when the unwanted content ends so that the user is able to return to the desired content, (**Matz: [0013]**).

11.    Regarding **Claim 3**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1, further including:

prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for the undesirable content (**Multimedia stream containing digital television content is monitored for indicators of objectionable content; White: Abstract and [0009]**).

12.    Regarding **Claim 4**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1, further including:

assigning, by the monitoring station, a substitute content attribute to the substitute content and storing the substitute content attribute in the system database (**Content is tagged based on content type.  Alternative content is tagged and stored in storage module 316; Matz: Fig. 3, [0013] and [0145]**).  This claim is rejected on the same grounds as Claim 1.

13.     Regarding **Claim 5**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1, further including:

storing, in the system database, a directory of substitute content attributes and a directory of substitute content, each member of the directory of substitute content associated with at least one member of the directory of substitute content attributes (**Content is tagged and stored as a tag/content pair.  Substitute data streams with descriptive tag values are available as potential substitute content.  Alternative content may be prestored; Matz: Fig. 5, [0089], [0132] and [0145]**);

associating, by the monitoring station, at least one member of the directory of substitute content attributes with the primary content attribute (**Content is tagged based on content type.  Preference data is correlated with alternative tag data, 1406; Matz: Fig. 14, [0013] and [0136]**); and,

analyzing, by the monitoring station, the at least one member of the directory of substitute content attributes associated with the primary content attribute for correspondence to a user preference (**User profile contains tag information representing types of content that the user prefers less or does not want to be presented.  Correlation is made based on tag field data, including tag field weighting data.  Correlation operation compares tags from an alternative content source with tags in the preference data; Matz: [0013], [0136] and [0145]**).  This claim is rejected on the same grounds as Claim 1.


14.     Regarding **Claim 6**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1 wherein the step of detecting the undesirable content in the first media stream is performed in real-time (**Client device notifies servers of a need for alternative content and the servers provide real time data streams based on predetermined user preferences; Matz: [0141]**).  This claim is rejected on the same grounds as Claim 1.

MYCHOICE000074

15.     Regarding **Claim 7**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1, further including:

soliciting a user preference corresponding to the substitute content (**Detect operation detects user selection of one or more content items for substitution.  Substitution content selection user interface 1200 facilitates a user's selection of substitute content; Matz: Fig. 12, [0128] and [0167]**).  This claim is rejected on the same grounds as Claim 1.

16.     Regarding **Claim 8**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1 wherein the at least one of the plurality of substitute content attributes associated with the primary content attribute is one of an event attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof (**Information associated with content may include ratings, title, genre, etc.; White: [0055]**).

17.     Regarding **Claim 9**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1 wherein the substitute content is one of broadcast network content, cable network content, satellite network content, internet media, user generated content, shared content, and content stored in the system database (**Substitution content may be prestored, server content or other content.  Servers provide real time data streams to the client device for alternative content; Matz: [0141] and [0157]**).  This claim is rejected on the same grounds as Claim 1.

18.     In regards to **Claim 10**, White discloses an article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system (**software modules may reside on computer-readable media that is network-based and communicatively coupled to or otherwise included with MCDN 100;**

MYCHOICE000075

**White: [0045]**), instruct the computer system to perform a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute (**Set-top boxes include input for receiving multimedia stream that contains digital television content. Advertisements have a rating; White: [0009], [0011] and [0015]**), the method comprising the steps of:

communicating to a monitoring station a user preference indicating undesirability, the user preference indicating undesirability corresponding to the undesirable content (**User preferences regarding sensitivity levels for what is objectionable is received from the user. Monitoring advertisements for indicators of objectionable content according to stored user profiles including reviewing metadata associated with advertisement. User profiles are stored in a user store or system storage resource managed by a database server included in database resources; White: [0010] and [0046] - [0047]**);

receiving a first trigger signal from the monitoring station after undesirable content corresponding to the user preference indicating is detected in the first media stream by the monitoring station (**Metadata signals the beginning of the advertisement. It is determined if the content is objectionable and if so, STB substitutes a more acceptable form of media for the duration of the advertisement; White: [0015] – [0016]**);

responsive to receiving the first trigger signal, signaling the output device to switch from the first media stream to a second media stream containing substitute content, wherein the substitute content has a substitute content attribute associated with the primary content attribute (**Advertisements are tagged if they have objectionable content. User application receives an input or an indication of an input regarding which content to block as objectionable content. If objectionable content is detected, substitute content may be displayed; White: [0013] and [0046]**).

But White fails to explicitly disclose wherein the substitute content has a *plurality of substitute content attributes, at least one of the plurality of* substitute content *attributes* associated with the primary content attribute *and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability* (emphasis added to distinguish elements not explicitly taught by White).

Des Jardins from a similar endeavor teaches communicating to a monitoring station a user preference indicating undesirability, the user preference indicating undesirability corresponding to the undesirable content (**User may stop accessing a live, recorded, or on-demand sporting event when the user's favorite football team is losing by a lot of points; Des Jardins: [0054]**);

wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attribute attributes associated with the primary content attribute (**Contextual information for a football game may include number of highlight plays that happened during the game, the score at a particular point during the game, which teams are playing, which team is winning, whether there is a blowout score, whether it is raining or snowing, whether an unusual event happened during the game, whether the game lasted longer than an expected length of time, whether the game went into overtime, what time is left, which quarter the game is in, etc.; Des Jardins: [0035]**) and the primary content attribute associated with a first user preference indicating desirability (**User tends to watch football games that include the user's favorite team; Des Jardins: [0084]**), and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability (**A live football game not including the user's favorite team, but having a score of the two teams within 7 points and there has been 24 highlight plays in the game; Des Jardins: [0085]**).

Application/Control Number: 16/013,999                                                                    Page 12
Art Unit: 2421

But White and Des Jardins fail to explicitly disclose receiving a second trigger signal

from the monitoring station after an end to undesirable content in the first media stream is

detected by the monitoring station; and, responsive to receiving the second trigger signal,

signaling the output device to switch from the second media stream to the first media stream.

Matz from a similar endeavor teaches receiving a second trigger signal from the

monitoring station after an end to undesirable content in the first media stream is detected by

the monitoring station (**Unwanted content is monitored to determine when it terminates.**

**When monitor identifies the end of unwanted content, monitor may generate a**

**termination signal; Matz: [0013] and When monitor identifies the end of unwanted**

**content, monitor may generate a termination signal**); and,

responsive to receiving the second trigger signal, signaling the output device to switch

from the second media stream to the first media stream (**At the end of unwanted content, the**

**content that was being presented prior to the substitute content is presented; Matz:**

**[0013] and [0098]**).

Existing methods do not adequately provide users with alternative, substitute content

without significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to

one of ordinary skill in the art before the effective filing date of the claimed invention to modify

White and Des Jardins in view of Matz to provide substitute content when the user is presented

with unwanted content and monitor when the unwanted content ends so that the user is able to

return to the desired content, (**Matz: [0013]**).

19.    Regarding **Claim 11**, the combined teaching of White, Des Jardins and Matz discloses

the article according to claim 10, wherein the method further comprises:

MYCHOICE000078

communicating to the monitoring station a user preference corresponding to the

substitute content (**User preferences regarding sensitivity levels for what is objectionable**

**is received from the user; White: [0046]**).

20.     Regarding **Claim 12**, the combined teaching of White, Des Jardins and Matz discloses

the article according to claim 11, wherein the method further comprises:

receiving a third trigger signal from the monitoring station after the user preference

corresponding to the substitute content is received by the monitoring station (**Detect operation**

**detects user selection of one or more content items for substitution.  Substitution**

**content selection user interface 1200 facilitates a user's selection of substitute content;**

**Matz: Fig. 12, [0128] and [0167]**); and,

responsive to receiving the third trigger signal, signaling the output device to switch from

the second media stream to a third media stream (**In response to user selections, selected**

**content is presented to the user; Matz: [0167]**).  This Claim rejected on the same grounds as

Claim 10.

21.     In regarding to **Claim 13**, White discloses an output device which transmits media to a

display viewable by a user, the output device comprising:

a network interface in communication with a monitoring station (**Network interface;**

**White: [0050]**);

wherein the network interface receives a first media stream containing primary content

having a primary content attribute (**Set-top boxes include input for receiving multimedia**

**stream that contains digital television content.  Advertisements have a rating; White:**

**[0009], [0011] and [0015]**);

MYCHOICE000079

wherein the output device transmits the first media stream to the display (**Set-top boxes include input for receiving multimedia stream that contains digital television content; White: [0009], [0011] and [0015]**);

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting undesirable content in the first media stream, a first trigger signal and a second media stream containing substitute content, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database, and wherein the substitute content has a substitute content attribute associated with the primary content attribute (**Monitoring advertisements for indicators of objectionable content according to stored user profiles including reviewing metadata associated with advertisement. User profiles are stored in a user store or system storage resource managed by a database server included in database resources. Objectionable advertisements may be substituted with more appropriate advertisements. Simulcast or pre-staged alternate advertisement, e.g. a more acceptable edit or an advertisement for a different product from the same advertiser, may be substituted. Metadata signals the beginning of the advertisement. It is determined if the content is objectionable and if so, STB substitutes a more acceptable form of media for the duration of the advertisement; White: [0010], [0014] - [0016] and [0047]**);

wherein the output device switches the media being transmitted to the display from the first media stream to the second media stream in response to the first trigger signal (**Advertisements are tagged if they have objectionable content. User application receives an input or an indication of an input regarding which content to block as objectionable content. If objectionable content is detected, substitute content may be displayed; White: [0013] and [0046]**).

But White fails to explicitly disclose wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability.

Des Jardins from a similar endeavor teaches wherein the network interface receives responsive to the monitor station detecting undesirable content in the first media stream, a second media stream containing substitute content, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user (**Using historical data, one or more user profiles may be created. User may stop accessing a live, recorded, or on-demand sporting event when the user's favorite football team is losing by a lot of points; Des Jardins: [0032] and [0054]**)

wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute (**Contextual information for a football game may include number of highlight plays that happened during the game, the score at a particular point during the game, which teams are playing, which team is winning, whether there is a blowout score, whether it is raining or snowing, whether an unusual event happened during the game, whether the game lasted longer than an expected length of time, whether the game went into overtime, what time is left, which quarter the game is in, etc.; Des Jardins: [0035]**) and the primary content attribute associated with a first user preference indicating desirability (**User tends to watch football games that include the user's favorite team; Des Jardins: [0084]**), and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability (**A live football game not including the user's favorite**

MYCHOICE000081

team, but having a score of the two teams within 7 points and there has been 24 highlight plays in the game; Des Jardins: [0085]).

But White and Des Jardins fail to explicitly disclose wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to undesirable content in the first media stream, a second trigger signal; and, wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal.

Matz from a similar endeavor teaches wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to undesirable content in the first media stream, a second trigger signal (**Unwanted content is monitored to determine when it terminates.  When monitor identifies the end of unwanted content, monitor may generate a termination signal; Matz: [0013] and [0098]**); and,

wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal (**At the end of unwanted content, the content that was being presented prior to the substitute content is presented; Matz: [0013] and [0098]**).

Existing methods do not adequately provide users with alternative, substitute content without significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify White and Des Jardins in view of Matz to provide substitute content when the user is presented with unwanted content and monitor when the unwanted content ends so that the user is able to return to the desired content, (**Matz: [0013]**).


22.    Regarding **Claim 14**, the combined teaching of White, Des Jardins and Matz discloses the output device according to claim 13, wherein:

the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content (**Detect operation detects user selection of one or more content items for substitution.  Substitution content selection user interface 1200 facilitates a user's selection of substitute content; Matz: Fig. 12, [0128] and [0167]**); and,

the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal (**In response to user selections, selected content is presented to the user; Matz: [0167]**).  This Claim rejected on the same grounds as Claim 13.

23.    Regarding **Claim 15**, the combined teaching of White, Des Jardins and Matz discloses the method of claim 1, further including:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference (**If the user's favorite team is losing by 28 points, then the content may change to a live football game having a score within 7 points with 24 highlight plays in the game.  Content asset may include the score of a football game at any point during the game.  Contextual information may be completely different for various football games.  Games with the score of two teams within 8 points and having at least 24 highlight plays in the game are given a higher weight; Des Jardins: [0030], [0036] and [0085]**).  This claim is rejected on the same grounds as Claim 1.

24.    Regarding **Claim 16**, the combined teaching of White, Des Jardins and Matz discloses the article according to claim 10, wherein the method further comprises:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference (**If the user's**

MYCHOICE000083

favorite team is losing by 28 points, then the content may change to a live football game having a score within 7 points with 24 highlight plays in the game. Content asset may include the score of a football game at any point during the game. Contextual information may be completely different for various football games. Games with the score of two teams within 8 points and having at least 24 highlight plays in the game are given a higher weight; Des Jardins: [0030], [0036] and [0085]). This claim is rejected on the same grounds as Claim 10.

### Conclusion

25.     Applicant's amendment necessitated the new ground(s) of rejection presented in this Office action. Accordingly, **THIS ACTION IS MADE FINAL**. See MPEP § 706.07(a). Applicant is reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

        A shortened statutory period for reply to this final action is set to expire THREE MONTHS from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the mailing date of this final action and the advisory action is not mailed until after the end of the THREE-MONTH shortened statutory period, then the shortened statutory period will expire on the date the advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of the advisory action. In no event, however, will the statutory period for reply expire later than SIX MONTHS from the date of this final action.

26.     Any inquiry concerning this communication or earlier communications from the examiner should be directed to Cynthia M FOGG whose telephone number is (571)272-2741. The examiner can normally be reached on Monday-Friday 7:00-3:30.

MYCHOICE000084

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Nathan Flynn can be reached on (571)272-1915.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CYNTHIA M FOGG/
Examiner, Art Unit 2421

| | | | |
|---|---|---|---|
| *Notice of References Cited* | Application/Control No.<br>16/013,999 | Applicant(s)/Patent Under Reexamination<br>Theriault, Richard | |
| | Examiner<br>Cynthia M FOGG | Art Unit<br>2421 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20150370818-A1 | 12-2015 | Des Jardins; George Thomas | G06F16/435 | 707/734 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

MYCHOICE000086

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 06/10/2019 | cmf |
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 12/14/2019 | cmf |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| 725 | 34 | 06/10/2019 | cmf |
| 725 | 34 | 12/14/2019 | cmf |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| Inventor Search - Richard Theriault; EAST and PALM | 06/10/2019 | cmf |
| IP.com | 06/10/2019 | cmf |
| Consult - Justin Rider - 112 | 06/10/2019 | cmf |
| Consult - Nathan Flynn - 101 | 06/10/2019 | cmf |
| EAST Search - with key words (see Search History) | 06/10/2019 | cmf |
| Consult - Will Kim - Compact Prosecution, Search Help | 12/11/2019 | cmf |
| Update EAST Search - with key words (see Search History) | 12/14/2019 | cmf |

| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | |
|---|---|
| | |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | **Examiner** | **Art Unit** |
| | Cynthia M FOGG | 2421 |

| Interference Search | | | |
|---|---|---|---|
| **US Class/CPC Symbol** | **US Subclass/CPC Group** | **Date** | **Examiner** |
| | | | |

| /CYNTHIA M FOGG/ Examiner, Art Unit 2421 | |
|---|---|
| | |

MYCHOICE000088

Part of Paper No.: 20191214

| *Index of Claims* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | ☐ T.D. | ☐ R.1.47 | | | |

| CLAIM | | DATE | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 06/21/2018 | 09/06/2019 | | | | | | |
| | 1 | ✓ | ✓ | | | | | | |
| | 2 | ✓ | - | | | | | | |
| | 3 | ✓ | ✓ | | | | | | |
| | 4 | ✓ | ✓ | | | | | | |
| | 5 | ✓ | ✓ | | | | | | |
| | 6 | ✓ | ✓ | | | | | | |
| | 7 | ✓ | ✓ | | | | | | |
| | 8 | ✓ | ✓ | | | | | | |
| | 9 | ✓ | ✓ | | | | | | |
| | 10 | ✓ | ✓ | | | | | | |
| | 11 | ✓ | ✓ | | | | | | |
| | 12 | ✓ | ✓ | | | | | | |
| | 13 | ✓ | ✓ | | | | | | |
| | 14 | ✓ | ✓ | | | | | | |
| | 15 | | ✓ | | | | | | |
| | 16 | | ✓ | | | | | | |

MYCHOICE000089

EAST Search History

EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 25 | (((("THERIAULT") near3 ("Richard"))).INV. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2019/12/14 22:43 |
| L2 | 3 | ("8949886" \| "9021518" \| "9479801").PN. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L3 | 17951 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L4 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L5 | 538 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L6 | 51 | L3 and L5 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L7 | 62 | (L3 L4) and L5 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L8 | 6 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)same trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L9 | 148 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L10 | 100 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L11 | 17951 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L12 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

MYCHOICE000090

| L13 | 100 | (replac$3 substitut$4) near5 segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
|---|---|---|---|---|---|---|
| L14 | 16 | (L11 L12) and L13 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L15 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L16 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L17 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L18 | 3 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L19 | 8 | (US-20010041053-$ or US-20030037329-$ or US-20030172381-$ or US-20090222853-$ or US-20150181291-$ or US-20180376204-$ or US-20180376200-$).did. or (US-5610653-$).did. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L20 | 8 | L19 and monitor$4 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L21 | 49 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L22 | 5 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) and ((content segment clip part media multimedia)with (match$3 similar "same" identical compar$4) with (genre attribute type)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L23 | 13 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

MYCHOICE000091

| | | ((content segment clip part media multimedia)with (match$3 similar "same" identical compar$4) with (genre attribute type)) | | | | |
|---|---|---|---|---|---|---|
| L24 | 2 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same(trigger$3 same ((switch$3 chang$3) adj back return$4)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L25 | 100 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same( ((switch$3 chang$3) adj return$4)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L26 | 17951 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L27 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L28 | 2 | (L26 L27) and L25 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L29 | 2 | H04N21/$.cpc. and L25 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L30 | 3551 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L31 | 1664 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3))with (content segment clip media multimedia) near5(undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L32 | 2 | (L26 L27) and L28 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L33 | 90 | (L26 L27) and L31 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L34 | 943 | "20090235297" "20090235298" "9420328" "20140373039" "20140006423" "8990223" "9451295" "9258577" "9762945" "20160345044" "9953344" "20100199299" "20160134935" "20160247199" "8726310" "20160345062" "20150195598" "8990852" "20170188106" "20080090513" "20140181859" "20180365733" "20140250459" "7706740" "20130339996" "9355405" "20110283310" "8516017" "8528036" "20130311278" "20030041159" "8739208" "8515336" "20140282735" "20130167173" "8166081" "20100169910" "20110283306" "9462341" "20100205628" | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

MYCHOICE000092

file:///C:/Users/cfogg/Documents/e-Red%20Folder/16013999/EASTSearchHistory.16013999_AccessibleVersion.htm[12/14/2019 11:10:53 PM]

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  | "20190043090" "20170201752" "20110281566" "20130340003" "20160267546" "20120209848" "10032190" "9648373" "20130152139" "20070033531" "20050028207" "9043845" "20170134784" "20110283329" "20140089017" "20110283305" "9955215" "6813775" "20110283328" "9094719" "20140059587" "20090204640" "9438949" "7634790" "9237368" "20170332126" "8516533" "9282357" "9554199" "9286388" "20150149473" "9396192" "20110283319" "9230212" "8490128" "20150245090" "20090249400" "9215510" "20060010467" "20150163558" "20140189764" "9918200" "20180167655" "8949901" "20110231764" "9148684" "9554182" "20090100473" "20130007809" "20180077458" "20030110503" "9380329" "8776101" "20190014368" "20150249864" "9380342" "20150249852" "20150007213" ("20120222056" "9912973" "20160157061" "20160098640" "20150382069" "8418206" "20100251304" "20080066111" "20180206077" "9729933" "9203445" "8312484" "20180165794" "20160044349" "20160044370" "9542649" "7627824" "9716914" "20080235731" "9788024" "20150019465" "9736527" "20150248918" "8745661" "20160173934" "8671423" "10158910" "20130227615" "9307281" "20020166123" "20190141389" "9712851" "20060253330" "9407854" "20150382052" "20170318330" "20140089958" "20140229992" "9668012" "20160043747" "9451315" "20180192149" "20170171617" "9565481" "9473819" "20180091865" "20170034596" "20090276807" "8984550" "20140307070" "20180376203" "10009653" "20130204825" "9560423" "20100094866" "8640165" "20120136965" "9916639" "20170180435" "20060282319" "20140229996" "20110219421" "8997150" "20140229887" "20170308993" "8621541" "9549293" "20190020846" "7985134" "20150245095" "20180192096" "20080062318" "20100325653" "9215397" "9477666" "20160127796" "20070256015" "7818764" "20100146536" "20070250863" "20080064490" "20110276905").pn. |  |  |  |  |
| L35 | 1942 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L36 | 131 | (L26 L27) and L30 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L37 | 1664 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3)with | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

MYCHOICE000093

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | | | | |
| L38 | 9 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4)same (end$3 finish$3)with (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L39 | 0 | (10/188930).APP. | US-PGPUB; USOCR | OR | ON | 2019/12/14 22:43 |
| L40 | 54 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L41 | 32 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (h04n21/$.cpc. tv television broadcast "725".clas.) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L42 | 19 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (recommend$4 suggest$4) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L43 | 65 | (sport$4 football baseball hockey boxing fight) with ((blowout run adj up near2 score) rain adj delay ((favorite my viewer user home) adj team near3 (losing slaughter$3)) (rival dislike hate) adj team near3 (scor$3 winning beating)) and (recommend$4 suggest$4) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L44 | 5088 | (second another additional) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L45 | 538 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L46 | 52 | L44 and L45 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L47 | 414 | (replaced replacement substituted) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L48 | 247 | L45 and L47 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

MYCHOICE000094

| L49 | 360 | (replaced replacement substance) near3(content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L50 | 206 | L45 and L49 | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L51 | 17951 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L52 | 2419 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |
| L53 | 31 | L50 and (L51 L52) | US-PGPUB; USPAT | OR | ON | 2019/12/14 22:43 |

**EAST Search History (Interference)**

< This search history is empty>

12/14/2019 11:10:51 PM
C:\Users\cfogg\Documents\EAST\Workspaces\16013999-amend.wsp

MYCHOICE000095

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>16/013,999 | Filing Date<br>06/21/2018 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☑ SMALL  ☐ MICRO

### APPLICATION AS FILED - PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | x $50 = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | x $230 = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | 09/06/2019 | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * 15 | Minus | ** 20 | = 0 | x $50 = | 0 |
| | Independent<br>(37 CFR 1.16(h)) | * 3 | Minus | *** 3 | = 0 | x $230 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total<br>(37 CFR 1.16(i)) | * | Minus | ** | = | x $0 = | |
| | Independent<br>(37 CFR 1.16(h)) | * | Minus | *** | = | x $0 = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

| * If the entry in column 1 is less than the entry in column 2, write "0" in column 3. | LIE |
|---|---|
| ** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20". | /VIOLA D ROGERS/ |
| *** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3". | |
| The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1. | |

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000096



**UNITED STATES
PATENT AND TRADEMARK OFFICE**

P.O. Box 1450
Alexandria, VA 22313 - 1450
www.uspto.gov

# ELECTRONIC ACKNOWLEDGEMENT RECEIPT

| APPLICATION #<br>**16/013,999** | RECEIPT DATE / TIME<br>**09/06/2019 11:50:55 AM ET** | ATTORNEY DOCKET #<br>**THERR18U01** |
|---|---|---|

### Title of Invention

VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

### Application Information

| | | | |
|---|---|---|---|
| APPLICATION TYPE | Utility - Nonprovisional Application under 35 USC 111(a) | PATENT # | - |
| CONFIRMATION # | 1585 | FILED BY | Mary Frances Ludwig |
| PATENT CENTER # | 60006281 | FILING DATE | 06/21/2018 |
| CUSTOMER # | 116187 | FIRST NAMED INVENTOR | Richard Theriault |
| CORRESPONDENCE ADDRESS | - | AUTHORIZED BY | - |

### Documents

# TOTAL DOCUMENTS: 1

| DOCUMENT | PAGES | DESCRIPTION | SIZE (KB) |
|---|---|---|---|
| Amend-CTNF_THERR18U01_2019-09-06.pdf | 9 | Amendment/Req. Reconsideration-After Non-Final Reject | 551 KB |

### Digest

| DOCUMENT | MESSAGE DIGEST(SHA-512) |
|---|---|
| Amend-CTNF_THERR18U01_2019-09-06.pdf | 3B231D4249048B033E82B2F0E1DE0D0A1F12E128A4873FAB3 BF26C87645F5A846951E7197A34DF1F5E0C11BC98DC654E95 41C065E0B0B6EA46BB2E5291D7A511 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

MYCHOICE000097

**New Applications Under 35 U.S.C. 111**

If a new application is being filed and the application includes the necessary components for filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application

**National Stage of an International Application under 35 U.S.C. 371**

If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**

If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000098

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

Serial No:  16/013,999

Inventor:   THERIAULT, Richard

Filed:      06/21/2018

Examiner:   Cynthia M FOGG

GAU:        2421

Docket No.: THERR18U01

I hereby certify that this correspondence is being

filed via EFS Web on 06-SEP-2019.

_____/Mary Frances Ludwig/_____

Mary Frances Ludwig, Reg No. 71,619

Title:   VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM
CURATION

## AMENDMENT UNDER RULE 111

Dear Examiner Fogg:

In response to the Office Action dated 13-JUN-2019, please amend the above-identified application as follows:

**Amendments to the Claims** begin on page 2 and

**Remarks** begin on page 7 of this Response.

As a result of the amendments, there are 15 total claims, 3 of which are independent.

No fees are included herewith. If it is determined that any fees are due at this time, the Office is hereby authorized to charge them to Deposit Acct. No. 601375.

1

MYCHOICE000099

App. No.: 16/013,999

Docket No.: THERR18U01

**A. Amendments to the Claims**

1. (Currently amended) A method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

detecting, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database;

selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attribute attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;

responsive to detecting the undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content;

wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal;

after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to the undesirable content;

responsive to detecting an the end to the undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device; and,

wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal.

2. Canceled

2

App. No.:  16/013,999

Docket No.:  THERR18U01

3.  (Currently amended)  The method of claim 1, further including:

   prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for the undesirable content.

4.  (Currently amended)  The method of claim 1, further including:

   assigning, by the monitoring station, a substitute content attribute to the substitute content and storing the substitute content attribute in the system database.

5.  (Currently amended)  The method of claim 1, further including:

   storing, in the system database, a ~~plurality~~ directory of substitute content attributes and a directory of substitute content, each member of the directory of substitute content ~~having~~ associated with ~~a~~ at least one member of the directory of substitute content ~~attribute~~ attributes;

   associating, by the monitoring station, at least one ~~of the plurality~~ member of the directory of substitute content attributes with the primary content attribute; and,

   analyzing, by the monitoring station, the at least one member of the directory of substitute content attributes associated with the primary content attribute for correspondence to a user preference.

6.  (Currently amended)  The method of claim 1 wherein the step of detecting the undesirable content in the first media stream is performed in real-time.

7.  (Original)  The method of claim 1, further including:

   soliciting a user preference corresponding to the substitute content.

8.  (Currently amended)  The method of claim 1 wherein the at least one of the plurality of substitute content ~~attribute~~ attributes associated with the primary content attribute is ~~an~~ ~~element of the group consisting~~ one of an event attribute, a location attribute, a genre

3

MYCHOICE000101

App. No.:  16/013,999

Docket No.:  THERR18U01

attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof.

9.  (Currently amended)  The method of claim 1 wherein the substitute content is ~~selected from the group consisting~~ one of broadcast network content, cable network content, satellite network content, internet media, user generated content, shared content, and content stored in the system database.

10. (Currently amended)  An article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system, instruct the computer system to perform a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

communicating to a monitoring station a user preference <u>indicating undesirability, the user preference indicating undesirability</u> corresponding to <u>the</u> undesirable content;

receiving a first trigger signal from the monitoring station after <u>the</u> undesirable content corresponding to the user preference <u>indicating undesirability</u> is detected in the first media stream by the monitoring station;

responsive to receiving the first trigger signal, signaling the output device to switch from the first media stream to a second media stream containing substitute content, wherein the substitute content has a <u>plurality of substitute content attributes, at least one of the plurality of</u> substitute content ~~attribute~~ <u>attributes</u> associated with the primary content attribute <u>and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability</u>;

receiving a second trigger signal from the monitoring station after an end to <u>the</u> undesirable content in the first media stream is detected by the monitoring station; and,

4

App. No.: 16/013,999

Docket No.: THERR18U01

responsive to receiving the second trigger signal, signaling the output device to switch

from the second media stream to the first media stream.

11. (Original)  The article according to claim 10, wherein the method further comprises:

communicating to the monitoring station a user preference corresponding to the substitute

content.

12. (Original)  The article according to claim 11, wherein the method further comprises:

receiving a third trigger signal from the monitoring station after the user preference

corresponding to the substitute content is received by the monitoring station; and,

responsive to receiving the third trigger signal, signaling the output device to switch from

the second media stream to a third media stream.

13. (Currently amended)  An output device which transmits media to a display viewable by a

user, the output device comprising:

a network interface in communication with a monitoring station;

wherein the network interface receives a first media stream containing primary content

having a primary content attribute;

wherein the output device transmits the first media stream to the display;

wherein the network interface receives, from the monitor station, responsive to the

monitor station detecting undesirable content in the first media stream, a first trigger signal

and a second media stream containing substitute content, wherein the undesirable content

corresponds to a user preference indicating undesirability, the user preference indicating

undesirability associated with the user and stored in a system database, and wherein the

substitute content has a plurality of substitute content attributes, at least one of the plurality

of substitute content attribute attributes associated with the primary content attribute and the

primary content attribute associated with a first user preference indicating desirability, and at

least one of the plurality of substitute content attributes directly associated with a second user

preference indicating desirability;

5

App. No.:  16/013,999

Docket No.:  THERR18U01

wherein the output device switches the media being transmitted to the display from the first media stream to the second media stream in response to the first trigger signal;

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to the undesirable content in the first media stream, a second trigger signal; and,

wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal.

14. (Original)  The output device according to claim 13, wherein:

the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content; and,

the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal.

15. (New)  The method of claim 1, further including:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference.

16. (New)  The article according to claim 10, wherein the method further comprises:

after transmitting the first trigger signal, monitoring, by the monitoring station, the second media stream for another undesirable content corresponding to a user preference.

6

MYCHOICE000104

App. No.:   16/013,999

Docket No.:  THERR18U01

## REMARKS

Claims 1, 3-6, 8-10, and 13 have been amended. New claims 15 and 16 have been added. Claim 2 has been canceled. Claims 1 and 3-16 remain in the application. No new matter has been added. Reexamination and reconsideration of the application as amended are respectfully requested. The Examiner's comments are shown in bold.

### *Interview Summary*

A telephonic interview was held on 29-AUG-2019 with the Examiner. Topics discussed are as outlined in the agenda, previously made of the record, the numbered items of which are referenced below.

2. Claims 8 & 9: Examiner agreed that proposed language would overcome objections.

3. Claim 1: Proposed amendment was discussed, and no agreement was reached. Examiner indicated that further consideration and/or search would be conducted to determine patentability.

### *Claim Objections*

**3.       Claims 8-9 are objected to because of the following informalities:…**

Claims 8 and 9 are amended to correct antecedent basis issues, as proposed and agreed upon in telephonic interview.

### *Claim Rejections - 35 USC § 112*

**5.       Claims 1-9 are rejected under 35 U.S.C. 112(b)…**

**6.       Claim 1 recites the limitation "the undesirable content" in line 6.**

Claim 1 line 5 is amended to recite "detecting, by a monitoring station, the undesirable content", referring to undesirable content recited in line 1 of the preamble.

Similar amendments are made to claims 3, 6, 10, and 13. Reconsideration of these claims is respectfully requested.

7

MYCHOICE000105

App. No.:  16/013,999

Docket No.:  THERR18U01

### Claim Rejections - 35 USC § 103

**10. Claims 1-14 are rejected under 35 U.S.C. 103 as being unpatentable over White et al., US Pub 2009/0222853 A1 (hereinafter White) in view of Matz, US Pub. 2004/0261096 A1 (hereinafter Matz).**

The Applicant has canceled claim 2.

Regarding Claims 1, 10, and 13:

The Applicant respectfully requests that the Examiner revisit the rejection of claim 1. Claim 1 as amended contains the following limitations:

> *detecting, by a monitoring station, the undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference indicating undesirability, the user preference indicating undesirability associated with the user and stored in a system database;*
> *selecting substitute content, by the monitoring station, wherein the substitute content has a plurality of substitute content attributes, at least one of the plurality of substitute content attributes associated with the primary content attribute and the primary content attribute associated with a first user preference indicating desirability, and at least one of the plurality of substitute content attributes directly associated with a second user preference indicating desirability;...*

Claims 10 and 13 are amended to include comparable language. These amendments are supported in the original specification at least on p.6, ll. 6-7; p.8 ll. 27 – p. 9 ll. 22; and FIG. 3.

Neither White nor Matz teaches selecting substitute content having a substitute content attribute associated with a primary content attribute which is associated with a first user preference indicating desirability, and also having a substitute content attribute directly associated with a second user preference indicating desirability. This feature allows the substitute content to be related to the primary content and further optimized for the user (see spec. p. 9 ll. 3-9).

8

App. No.:  16/013,999

Docket No.:  THERR18U01

Therefore in accordance with MPEP 2143.03 (all claim limitations must be considered), the Applicant submits that Claims 1, 10, and 13 are unobvious over White in view of Matz, and should be allowable.

### *General Comments on Dependent Claims*

Because each of the dependent claims depends from a base claim that is believed to be in condition for allowance, Applicant believes that it is unnecessary at this time to argue the further distinguishing features of all of the dependent claims. However, the Applicant does not necessarily concur with the interpretation of the dependent claims as set forth in the Office Action, nor does the Applicant concur that the basis for the rejection of any of the dependent claims is proper. Therefore, the Applicant reserves the right to specifically address in the future the further patentability of the dependent claims not specifically addressed herein.

### *New Claims*

Claims 15 and 16 have been added in the application and are directed to a method step of monitoring the second media stream for another undesirable content corresponding to a user preference. Neither of the references of White or Matz teach or suggest monitoring the second media stream. Limitations of claims 15-16 correspond to features previously disclosed in Fig. 4 and related discussion (spec, p.10-11).

In view of the above, Applicant respectfully requests allowance of all the claims remaining in the application.

Respectfully submitted,

/Mary Frances Ludwig/                    Date: 06-SEP-2019

Mary Frances Ludwig    Reg. 71,619

Kintner IP, LLC, PO Box 81, Kintnersville, PA 18930

215-693-6310

9

MYCHOICE000107

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

116187          7590          09/03/2019
Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

| EXAMINER |
|---|
| FOGG, CYNTHIA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/03/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mludwig@kintnerip.com

MYCHOICE000108

| ***Applicant-****Initiated Interview Summary* | Application No. 16/013,999 | Applicant(s) Theriault, Richard | | |
|---|---|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 | AIA (First Inventor to File) Status Yes | Page 1 of 2 |

All participants (applicant, applicants representative, PTO personnel):

1. Cynthia M FOGG (Examiner); Telephonic          2. Mary Ludwig(US Patent Agent); Telephonic

**Date of Interview:** 29 August 2019

**Claims Discussed:**  1, 6, 8 and 9

**Prior Art Discussed:**  White and Matz

**Amendment proposed:**  Applicant amended Claim 1 to further clarify the selecting of substitute content.

---

## Issues Discussed:

**Item(s) under 35 U.S.C. 112:**
Applicant proposed amending Claims 8 and 9 to overcome the 112(b) antecedent basis rejection. Agreement was reached that various suggestions from applicant will overcome the 112 rejection.

**Claim Interpretation and/or scope:**
Applicant gave a brief overview of the inventive concept. Applicant clarified that Claim 6 indicated that both the primary and secondary stream are real-time as well as detecting undesirable content. No agreement was reached.

**Proposed Amendments:**
Applicant proposed amending Claim 1 to further clarify the selection of substitute content. Examiner indicated that the White reference would probably still read on the amended claim. Applicant proposed clarifying the user preferences used in selecting substitute content. Further search and consideration would be required for any amended claims.

**Attachment(s):**  Agenda, Proposed Amendments,

| /CYNTHIA M FOGG/<br>Examiner, Art Unit 2421 | |
|---|---|

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicants responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**
Please further see:
MPEP 713.04
Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)
37 CFR § 1.2 Business to be transacted in writing

U.S. Patent and Trademark Office
PTOL-413/413b (Rev. 01/01/2015)                    **Interview Summary**                    Paper No. 20190829

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

MYCHOICE000110

## PROPOSED AMENDMENT TO CLAIMS – DO NOT ENTER

1.  (Proposed Amendment) A method of replacing undesirable content in a first media stream
being received by an output device which transmits media to a display viewable by a user,

5    the first media stream containing primary content having a primary content attribute, the
method comprising the steps of:

detecting, by a monitoring station, undesirable content in the first media stream,
wherein the undesirable content corresponds to a first user preference associated with the
user and stored in a system database;

10    selecting substitute content, by the monitoring station, wherein the substitute content
has a plurality of substitute content attributes, one of the plurality of a substitute content
attributes associated with the primary content attribute and another of the plurality of
substitute content attributes associated with a second user preference stored in the system
database;

15    responsive to detecting undesirable content in the first media stream, transmitting, from
the monitoring station, a first trigger signal, and directing the output device to a second
media stream containing the substitute content;

wherein the output device switches from the first media stream to the second media
stream in response to the first trigger signal;

20    after transmitting the first trigger signal, monitoring, by the monitoring station, the first
media stream for an end to undesirable content;

responsive to detecting an end to undesirable content in the first media stream,
transmitting, from the monitoring station, a second trigger signal to the output device; and,

wherein the output device switches from the second media stream to the first media

25    stream in response to the second trigger signal.


…


6. (Original) The method of claim 1 wherein the step of detecting undesirable content in the

30    first media stream is performed in real-time.


1

MYCHOICE000111

... 

8. (Proposed amendment) The method of claim 1 wherein the substitute content attribute associated with the primary content attribute is ~~an element of the group consisting~~ one of an event attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof.

9. (Proposed amendment) The method of claim 1 wherein the substitute content is ~~selected from the group consisting~~ one of broadcast network content, cable network content, satellite network content, internet media, user generated content, shared content, and content stored in the system database.

2

MYCHOICE000112

## Agenda, Telephonic Interview, App. # 16/013,999

Inventor: THERIAULT, Richard

Docket No.: THERR18U01

Examiner: FOGG, Cynthia M

Applicant's Representative: LUDWIG, Mary Frances

Re: Office Action dated 13-JUN-2019


1. Overview of the technology


2. <u>Proposed amendment, claims 8 & 9</u>:        Re: objections (see attached)


3. <u>Proposed amendment claim 1</u>:  see attached, starting ln 10 "selecting…"


4. <u>Clarification of claim 6</u>:  Matz discloses real-time data streams, but detecting undesirable content is based on data pre-tagging [0013] and does not occur in real time

MYCHOICE000113

**UNITED STATES PATENT AND TRADEMARK OFFICE**

# *USPTO Automated Interview Request (AIR)*

---

Aug 21 2019

---

This paper requesting to schedule and/or conduct an interview is appropriate because:

This submission is requested to be accepted as an authorization for this interview to communicate via the internet.  Recognizing that Internet communications are not secure, I hereby authorize the USPTO to communicate with the undersigned concerning scheduling of the interview via video conference, instant messaging, or electronic mail, and to conduct the interview in accordance with office practice including video conferencing.

Name(s):
Mary Frances Ludwig

S-signature:
/Mary Frances Ludwig/

Registration Number:
71619

U.S. Application Number:
16013999

Confirmation Number:
1585

E-mail Address:
mludwig@kintnerip.com

Phone Number:
+1 2156936310

Proposed Time of Interview:
8-28-2019 9:00 AM ET

Alternative Proposed Time(s) of Interview:
8-29-2019 9:00 AM ET

Alternative Proposed Time(s) of Interview:
9-3-2019 10:30 AM ET

Prefered Interview Type:
Telephonic

I am the applicant or applicant's representative for this application.

Topic for Discussion:
proposed amendment



UNITED STATES
PATENT AND TRADEMARK OFFICE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 | 1585 |

| | | |
|---|---|---|
| 116187 | 7590 | 06/13/2019 |

Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

| EXAMINER |
|---|
| FOGG, CYNTHIA M |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2421 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 06/13/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mludwig@kintnerip.com

PTOL-90A (Rev. 04/07)

MYCHOICE000115

| *Office Action Summary* | Application No. 16/013,999 | Applicant(s) Theriault, Richard | |
|---|---|---|---|
| | Examiner Cynthia M FOGG | Art Unit 2421 | AIA (FITF) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>06/21/2018</u>.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL.**      2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) <u>1-14</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>1-14</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov**.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on <u>6/21/2018</u> is/are: a) ☑ accepted or b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a) ☐ All   b) ☐ Some**   c) ☐ None of the:
  1. ☐ Certified copies of the priority documents have been received.
  2. ☐ Certified copies of the priority documents have been received in Application No. _____.
  3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date <u>9/20/2018</u>.

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

Application/Control Number: 16/013,999                                          Page 2
Art Unit: 2421

### *Notice of Pre-AIA or AIA Status*

1.      The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.


### DETAILED ACTION

2.      This Office Action is made in reply to Application Serial Number 16/013999 filed June

21, 2018.  As originally filed, Claims 1 – 14 are presented for examination.


### *Claim Objections*

3.      Claims 8 – 9 are objected to because of the following informalities:

        – "the group" in Claim 8 line 1 lacks antecedent basis;

        – "the group" in Claim 9 line 1 lacks antecedent basis.  Appropriate correction is

required.


### *Claim Rejections - 35 USC § 112*

4.      The following is a quotation of 35 U.S.C. 112(b):
        (b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
        pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
        regards as the invention.


        The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
        The specification shall conclude with one or more claims particularly pointing out and distinctly
        claiming the subject matter which the applicant regards as his invention.


5.      Claims 1 – 9 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject

matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the

invention.

MYCHOICE000117

Application/Control Number: 16/013,999                                                    Page 3
Art Unit: 2421

6.      Claim 1 recites the limitation "the undesirable content" in line 6.  There is insufficient

antecedent basis for this limitation in the claim.  It is unclear if the undesirable content is

referring to undesirable content in line 1 of the preamble or if it is the detected undesirable

content in line 5.


### Claim Rejections - 35 USC § 103

7.      In the event the determination of the status of the application as subject to AIA 35 U.S.C.

102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the

statutory basis for the rejection will not be considered a new ground of rejection if the prior art

relied upon, and the rationale supporting the rejection, would be the same under either status.

8.      The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness

rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102, if the differences between the
> claimed invention and the prior art are such that the claimed invention as a whole would have
> been obvious before the effective filing date of the claimed invention to a person having
> ordinary skill in the art to which the claimed invention pertains. Patentability shall not be
> negated by the manner in which the invention was made.

9.      The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103 are summarized as follows:

        1. Determining the scope and contents of the prior art.

        2. Ascertaining the differences between the prior art and the claims at issue.

        3. Resolving the level of ordinary skill in the pertinent art.

        4. Considering objective evidence present in the application indicating obviousness or

nonobviousness.

MYCHOICE000118

10.　　**Claims 1 - 14** is/are rejected under 35 U.S.C. 103 as being unpatentable over **White et al., US Pub. 2009/0222853 A1** (hereinafter White) in view of **Matz, US Pub. 2004/0261096 A1** (hereinafter Matz).

11.　　In regards to **Claim 1**, White discloses a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute (**Set-top boxes include input for receiving multimedia stream that contains digital television content. Advertisements have a rating; White: [0009], [0011] and [0015]**), the method comprising the steps of:

　　detecting, by a monitoring station, undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference associated with the user and stored in a system database (**Monitoring advertisements for indicators of objectionable content according to stored user profiles including reviewing metadata associated with advertisement. User profiles are stored in a user store or system storage resource managed by a database server included in database resources; White: [0010] and [0047]**);

　　selecting substitute content, by the monitoring station (**Objectionable advertisements may be substituted with more appropriate advertisements; White: [0014]**), wherein the substitute content has a substitute content attribute associated with the primary content attribute (**Simulcast or pre-staged alternate advertisement, e.g. a more acceptable edit or an advertisement for a different product from the same advertiser, may be substituted; White: [0016]**);

　　responsive to detecting undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content (**Metadata signals the beginning of the advertisement. It is determined if the content is objectionable and if so, STB substitutes**

Application/Control Number: 16/013,999                                                Page 5
Art Unit: 2421

**a more acceptable form of media for the duration of the advertisement; White: [0015] –**

**[0016]**);

wherein the output device switches from the first media stream to the second media

stream in response to the first trigger signal (**Advertisements are tagged if they have**

**objectionable content.  User application receives an input or an indication of an input**

**regarding which content to block as objectionable content.  If objectionable content is**

**detected, substitute content may be displayed; White: [0013] and [0046]**).  But White fails

to explicitly disclose after transmitting the first trigger signal, monitoring, by the monitoring

station, the first media stream for an end to undesirable content; responsive to detecting an end

to undesirable content in the first media stream, transmitting, from the monitoring station, a

second trigger signal to the output device; and, wherein the output device switches from the

second media stream to the first media stream in response to the second trigger signal.

Matz from a similar endeavor teaches after transmitting the first trigger signal,

monitoring, by the monitoring station, the first media stream for an end to undesirable content

(**Unwanted content is monitored to determine when it terminates; Matz: [0013]**);

responsive to detecting an end to undesirable content in the first media stream,

transmitting, from the monitoring station, a second trigger signal to the output device (**When**

**monitor identifies the end of unwanted content, monitor may generate a termination**

**signal; Matz: [0098]**); and,

wherein the output device switches from the second media stream to the first media

stream in response to the second trigger signal (**At the end of unwanted content, the content**

**that was being presented prior to the substitute content is presented; Matz: [0013] and**

**[0098]**).

Existing methods do not adequately provide users with alternative, substitute content without

significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to one of

ordinary skill in the art before the effective filing date of the claimed invention to modify White in

MYCHOICE000120

Application/Control Number: 16/013,999                                          Page 6
Art Unit: 2421

view of Matz to provide substitute content when the user is presented with unwanted content

and monitor when the unwanted content ends so that the user is able to return to the desired

content, (**Matz: [0013]**).


12.      Regarding **Claim 2**, the combined teaching of White and Matz discloses the method of

claim 1 wherein the substitute content has a substitute content attribute associated with a user

preference stored in the system database (**User profiles are stored in a user store or system

storage resource managed by a database server included in database resources.  User

profiles include account information and preference information; White: [0047]**).


13.      Regarding **Claim 3**, the combined teaching of White and Matz discloses the method of

claim 1, further including:

         prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first

media stream for undesirable content (**Multimedia stream containing digital television

content is monitored for indicators of objectionable content; White: Abstract and [0009]**).


14.      Regarding **Claim 4**, the combined teaching of White and Matz discloses the method of

claim 1, further including:

         assigning, by the monitoring station, a substitute content attribute to substitute content

and storing the substitute content attribute in the system database (**Content is tagged based

on content type.  Alternative content is tagged and stored in storage module 316; Matz:

Fig. 3, [0013] and [0145]**).  This claim is rejected on the same grounds as Claim 1.


15.      Regarding **Claim 5**, the combined teaching of White and Matz discloses the method of

claim 1, further including:

Application/Control Number: 16/013,999                                         Page 7
Art Unit: 2421

storing, in the system database, a plurality of substitute content attributes and a directory

of substitute content, each substitute content having a substitute content attribute (Content is

tagged and stored as a tag/content pair. **Substitute data streams with descriptive tag**

**values are available as potential substitute content. Alternative content may be**

**prestored; Matz: Fig. 5, [0089], [0132] and [0145]**);

associating, by the monitoring station, at least one of the plurality of substitute content

attributes with the primary content attribute (**Content is tagged based on content type.**

**Preference data is correlated with alternative tag data, 1406; Matz: Fig. 14, [0013] and**

**[0136]**); and,

analyzing, by the monitoring station, substitute content attributes associated with the

primary content attribute for correspondence to a user preference (**User profile contains tag**

**information representing types of content that the user prefers less or does not want to**

**be presented. Correlation is made based on tag field data, including tag field weighting**

**data. Correlation operation compares tags from an alternative content source with tags**

**in the preference data; Matz: [0013], [0136] and [0145]**). This claim is rejected on the same

grounds as Claim 1.


16.      Regarding **Claim 6**, the combined teaching of White and Matz discloses the method of

claim 1 wherein the step of detecting undesirable content in the first media stream is performed

in real-time (**Client device notifies servers of a need for alternative content and the servers**

**provide real time data streams based on predetermined user preferences; Matz: [0141]**).

This claim is rejected on the same grounds as Claim 1.


17.      Regarding **Claim 7**, the combined teaching of White and Matz discloses the method of

claim 1, further including:

MYCHOICE000122

soliciting a user preference corresponding to the substitute content (**Detect operation**

**detects user selection of one or more content items for substitution.  Substitution**

**content selection user interface 1200 facilitates a user's selection of substitute content;**

**Matz: Fig. 12, [0128] and [0167]**).  This claim is rejected on the same grounds as Claim 1.


18.      Regarding **Claim 8**, the combined teaching of White and Matz discloses the method of

claim 1 wherein the substitute content attribute is an element of the group consisting of an event

attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a

keyword attribute, an image attribute, and combinations thereof (**Information associated with**

**content may include ratings, title, genre, etc.; White: [0055]**).


19.      Regarding **Claim 9**, the combined teaching of White and Matz discloses the method of

claim 1 wherein the substitute content is selected from the group consisting of broadcast

network content, cable network content, satellite network content, internet media, user

generated content, shared content, and content stored in the system database (**Substitution**

**content may be prestored, server content or other content.  Servers provide real time**

**data streams to the client device for alternative content; Matz: [0141] and [0157]**).  This

claim is rejected on the same grounds as Claim 1.


20.      In regards to **Claim 10**, White discloses an article comprising a tangible medium that is

not a transitory propagating signal encoding computer-readable instructions that, when applied

to a computer system (**software modules may reside on computer-readable media that is**

**network-based and communicatively coupled to or otherwise included with MCDN 100;**

**White: [0045]**), instruct the computer system to perform a method of replacing undesirable

content in a first media stream being received by an output device which transmits media to a

display viewable by a user, the first media stream containing primary content having a primary

MYCHOICE000123

Application/Control Number: 16/013,999                                                    Page 9
Art Unit: 2421

content attribute (**Set-top boxes include input for receiving multimedia stream that
contains digital television content.  Advertisements have a rating; White: [0009], [0011]
and [0015]**), the method comprising the steps of:

communicating to a monitoring station a user preference corresponding to undesirable
content (**User preferences regarding sensitivity levels for what is objectionable is
received from the user; White: [0046]**);

receiving a first trigger signal from the monitoring station after undesirable content
corresponding to the user preference is detected in the first media stream by the monitoring
station (**Metadata signals the beginning of the advertisement.  It is determined if the
content is objectionable and if so, STB substitutes a more acceptable form of media for
the duration of the advertisement; White: [0015] – [0016]**);

responsive to receiving the first trigger signal, signaling the output device to switch from
the first media stream to a second media stream containing substitute content, wherein the
substitute content has a substitute content attribute associated with the primary content attribute
(**Advertisements are tagged if they have objectionable content.  User application receives
an input or an indication of an input regarding which content to block as objectionable
content.  If objectionable content is detected, substitute content may be displayed;
White: [0013] and [0046]**).  But White fails to explicitly disclose receiving a second trigger
signal from the monitoring station after an end to undesirable content in the first media stream is
detected by the monitoring station; and, responsive to receiving the second trigger signal,
signaling the output device to switch from the second media stream to the first media stream.

Matz from a similar endeavor teaches receiving a second trigger signal from the
monitoring station after an end to undesirable content in the first media stream is detected by
the monitoring station (**Unwanted content is monitored to determine when it terminates.
When monitor identifies the end of unwanted content, monitor may generate a**

MYCHOICE000124

Application/Control Number: 16/013,999                                    Page 10
Art Unit: 2421

termination signal; Matz: [0013] and When monitor identifies the end of unwanted

content, monitor may generate a termination signal); and,

responsive to receiving the second trigger signal, signaling the output device to switch

from the second media stream to the first media stream (**At the end of unwanted content, the**

**content that was being presented prior to the substitute content is presented; Matz:**

**[0013] and [0098]**).

Existing methods do not adequately provide users with alternative, substitute content

without significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to

one of ordinary skill in the art before the effective filing date of the claimed invention to modify

White in view of Matz to provide substitute content when the user is presented with unwanted

content and monitor when the unwanted content ends so that the user is able to return to the

desired content, (**Matz: [0013]**).


21.      Regarding **Claim 11**, the combined teaching of White and Matz discloses the article

according to claim 10, wherein the method further comprises:

communicating to the monitoring station a user preference corresponding to the

substitute content (**User preferences regarding sensitivity levels for what is objectionable**

**is received from the user; White: [0046]**).


22.      Regarding **Claim 12**, the combined teaching of White and Matz discloses the article

according to claim 11, wherein the method further comprises:

receiving a third trigger signal from the monitoring station after the user preference

corresponding to the substitute content is received by the monitoring station (**Detect operation**

**detects user selection of one or more content items for substitution.  Substitution**

MYCHOICE000125

content selection user interface 1200 facilitates a user's selection of substitute content;

**Matz: Fig. 12, [0128] and [0167]**); and,

responsive to receiving the third trigger signal, signaling the output device to switch from

the second media stream to a third media stream (**In response to user selections, selected

content is presented to the user; Matz: [0167]**).  This Claim rejected on the same grounds as

Claim 10.


23.       In regarding to **Claim 13**, White discloses an output device which transmits media to a

display viewable by a user, the device comprising:

a network interface in communication with a monitoring station (**Network interface;

White: [0050]**);

wherein the network interface receives a first media stream containing primary content

having a primary content attribute (**Set-top boxes include input for receiving multimedia

stream that contains digital television content.  Advertisements have a rating; White:

[0009], [0011] and [0015]**);

wherein the output device transmits the first media stream to the display (**Set-top boxes

include input for receiving multimedia stream that contains digital television content;

White: [0009], [0011] and [0015]**);

wherein the network interface receives, from the monitor station, responsive to the

monitor station detecting undesirable content in the first media stream, a first trigger signal and

a second media stream containing substitute content, wherein the undesirable content

corresponds to a user preference associated with the user and stored in a system database,

and wherein the substitute content has a substitute content attribute associated with the primary

content attribute (**Monitoring advertisements for indicators of objectionable content

according to stored user profiles including reviewing metadata associated with

advertisement.  User profiles are stored in a user store or system storage resource**

MYCHOICE000126

managed by a database server included in database resources.  **Objectionable**
**advertisements may be substituted with more appropriate advertisements.  Simulcast or**
**pre-staged alternate advertisement, e.g. a more acceptable edit or an advertisement for a**
**different product from the same advertiser, may be substituted.  Metadata signals the**
**beginning of the advertisement.  It is determined if the content is objectionable and if so,**
**STB substitutes a more acceptable form of media for the duration of the advertisement;**
**White: [0010], [0014] - [0016] and [0047]**);

wherein the output device switches the media being transmitted to the display from the
first media stream to the second media stream in response to the first trigger signal
(**Advertisements are tagged if they have objectionable content.  User application receives**
**an input or an indication of an input regarding which content to block as objectionable**
**content.  If objectionable content is detected, substitute content may be displayed;**
**White: [0013] and [0046]**).  But White fails to explicitly disclose wherein the network interface
receives, from the monitor station, responsive to the monitor station detecting an end to
undesirable content in the first media stream, a second trigger signal; and, wherein the output
device switches the media being transmitted to the display from the second media stream to the
first media stream in response to the second trigger signal.

Matz from a similar endeavor teaches wherein the network interface receives, from the
monitor station, responsive to the monitor station detecting an end to undesirable content in the
first media stream, a second trigger signal (**Unwanted content is monitored to determine**
**when it terminates.  When monitor identifies the end of unwanted content, monitor may**
**generate a termination signal; Matz: [0013] and [0098]**); and,

wherein the output device switches the media being transmitted to the display from the
second media stream to the first media stream in response to the second trigger signal (**At the**
**end of unwanted content, the content that was being presented prior to the substitute**
**content is presented; Matz: [0013] and [0098]**).

MYCHOICE000127

Existing methods do not adequately provide users with alternative, substitute content without significant effort on the part of the user, (**Matz: [0010]**).  It would have been obvious to one of ordinary skill in the art before the effective filing date of the claimed invention to modify White in view of Matz to provide substitute content when the user is presented with unwanted content and monitor when the unwanted content ends so that the user is able to return to the desired content, (**Matz: [0013]**).

24.     Regarding **Claim 14**, the combined teaching of White and Matz discloses the output device according to claim 13, wherein:

the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content (**Detect operation detects user selection of one or more content items for substitution.  Substitution content selection user interface 1200 facilitates a user's selection of substitute content; Matz: Fig. 12, [0128] and [0167]**); and,

the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal (**In response to user selections, selected content is presented to the user; Matz: [0167]**).  This Claim rejected on the same grounds as Claim 13.

### Conclusion

25.     The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

Iggulden, US Patent 6,771,316 B1 discloses identifying unwanted broadcast segments of a television signal in real-time for selectively altering the television display during the unwanted segments, (Abstract).

MYCHOICE000128

Application/Control Number: 16/013,999                                              Page 14
Art Unit: 2421

26.     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Cynthia M FOGG whose telephone number is (571)272-2741.  The

examiner can normally be reached on Monday-Friday 7:00-3:30.

Examiner interviews are available via telephone, in-person, and video conferencing

using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Nathan Flynn can be reached on (571)272-1915.  The fax phone number for the

organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private

PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you

would like assistance from a USPTO Customer Service Representative or access to the

automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CYNTHIA M FOGG/
Examiner, Art Unit 2421

MYCHOICE000129

| | | Application/Control No. 16/013,999 | Applicant(s)/Patent Under Reexamination Theriault, Richard | |
|---|---|---|---|---|
| *Notice of References Cited* | | Examiner Cynthia M FOGG | Art Unit 2421 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-6771316-B1 | 08-2004 | Iggulden; Jerry | H04N5/44 | 348/460 |
| * | B | US-20040261096-A1 | 12-2004 | Matz, William R. | H04N7/163 | 725/28 |
| * | C | US-20090222853-A1 | 09-2009 | White; Scott Anthony | H04N7/163 | 725/34 |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20190607

MYCHOICE000130

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | **Examiner** | **Art Unit** |
| | Cynthia M FOGG | 2421 |

### CPC - Searched*

| Symbol | Date | Examiner |
|---|---|---|
| H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262 | 06/10/2019 | cmf |
| | | |

### CPC Combination Sets - Searched*

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US Classification - Searched*

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 725 | 34 | 06/10/2019 | cmf |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

### Search Notes

| Search Notes | Date | Examiner |
|---|---|---|
| Inventor Search - Richard Theriault; EAST and PALM | 06/10/2019 | cmf |
| IP.com | 06/10/2019 | cmf |
| Consult - Justin Rider - 112 | 06/10/2019 | cmf |
| Consult - Nathan Flynn - 101 | 06/10/2019 | cmf |
| EAST Search - with key words (see Search History) | 06/10/2019 | cmf |

### Interference Search

| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| /CYNTHIA M FOGG/<br>Examiner, Art Unit 2421 | |
|---|---|

| Index of Claims | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 16/013,999 | Theriault, Richard |
| | Examiner | Art Unit |
| | Cynthia M FOGG | 2421 |

| ✓ | Rejected | - | Cancelled | N | Non-Elected | A | Appeal |
|---|---|---|---|---|---|---|---|
| = | Allowed | ÷ | Restricted | I | Interference | O | Objected |

| CLAIMS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Claims renumbered in the same order as presented by applicant | | | | | ☐ CPA | ☐ T.D. | | ☐ R.1.47 | | |

| CLAIM | | DATE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | 06/21/2018 | | | | | | | | |
| | 1 | ✓ | | | | | | | | |
| | 2 | ✓ | | | | | | | | |
| | 3 | ✓ | | | | | | | | |
| | 4 | ✓ | | | | | | | | |
| | 5 | ✓ | | | | | | | | |
| | 6 | ✓ | | | | | | | | |
| | 7 | ✓ | | | | | | | | |
| | 8 | ✓ | | | | | | | | |
| | 9 | ✓ | | | | | | | | |
| | 10 | ✓ | | | | | | | | |
| | 11 | ✓ | | | | | | | | |
| | 12 | ✓ | | | | | | | | |
| | 13 | ✓ | | | | | | | | |
| | 14 | ✓ | | | | | | | | |

MYCHOICE000132

Doc code: IDS                                                                          PTO/SB/08a (01-10)
Doc description: Information Disclosure Statement (IDS) Filed          Approved for use through 07/31/2012. OMB 0651-0031
                                                                      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| | |
|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | |

| | |
|---|---|
| Application Number | 16013999 |
| Filing Date | 2018-06-21 |
| First Named Inventor | Theriault, Richard |
| Art Unit | |
| Examiner Name | |
| Attorney Docket  Number | THERR18U01 |

**U.S.PATENTS**    [Remove]

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 9021518 | | 2015-04-28 | THERIAULT | |
| | 2 | 8949886 | | 2015-02-03 | ACHARYA et al. | |
| | 3 | 9479801 | | 2016-10-25 | HIGGS et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.    [Add]

**U.S.PATENT APPLICATION PUBLICATIONS**    [Remove]

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button.    [Add]

**FOREIGN PATENT DOCUMENTS**    [Remove]

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2]i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | |

EFS Web 2.1.17          ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /G.M.R/          MYCHOICE000133

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 16013999 |
|---|---|---|
| | Filing Date | 2018-06-21 |
| | First Named Inventor | Theriault, Richard |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | THERR18U01 |

| If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |
|---|---|

**NON-PATENT LITERATURE DOCUMENTS** | Remove |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

**EXAMINER SIGNATURE**

| Examiner Signature | /CYNTHIA M FOGG/ | Date Considered | 06/07/2019 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.M.F./

MYCHOICE000134

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 16013999 |
|---|---|---|
| | Filing Date | 2018-06-21 |
| | First Named Inventor | Theriault, Richard |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | THERR18U01 |

---

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

### SIGNATURE
A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Mary Frances Ludwig/ | Date (YYYY-MM-DD) | 2018-09-19 |
|---|---|---|---|
| Name/Print | Mary Frances Ludwig | Registration Number | 71619 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /G.M.B/

MYCHOICE000135

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /G.H.S/

MYCHOICE000136

EAST Search History

EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 25 | (((("THERIAULT") near3 ("Richard"))).INV. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | OR | ON | 2019/06/10 08:30 |
| L2 | 3 | ("8949886" \| "9021518" \| "9479801").PN. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L3 | 17012 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L4 | 2416 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L5 | 518 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L6 | 50 | L3 and L5 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L7 | 61 | (L3 L4) and L5 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L8 | 6 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)same trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L9 | 139 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L10 | 98 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L11 | 17012 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L12 | 2416 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |

MYCHOICE000137

| L13 | 98 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) with (undesir$4 objectionable offensive unwant$3)and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
|---|---|---|---|---|---|---|
| L14 | 16 | (L11 L12) and L13 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L15 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time)and database | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L16 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L17 | 1 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) and trigger$3 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L18 | 3 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3)with (boring halftime half-time half adj time blowout blow adj out) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L19 | 8 | (US-20010041053-$ or (US-20030037329-$ or US-20030172381-$ or US-20090222853-$ or US-20150181291-$ or US-20180376204-$ or US-20180376200-$).did. or (US-5610653-$).did. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L20 | 8 | L19 and monitor$4 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L21 | 47 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L22 | 5 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and (live real adj time) and ((content segment clip part media multimedia)with (match$3 similar "same" identical compar$4) with (genre attribute type)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L23 | 13 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (trigger$3 same ((switch$3 chang$3) adj back return$4))and | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |

MYCHOICE000138

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ((content segment clip part media multimedia)with (match$3 similar "same" identical compar$4) with (genre attribute type)) | | | | |
| L24 | 2 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same(trigger$3 same ((switch$3 chang$3) adj back return$4)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L25 | 99 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) same( ((switch$3 chang$3) adj back return$4)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L26 | 17012 | (H04N21/458 or H04N21/25891 or H04N21/6543 or H04N21/2668 or G06F16/735 or H04N21/44213 or H04N21/2407 or H04N21/262).cpc. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L27 | 2416 | 725/34.ccls. | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L28 | 2 | (L26 L27) and L25 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L29 | 2 | H04N21/$.cpc. and L25 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L30 | 3454 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L31 | 1607 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3))with (content segment clip media multimedia) near5(undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L32 | 2 | (L26 L27) and L28 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L33 | 85 | (L26 L27) and L31 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L34 | 874 | "20090235297" "20090235298" "9420328" "20140373039" "20140006423" "8990223" "9451295" "9258577" "9762945" "20160345044" "9953344" "20100199299" "20160134935" "20160247199" "8726310" "20160345062" "20150195598" "8990852" "20170188106" "20080090513" "20140181859" "20180365733" "20140250459" "7706740" "20130339996" "9355405" "20110283310" "8516017" "8528036" "20130311278" "20030041159" "8739208" "8515336" "20140282735" "20130167173" "8166081" "20100169910" "20110283306" "9462341" "20100205628" | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |

MYCHOICE000139

"20190043090" "20170201734"
"20110281566" "20130340003"
"20160267546" "20120209848"
"10032190" "9648373" "20130152139"
"20070033531" "20050028207" "9043845"
"20170134784" "20110283329"
"20140089017" "20110283305" "9955215"
"6813775" "20110283328" "9094719"
"20140059587" "20090204640" "9438949"
"7634790" "9237368" "20170332126"
"8516533" "9282357" "9554199"
"9286388" "20150149473" "9396192"
"20110283319" "9230212" "8490128"
"20150245090" "20090249400" "9215510"
"20060010467" "20150163558"
"20140189764" "9918200" "20180167655"
"8949901" "20110231764" "9148684"
"9554182" "20090100473" "20130007809"
"20180077458" "20030110503" "9380329"
"8776101" "20190014368" "20150249864"
"9380342" "20150249852" "20150007213"
("20120222056" "9912973"
"20160157061" "20160098640"
"20150382069" "8418206" "20100251304"
"20080066111" "20180206077" "9729933"
"9203445" "8312484" "20180165794"
"20160044349" "20160044370" "9542649"
"7627824" "9716914" "20080235731"
"9788024" "20150019465" "9736527"
"20150248918" "8745661" "20160173934"
"8671423" "10158910" "20130227615"
"9307281" "20020166123" "20190141389"
"9712851" "20060253330" "9407854"
"20150382052" "20170318330"
"20140089958" "20140229992" "9668012"
"20160043747" "9451315" "20180192149"
"20170171617" "9565481" "9473819"
"20180091865" "20170034596"
"20090276807" "8984550" "20140307070"
"20180376203" "10009653"
"20130204825" "9560423" "20100094866"
"8640165" "20120136965" "9916639"
"20170180435" "20060282319"
"20140229996" "20110219421" "8997150"
"20140229887" "20170308993" "8621541"
"9549293" "20190020846" "7985134"
"20150245095" "20180192096"
"20080062318" "20100325653" "9215397"
"9477666" "20160127796" "20070256015"
"7818764" "20100146536" "20070250863"
"20080064490" "20110276993").pn.

| | | | | | | |
|---|---|---|---|---|---|---|
| L35 | 1877 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and (live real adj time) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L36 | 125 | (L26 L27) and L30 | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L37 | 1607 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4) (end$3 finish$3)with | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |

MYCHOICE000140

| | | | | | | |
|---|---|---|---|---|---|---|
| | | (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | | | | |
| L38 | 9 | (replac$3 substitut$4) near5 (content segment clip part media multimedia) same (undesir$4 objectionable offensive unwant$3) and(((switch$3 chang$3) adj back return$4)same (end$3 finish$3)with (content segment clip media multimedia) near5 (undesir$4 objectionable offensive unwant$3)) | US-PGPUB; USPAT | OR | ON | 2019/06/10 08:30 |
| L39 | 0 | (10/188930).APP. | US-PGPUB; USOCR | OR | ON | 2019/06/10 08:30 |

**EAST Search History (Interference)**

< This search history is empty>

**6/10/2019 8:36:54 AM**
**C:\Users\cfogg\Documents\EAST\Workspaces\16013999.wsp**

MYCHOICE000141



# United States Patent and Trademark Office

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 16/013,999 | 06/21/2018 | Richard Theriault | THERR18U01 |

**CONFIRMATION NO. 1585**

116187
Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

**PUBLICATION NOTICE**



*OC000000104721154*

**Title:** VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

**Publication No.** US-2018-0376200-A1
**Publication Date:** 12/27/2018

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Public Records Division. The Public Records Division can be reached by telephone at (571) 272-3150 or (800) 972-6382, by facsimile at (571) 273-3250, by mail addressed to the United States Patent and Trademark Office, Public Records Division, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently https://portal.uspto.gov/pair/PublicPair. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

MYCHOICE000142

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| Application Number | 16013999 |
|---|---|
| Filing Date | 2018-06-21 |
| First Named Inventor | Theriault, Richard |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | THERR18U01 |

## U.S.PATENTS                                              Remove

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 9021518 | | 2015-04-28 | THERIAULT | |
| | 2 | 8949886 | | 2015-02-03 | ACHARYA et al. | |
| | 3 | 9479801 | | 2016-10-25 | HIGGS et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button. **Add**

## U.S.PATENT APPLICATION PUBLICATIONS                   Remove

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | | | | | |

If you wish to add additional U.S. Published Application citation information please click the Add button. **Add**

## FOREIGN PATENT DOCUMENTS                               Remove

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | |

MYCHOICE000143

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 16013999 |
|---|---|---|
| | Filing Date | 2018-06-21 |
| | First Named Inventor | Theriault, Richard |
| | Art Unit | |
| | Examiner Name | |
| | Attorney Docket Number | THERR18U01 |

| If you wish to add additional Foreign Patent Document citation information please click the Add button | Add |
|---|---|

### NON-PATENT LITERATURE DOCUMENTS | Remove

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T5 |
|---|---|---|---|
| | 1 | | |

| If you wish to add additional non-patent literature document citation information please click the Add button | Add |
|---|---|

### EXAMINER SIGNATURE

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

1 See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. 2 Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). 3 For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. 4 Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. 5 Applicant is to place a check mark here if English language translation is attached.

MYCHOICE000144

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT
( Not for submission under 37 CFR 1.99)

| | |
|---|---|
| Application Number | 16013999 |
| Filing Date | 2018-06-21 |
| First Named Inventor | Theriault, Richard |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | THERR18U01 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

See attached certification statement.

The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Mary Frances Ludwig/ | Date (YYYY-MM-DD) | 2018-09-19 |
|---|---|---|---|
| Name/Print | Mary Frances Ludwig | Registration Number | 71619 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

MYCHOICE000145

**Privacy Act Statement**

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.     The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these record s.

2.     A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.     A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.     A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.     A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.     A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.     A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.     A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.     A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000146

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 33774661 |
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 20-SEP-2018 |
| **Filing Date:** | 21-JUN-2018 |
| **Time Stamp:** | 09:29:43 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Information Disclosure Statement (IDS) Form (SB08) | IDS_THERR18U01_2018-09-19. pdf | 612193  fd4017e995b1d005335ecf1b763a1d378b0bd88 | no | 4 |

**Warnings:**

MYCHOICE000147

| Information: | | |
|---|---|---|
| **Total Files Size (in bytes):** | | 612193 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

MYCHOICE000148



# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 16/013,999 | 06/21/2018 | | 785 | THERR18U01 | 14 | 3 |

**CONFIRMATION NO. 1585**

116187
Kintner IP, LLC
PO Box 81
Kintnersville, PA 18930-0081

**FILING RECEIPT**

|||||||||||||||||||
CC000000100866790

Date Mailed: 07/12/2018

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**
> Richard Theriault, Lincoln, MA;

**Applicant(s)**
> Richard Theriault, Lincoln, MA;

**Power of Attorney:** The patent practitioners associated with Customer Number 116187

**Domestic Priority data as claimed by applicant**
> This appln claims benefit of 62/523,661 06/22/2017

**Foreign Applications** for which priority is claimed  (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.)  - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*


**Permission to Access Application via Priority Document Exchange:** Yes

**Permission to Access Search Results:** Yes

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.


**If Required, Foreign Filing License Granted:** 07/10/2018
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 16/013,999**
**Projected Publication Date:** 12/27/2018

MYCHOICE000149

**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

MYCHOICE000150

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

MYCHOICE000151

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

Application or Docket Number
16/013,999

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 75 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 330 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 380 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 14 | minus 20 = * | x 50 | = 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 3 | minus 3 = * | x 230 | = 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 785 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | Total (37 CFR 1.16(i)) | * | Minus | ** | | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | OR | | |
| | | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | Total (37 CFR 1.16(i)) | * | Minus | ** | | = | x | = | OR | x | = |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | | = | x | = | OR | x | = |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | | OR | | |
| | | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

MYCHOICE000152

Doc Code: PA..
Document Description:  Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | |
| Filing Date | |
| First Named Inventor | Richard Theriault |
| Title | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| Art Unit | |
| Examiner Name | |
| Attorney Docket Number | THERR18U01 |

### SIGNATURE of Applicant or Patent Practitioner

| Signature | /Mary Frances Ludwig/ | Date (Optional) | 21-JUN-2018 |
|---|---|---|---|
| Name | Mary Frances Ludwig | Registration Number | 71,619 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:**  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☐    *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000153

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note:  The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✔] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

116,187

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above.  (Note:  Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✔] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## Richard Theriault

[✔] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[ ] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

**SIGNATURE of Applicant for Patent**

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | /Richard Theriault/ | Date (Optional) | |
|---|---|---|---|
| Name | Richard Theriault | | |
| Title | Inventor | | |

**NOTE:**  Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[ ] Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000154

PTO/AIA/82C (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

No more than ten (10) patent practitioners total may be appointed as set forth below by name and registration number. This page need not be submitted if appointing the Patent Practitioner(s) associated with a Customer Number (see form PTO/AIA/82B):

| Name | Registration Number |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000156

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Filer:** | Mary Frances Ludwig |
| **Attorney Docket Number:** | THERR18U01 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| UTILITY FILING FEE (ELECTRONIC FILING) | 4011 | 1 | 75 | 75 |
| UTILITY SEARCH FEE | 2111 | 1 | 330 | 330 |
| UTILITY EXAMINATION FEE | 2311 | 1 | 380 | 380 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |

MYCHOICE000157

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **785** |

MYCHOICE000158

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 32959054 |
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard  Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 21-JUN-2018 |
| **Filing Date:** | |
| **Time Stamp:** | 09:06:49 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $785 |
| RAM confirmation Number | 062118INTEFSW09100600 |
| Deposit Account | 601375 |
| Authorized User | Mary Frances Ludwig |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

    37 CFR 1.16 (National application filing, search, and examination fees)

    37 CFR 1.17 (Patent application and reexamination processing fees)

MYCHOICE000159

37 CFR 1.19 (Document supply fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | WebADS.pdf | 115478<br>b701e19caffd11190d1e5582e690c4c00132 13bd | no | 7 |

**Warnings:**

**Information:**

| 2 | | APP_THERR18U01_vF.pdf | 168422<br>830f08b21fb5582010dxe88fd7559ecefc79 b07e | yes | 13 |

| | **Multipart Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | **End** | |
| | Specification | | 1 | 12 | |
| | Abstract | | 13 | 13 | |

**Warnings:**

**Information:**

| 3 | Claims | Claims_THERR18U01_v2.pdf | 266724<br>bfa14d9o195fz9d6be7aebecd328ac614015 7f19 | no | 4 |

**Warnings:**

**Information:**

| 4 | Drawings-only black and white line drawings | FIGS_THERR18U01.pdf | 141764<br>6116c63c114701dbec103abdeb6e426a0c2 8cd94 | no | 5 |

**Warnings:**

The page size in the PDF is too large. The pages should be 8.5 x 11 or A4. If this PDF is submitted, the pages will be resized upon entry into the Image File Wrapper and may affect subsequent processing

**Information:**

| 5 | Oath or Declaration filed | Declar_THERR18U01.pdf | 240995<br>fc3507afa1755d0f35e8635a13c94d61895b df51 | no | 2 |

MYCHOICE000160

| Warnings: | | | | | | |
|---|---|---|---|---|---|---|
| Information: | | | | | | |
| 6 | Power of Attorney | POA_aia0082AB_THERR18U01.pdf | 253014 dc513ae425e7c697c7ce1a03b209c8a47a630723 | no | 4 |

| Warnings: | | | | | | |
|---|---|---|---|---|---|---|
| Information: | | | | | | |
| 7 | Fee Worksheet (SB06) | fee-info.pdf | 35005 7c3d82ea69326523890eea286d1d8a97b045875a | no | 2 |

| Warnings: | | | |
|---|---|---|---|
| Information: | | | |
| **Total Files Size (in bytes):** | | 1221402 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000161

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 32959054 |
| **Application Number:** | 16013999 |
| **International Application Number:** | |
| **Confirmation Number:** | 1585 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard  Theriault |
| **Customer Number:** | 116187 |
| **Filer:** | Mary Frances Ludwig |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | THERR18U01 |
| **Receipt Date:** | 21-JUN-2018 |
| **Filing Date:** | |
| **Time Stamp:** | 09:06:49 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $785 |
| RAM confirmation Number | 062118INTEFSW09100600 |
| Deposit Account | 601375 |
| Authorized User | Mary Frances Ludwig |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.16 (National application filing, search, and examination fees) | |
|     37 CFR 1.17 (Patent application and reexamination processing fees) | |

MYCHOICE000162

37 CFR 1.19 (Document supply fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | WebADS.pdf | 115478<br>b701e19caffd11190d1e5582e690c4c00132 13bd | no | 7 |

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 2 | | APP_THERR18U01_vF.pdf | 168422<br>830f08b21fb5582010dxe88fd7559ecefc79 b07e | yes | 13 |
|---|---|---|---|---|---|

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | End | |
| | Specification | | 1 | 12 | |
| | Abstract | | 13 | 13 | |

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 3 | Claims | Claims_THERR18U01_v2.pdf | 266724<br>bfa14d9o195ffz9d6be7aebecd328ac614011 7f19 | no | 4 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

| Information: | | | | | |
|---|---|---|---|---|---|

| 4 | Drawings-only black and white line drawings | FIGS_THERR18U01.pdf | 141764<br>6116c63c114701dbec103abdeb6e426a0c2 8cd94 | no | 5 |
|---|---|---|---|---|---|

| Warnings: | | | | | |
|---|---|---|---|---|---|

The page size in the PDF is too large. The pages should be 8.5 x 11 or A4. If this PDF is submitted, the pages will be resized upon entry into the Image File Wrapper and may affect subsequent processing

| Information: | | | | | |
|---|---|---|---|---|---|

| 5 | Oath or Declaration filed | Declar_THERR18U01.pdf | 240995<br>fc3507afa1755d0f35e8635a13c94d61895b df51 | no | 2 |
|---|---|---|---|---|---|

MYCHOICE000163

| | Warnings: | | | | |
|---|---|---|---|---|---|
| | Information: | | | | |
| 6 | Power of Attorney | POA_aia0082AB_THERR18U01.pdf | 253014<br>dc513ae425e7c697c7ce1a03b209c8a47a630723 | no | 4 |
| | Warnings: | | | | |
| | Information: | | | | |
| 7 | Fee Worksheet (SB06) | fee-info.pdf | 35005<br>7c3d82ea69326523890eea286d1d8a97b0c5875a | no | 2 |
| | Warnings: | | | | |
| | Information: | | | | |
| | **Total Files Size (in bytes):** | | 1221402 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000164

PTO/AIA/14
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |
| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION | |

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2:

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Richard | | Theriault | |

| **Residence Information (Select One)** | ● US Residency | ○ Non US Residency | ○ Active US Military Service |
|---|---|---|---|

| City | Lincoln | State/Province | MA | Country of Residence [i] | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 5 Brooks Hill Rd |
|---|---|
| Address 2 | |

| City | Lincoln | | State/Province | MA |
|---|---|---|---|---|
| Postal Code | 01773 | Country [i] | US | |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.    | Add |

## Correspondence Information:

Enter either Customer Number or complete the Correspondence Information section below.
For further information see 37 CFR 1.33(a).

☐ **An Address is being provided for the correspondence Information of this application.**

| Customer Number | 116187 | | |
|---|---|---|---|
| Email Address | mludwig@kintnerip.com | Add Email | Remove Email |

## Application Information:

| Title of the Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION | |
|---|---|---|
| Attorney Docket Number | THERR18U01 | Small Entity Status Claimed   ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 5 | Suggested Figure for Publication (if any) |

MYCHOICE000165

PTO/AIA/14 (08-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

## Filing By Reference:

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉ Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 116187 | | |

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix | |
|---|---|---|---|---|---|
| | | | | | Remove |
| Registration Number | | | | | |
| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix | |
| | | | | | Remove |
| Registration Number | | | | | |
| Additional Representative Information blocks may be generated within this form by selecting the **Add** button. | | | | | |

MYCHOICE000166

PTO/AIA/14 (08-15)
Approved for use through 04/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, 365(c), or 386(c) or indicate National Stage entry from a PCT application. Providing benefit claim information in the Application Data Sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the "Application Number" field blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing or 371(c) Date (YYYY-MM-DD) |
| | Claims benefit of provisional | 62/523,661 | 2017-06-22 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55. When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(i)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| Application Number | Country[i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

MYCHOICE000167

PTO/AIA/14 (08-15)
Approved for use through 04/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |
| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION | |

## Authorization or Opt-Out of Authorization to Permit Access:

When this Application Data Sheet is properly signed and filed with the application, applicant has provided written authority to permit a participating foreign intellectual property (IP) office access to the instant application-as-filed (see paragraph A in subsection 1 below) and the European Patent Office (EPO) access to any search results from the instant application (see paragraph B in subsection 1 below).

Should applicant choose not to provide an authorization identified in subsection 1 below, applicant **must opt-out** of the authorization by checking the corresponding box A or B or both in subsection 2 below.

**NOTE:** This section of the Application Data Sheet is **ONLY** reviewed and processed with the **INITIAL** filing of an application. After the initial filing of an application, an Application Data Sheet cannot be used to provide or rescind authorization for access by a foreign IP office(s). Instead, Form PTO/SB/39 or PTO/SB/69 must be used as appropriate.

**1. Authorization to Permit Access by a Foreign Intellectual Property Office(s)**

**A. Priority Document Exchange (PDX)** - Unless box A in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the State Intellectual Property Office of the People's Republic of China (SIPO), the World Intellectual Property Organization (WIPO), and any other foreign intellectual property office participating with the USPTO in a bilateral or multilateral priority document exchange agreement in which a foreign application claiming priority to the instant patent application is filed, access to: (1) the instant patent application-as-filed and its related bibliographic data, (2) any foreign or domestic application to which priority or benefit is claimed by the instant application and its related bibliographic data, and (3) the date of filing of this Authorization. See 37 CFR 1.14(h)(1).

**B. Search Results from U.S. Application to EPO** - Unless box B in subsection 2 (opt-out of authorization) is checked, the undersigned hereby **grants the USPTO authority** to provide the EPO access to the bibliographic data and search results from the instant patent application when a European patent application claiming priority to the instant patent application is filed. See 37 CFR 1.14(h)(2).

The applicant is reminded that the EPO's Rule 141(1) EPC (European Patent Convention) requires applicants to submit a copy of search results from the instant application without delay in a European patent application that claims priority to the instant application.

**2. Opt-Out of Authorizations to Permit Access by a Foreign Intellectual Property Office(s)**

☐ A. Applicant **DOES NOT** authorize the USPTO to permit a participating foreign IP office access to the instant application-as-filed. If this box is checked, the USPTO will not be providing a participating foreign IP office with any documents and information identified in subsection 1A above.

☐ B. Applicant **DOES NOT** authorize the USPTO to transmit to the EPO any search results from the instant patent application. If this box is checked, the USPTO will not be providing the EPO with search results from the instant application.

**NOTE:** Once the application has published or is otherwise publicly available, the USPTO may provide access to the application in accordance with 37 CFR 1.14.

MYCHOICE000168

PTO/AIA/14 (08-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

# Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant    1**

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

○ Assignee      ○ Legal Representative under 35 U.S.C. 117      ○ Joint Inventor

○ Person to whom the inventor is obligated to assign.      ○ Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor:

If the Applicant is an Organization check here.      ☐

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Applicant:**

| **Address 1** | |
|---|---|
| Address 2 | |
| **City** | |
| **Country** [i] | |
| Phone Number | |
| Email Address | |

| | |
|---|---|
| **State/Province** | |
| Postal Code | |
| Fax Number | |

Additional Applicant Data may be generated within this form by selecting the Add button.

MYCHOICE000169

PTO/AIA/14 (08-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Assignee        1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication. An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country ⁱ | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.

MYCHOICE000170

PTO/AIA/14 (08-15)
Approved for use through 04/30/2017. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | THERR18U01 |
|---|---|---|
| | Application Number | |

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

## Signature:

**NOTE:** This Application Data Sheet must be signed in accordance with 37 CFR 1.33(b). **However, if this Application Data Sheet is submitted with the <u>INITIAL</u> filing of the application <u>and</u> either box A or B is <u>not</u> checked in subsection 2 of the "Authorization or Opt-Out of Authorization to Permit Access" section, then this form must also be signed in accordance with 37 CFR 1.14(c).**

This Application Data Sheet **<u>must</u>** be signed by a patent practitioner if one or more of the applicants is a **juristic   entity** (e. g., corporation or association). If the applicant is two or more joint inventors, this form must be signed by a patent practitioner, **<u>all</u>** joint inventors who are the applicant, or one or more joint inventor-applicants who have been given power of attorney (e.g., see USPTO Form PTO/AIA/81) on behalf of **<u>all</u>** joint inventor-applicants.

See 37 CFR 1.4(d) for the manner of making signatures and certifications.

| Signature | /Mary Frances Ludwig/ | | | Date  (YYYY-MM-DD) | |
|---|---|---|---|---|---|
| First Name | Mary Frances | Last Name | Ludwig | Registration Number | 71619 |
| Additional Signature may be generated within this form by selecting the Add button. | | | | | |

MYCHOICE000171

DOCKET NO.: THERR18U01

TITLE:    VIDEO  VIEWING  EXPERIENCE  ENHANCEMENT  THROUGH  CUSTOM
CURATION

INVENTOR:  RICHARD THERIAULT

5

CROSS REFERENCE TO RELATED APPLICATION

This application claims the filing benefit under 35 U.S.C. §119(e) of U.S. Provisional
Application No. 62/523,661, filed 22-JUN-2017, which is hereby incorporated by reference.

10                                    TECHNICAL FIELD

The present invention pertains generally to video viewing, and more particularly to
methods and systems for facilitating an enhanced video viewing experience reflective of
individual viewing preferences.

15

BACKGROUND OF THE INVENTION

When viewing long-form video content, for a variety of reasons a viewer may wish to
temporarily watch other content. Systems exist which allow the user to time-shift a program by
20   recording it for later viewing, allowing them to quickly skip any undesirable content when
viewing. However, a user may not wish to watch a program on a time delay.

When watching non-time-shifted content, commonly a viewer may manually switch
between content sources when undesirable content is presented. The user may switch back to
the original content often, to see if the undesirable portion of the program has ended. Such
25   channel surfing is fairly common among sports fans, who may be interested in multiple live
games during any one time slot.

There is a need in the art for a system which can predict times during a program when a
viewer may wish to be provided with alternate content, provide such content based on
predicted or input user preferences, and return automatically to the original content when
30   appropriate.

1

MYCHOICE000172

DOCKET NO.: THERR18U01

## BRIEF SUMMARY OF THE INVENTION

The present invention is directed to a system and method for replacing undesirable content in a media stream. The undesirable content may be detected by a monitoring station and substitute content may be selected by the same; both undesirable and substitute content are linked to a custom user profile accessible by the monitoring station. The system and method allows viewers to experience an individualized, more enjoyable version of any video content they currently enjoy.

In accordance with one embodiment, a monitoring station detects undesirable content in a first media stream, wherein the undesirable content corresponds to a user preference stored in a system database. The monitoring station selects substitute content having a substitute content attribute associated with a primary content attribute of the first media stream. A first trigger signal is transmitted to an output device which transmits media to the user's display. In response to the first trigger signal, the output device switches from the first media stream to a second media stream containing the substitute content.

In embodiments, the monitoring station monitors the first media stream for an end to undesirable content. When an end to undesirable content is detected, the monitoring station transmits a second trigger signal to the output device, and the output device switches from the second media stream to the first media stream.

In accordance with another embodiment, the substitute content has a substitute content attribute associated with a user preference stored in the system database.

In accordance with another embodiment, prior to transmitting the first trigger signal, the monitoring station monitors the first media stream for undesirable content.

In accordance with another embodiment, the monitoring station assigns a substitute content attribute to substitute content and stores the substitute content attribute in the system database.

In accordance with another embodiment, the system database stores, a plurality of substitute content attributes and a directory of substitute content, each substitute content having a substitute content attribute. The monitoring station associates at least one of the plurality of substitute content attributes with the primary content attribute, and analyzes

2

MYCHOICE000173

DOCKET NO.: THERR18U01

substitute content attributes associated with the primary content attribute for correspondence to a user preference.

In accordance with another embodiment, undesirable content in the first media stream is detected in real-time.

5    In accordance with another embodiment, the system solicits a user preference corresponding to the substitute content.

Further provided is an article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system, instruct the computer system to perform any of the methods of replacing undesirable

10   content described herein.

Further provided is an output device in communication with a monitoring station and configured to execute transmission of media to a user in accordance with any of the methods of replacing undesirable content described herein.

Other embodiments, in addition to the embodiments enumerated above, will become

15   apparent from the following detailed description, taken in conjunction with the accompanying drawings, which illustrate, by way of example, the principles of the system and method of operation.

MYCHOICE000174

DOCKET NO.: THERR18U01

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram of an embodiment of a system for replacing undesirable content in a media stream.

5    FIG. 2 is a timing diagram for a method of replacing the undesirable content.

FIG. 3 is a diagram of example data types of the system.

FIG. 4 is a temporal diagram of content attributes and their effect on displayed content.

FIG. 5 is a timing diagram for another method of replacing undesirable content in a media stream.

10

4

MYCHOICE000175

DOCKET NO.: THERR18U01

## DETAILED DESCRIPTION OF THE INVENTION

FIG. 1 is a schematic diagram of an embodiment of a system for replacing undesirable content in a media stream for viewing by a user. An output device 102 on the user side

5    includes a network interface 104 in communication with a monitoring station 120. Network interface 104 receives one or more media streams 501-n from one or more content sources 601-n. Content sources 601-n may include cable, satellite, or over-the-air content providers, streaming content or video on demand providers, a networked content database, and other public or private network accessible content.

10    Output device 102 generally refers to a connected group of one or more hardware components on the user side which are collectively capable of communicating with monitoring station 120, receiving and switching between multiple media streams, and transmitting a media stream to a display 130. Output device 102 may include a set top box or subscriber device, a router, a network switch, a wired or wireless internet transceiver, an internet connected

15    television or smart TV, or a short distance wireless communications transceiver, such as a RF, infrared, or Bluetooth transceiver. Display 130 may be integrated with output device 120 in a single piece of hardware.

User 700 interfaces with the system via a user interface, shown in the present embodiment as a software application installed on a mobile communication device, MCD 140,

20    such as a cellular telephone, tablet, or computer. In the shown embodiment, MCD 140 is in direct communication with monitoring station 120 and a system database 150, through an internet or cellular network connection. In other embodiments, MCD 140 may directly connect to only one of monitoring station 120 or system database 150. MCD 140 is additionally in communication with output device 102, through an internet or short distance wireless

25    connection. In yet another embodiment, the user interface may be installed on the output device and viewable on display 130.

Monitoring station 120 receives media streams 501-n from content sources 601-n and monitors the content of the media streams for a plurality of content attributes. Methods by which monitoring station 120 may receive media streams are discussed in US Pat. No.

30    9,021,518 to Theriault. Information related to media streams and content attributes may be stored in system database 150. Monitoring station 120 may include may include one or more

5

MYCHOICE000176

DOCKET NO.: THERR18U01

networked computers and may include hardware and software components. Content monitoring may be automated, such as by a predictive content analysis algorithm, or performed with manual input from an operator. System database 150 may similarly include one or more networked data storage devices.

5        FIG. 2 is a timing diagram for a method of replacing undesirable content in a media stream. Undesirable content may be any content which corresponds to a user preference indicating undesirability. User preferences are stored in the system database 150. User preferences may be directly provided by the user, for example in an initial setup stage; may learned by the system based on viewing habits; or may be based on user provided feedback

10       related to content in media streams. The term user preference is used generally to describe both likes and dislikes associated with a specific user. More specifically, user preferences for consideration when monitoring for undesirable content may apply to a variety of content types, for example: routinely occurring content, such as a commercial break or halftime in a sporting event; specific content types which routinely occur in specific programs, such as the weather

15       portion of the nightly news, or the monologue portion of a late night talk show; situational content, such as a rain delay in a baseball game, or an early knockout finish in a mixed martial arts fight. Any type of content which a specific user generally does not desire to watch may be characterized with a user preference.

         First media stream 501 includes primary content, which is typically content selected by

20       a user 700, and also contains undesirable content which begins at time t1 and ends at time t2. In this example, primary content resumes at time t2. Monitoring station 120 detects the undesirable content in first media stream 501, and in response transmits a first trigger signal 202 to output device 102. Trigger 202 is shown to occur a brief time after the first detection event, which in turn is shown to occur a brief time after the start of undesirable content at t1.

25       The shown timing is merely an example; predictive content analysis may permit some of these events to occur nearly simultaneously, or with barely perceptible delay.

         In addition to transmitting first trigger signal 202, monitoring station 120 directs output device 102 to a second media stream 502 which contains substitute content. Substitute content may be selected from many different content sources, such as broadcast network content, cable

30       network content, satellite network content, internet media, user generated content, shared content, content stored in the system database, and others. Directing the output device to the

6

MYCHOICE000177

DOCKET NO.: THERR18U01

second media stream may be accomplished by, for example, pointing to a cable or satellite provider of the second media stream, providing an internet or local network address from which output device may access the second media stream, directly streaming the second media stream to the output device, or any other method which enables the output device to access the second media stream. In response to receiving first trigger signal 202, output device 102 switches the media being transmitted to display 130 from first media stream 501 to second media stream 502.

In the shown example, after transmitting the first trigger signal, monitoring station 120 continues to monitor the first media stream for an end to undesirable content, which occurs at time t2. When the end to undesirable content is detected, monitoring station 120 transmits a second trigger signal 204 to output device 102. In response to receiving the second trigger signal, the output device switches from the second media stream to the first media stream, and first media stream 501 is again shown on display 501.

The substitute content of the second media stream is selected by the monitoring station based upon content attributes of both the primary and substitute content. FIG. 3 is a diagram of some of the data types stored in system database 150. A plurality of content, 1-N are each associated with content attributes, labeled, e.g., attributes 1a, 1b, …1n. Content 1-N may belong to one or more of the content categories discussed herein, such as primary, undesirable, or substitute content. While the associations between content and attributes are stored in database 150, the content itself is not necessarily, but may be stored in database 150 as well.

Content attributes are descriptive of some characteristic of the content; some examples of content attributes follow. A group of genre attributes may include drama, news, sports, reality, documentary, and others. A group of location attributes may include various cities, states, and countries. A group of temporal attributes may include historic time periods, years in which programs are filmed or aired, holiday seasons, etc. A group of participant attributes may include a cast member, producer, sports team, announcer, reporter, etc. Other content attributes may relate to events, keywords, images, content providers, or combinations of other attributes.

For some content, content attributes may be transmitted to by a content provider to the monitoring station along with a media stream, such as a metadata indicating genre, content theme, etc. which may be provided with a cable television program. For some content, content attributes may be generated automatically by analysis software which cooperates with the

7

DOCKET NO.: THERR18U01

monitoring station. For some content, content attributes may be manually input to the database, such as by an operator associated by the monitoring station or by one or more users of the system.

Substitute content may be short or long form content, and may be traditional video media, or non-traditional media such as trivia, interactive games, popular internet content, etc. Substitute content may be free of advertising or may contain non-traditional forms of advertising. Suitable substitute content is selected for a primary content stream based on associating or matching a substitute content attribute with at least one primary content attribute. Associated content attributes do not need to be identical matches, but merely related. However, associations may have a strength, such as a numeric indicator, which indicates how close two attributes are to being a match.

In FIG. 3, dotted lines connecting content attributes represent associations between these attributes. By way of example, let Content 1 be primary content (NFL game 1) having Attribute 1a: 'football'. Substitute content 2, 3, and N are evaluated by comparing their attributes with the primary content attributes. Content 2 has Attribute 2a, also 'football', which is associated with Attribute 1a. Content 2 may therefore be selected as a suitable substitute content for Content 1.

In another example, let Content 2 be the primary content and content 1, 3, and N be evaluated as substitute content. In addition to the previously mentioned match ('football') between attributes 1a and 2a, Content 2 has attributes 2b: 'City 1' and 2n: 'sports'. Content 3 has an attribute 3n: 'Metro area' which is associated with attribute 2b: 'City 1'. Content 3 in this example is trivia content related to the metro area around City 1. Content 3 is not necessarily related to sports or football. Content N, a hockey game, has attribute Na: 'sports' associated with attribute 2n of Content 2 and also has attribute Nb: 'City 1' associated with attribute 2b of Content 2. In this case, any of content 1, 3, or N may be selected as substitute content for Content 2.

In some embodiments, potential substitute content may be further evaluated for having a content attribute associated with a user preference. As discussed above, user preferences associated with a particular user are stored in the system database. As in the case of associating content attributes with one another, associating user preferences with content attributes may be

8

MYCHOICE000179

DOCKET NO.: THERR18U01

based on exact match, near match, user feedback, automated analysis, or other means known in the art.

Refer again to the example of FIG. 3, where Content 2 is the primary content being watched by users 1-N who have corresponding User Profiles 1-N. Each User Profile 1-N includes a user preference of disliking halftime. When halftime begins in the football game of Content 2, substitute content is delivered to each user. Based only on the comparison of content attributes discussed above, any of content 1, 3, or N may be selected as substitute content for Content 2. However, based upon user preferences as well, the substitute content is further optimized for the user.

User 1 has a new profile, including only positive preference 1a of liking football. User likes and dislikes are indicated by the ascii emoticons for smiley and frowning faces, ':)' and ':('. Based on this preference, the system may provide user 1 with Content 1 as a substitute for halftime.

User 2 has preferences for liking sports and also liking trivia. Preference 2a: 'sports' is associated with attributes of potential substitute content 1 and N. Preference 2b: 'trivia' is associated with Content 3. In this case, the substitute content may be selected based on the strength of the match. For example, user 2 may have a stronger preference for trivia than for sports, indicating that Content 3 should be provided as a substitute.

User N has a preference for liking City 1, which results in a positive association with Content 3 and N. However User N, dislikes Team 1, resulting in a negative association with Content N. This negative association may outweigh the positive association, and result in Content 3 being provided as the substitute instead of Content N.

In some embodiments, the system may solicit user feedback corresponding to substitute content. The user may provide such feedback through the user interface by, for example, marking thumbs up or thumbs down, assigning a number of stars, or holding down a button for a certain time to indicate magnitude of like or dislike. The system may not solicit feedback on all content, but may in special circumstances, such as a when the system has little information to determine a match or when the information is potentially conflicting. Referring to the last example, User 1 may be asked for feedback to supplement their profile, which as a new user is limited. User N may be asked for feedback on Content 3, since they do not have an existing preference for trivia.

9

MYCHOICE000180

DOCKET NO.: THERR18U01

FIG. 4 illustrates an example of how content attributes may vary with time, and how changing attributes may impact which content is displayed to three users Tom, Dick, and Harry. Some content attributes, such as the event type (football or baseball game) or participating team (Patriots) are constant for the duration of the event. Other content attributes

5    may switch on and off, or be associated or disassociated with the content. Such changes are indicated with N or Y (no or yes), for example, in a football game the attribute 'halftime' may be set to N, Y, then N again over the course of the game. Changes in attributes may be automatically or manually made at the monitoring station, or may be provided to the monitoring station by a user through the user interface. In the present embodiment, the

10    monitoring station is monitoring games 1-4 for undesirable content in real time (i.e., without the content being time-shifted).

The users each have a profile in the system database which associates them with a number of user preferences. Tom, Dick, and Harry may be generally characterized as similar viewers, for example, they may be the same age and gender, prefer the same media genres, and

15    live in the same geographic area. However, as the example illustrates, the user preferences enable the system to provide custom viewing experiences for each.

At time t0, Tom and Harry are watching Game 1. At time t1, the system detects that Game 1 has entered halftime, and the 'Halftime' content attribute is switched on. Tom and Harry each have a user preference of disliking halftime, as indicated by the '*' in their profiles

20    at time t1. Because Tom has a user preference of liking football, and because the content of Game 2 is associated with the content of Game 1 (both have attribute 'NFC East'), Tom is switched to Game 2. Because Harry has a user preference of liking football and the Patriots, he is switched to Game 3, a Patriots game.

Dick was watching Game 3 at time t0. At time t2, the system detects that Game 2 is a

25    blowout as evidenced by the score spread or other metric. The 'Blowout' content attribute is switched on for Game 3. Dick and Harry, who are watching Game 3 at t2, both have a user preference of disliking blowouts. Dick likes halftime, and since Game 1 is still in halftime, the system displays Game 1 for Dick. However, for Harry, liking the Patriots outweighs his dislike of blowouts, therefore the system continues to display Game 3 for Harry.

30    At time t3, the system detects that halftime has ended in Game 1. The system switches back to displaying Game 1 for Tom and Harry, since it was their initially selected content. At

MYCHOICE000181

DOCKET NO.: THERR18U01

time t4, the system detects that Game 3 is no longer a blowout. The system switches back to displaying Game 3 for Dick, because it was his initially selected content.

At time t5, the system detects that Game 1 is now a blowout. Tom and Harry, who are watching Game 1 at t5, both have a user preference of disliking blowouts. The content of Game 4 is related to the content of Game 1 by the shared content attribute 'sports' (not shown, but related to attributes 'football' and 'baseball'). Tom has a user preference for baseball, and the system switches to displaying Game 4 for Tom. The system switches to displaying Game 3 for Harry, because Game 3 is a better match for his user profile at time t5.

In other embodiments, a user may notify the monitoring station that primary content has become undesirable to them. For example, a user may begin to find a sporting event boring when there is weak defensive play. The user may initiate a switch through the user interface. In some embodiments, the monitoring station may use that initiated switch to trigger substitute content for users with similar viewing habits. The monitoring station may automatically update content attributes, user preferences, or both in response to receiving the user request.

FIG. 5 is a timing diagram for another method of replacing undesirable content in a media stream. In this embodiment, at time t2, monitoring station 120 receives a user preference indicating that substitute content is undesirable. The user may send a preference update through the user interface by methods previously discussed. In response to receiving the updated user preference, the monitoring station sends a third trigger signal 206, signaling the output device to switch from second media stream 502 to a third media stream 503. In some embodiments, when the system detects an end to undesirable content at t3, trigger 204 is sent and the display is switched back to primary content 501. In other embodiments, the system may wait for further user input after receiving a request to switch content.

Further provided is a software application for a computer system, such as an MCD, desktop computer, or smart TV, which includes a user interface and instructs the computer system to perform any of the methods of replacing undesirable content discussed herein.

Further provided is an output device which transmits media to a display viewable by a user, and includes a network interface in communication with the monitoring station. The network interface may include hardware for communicating via wired or wireless internet; broadcast, cable, or satellite communication, short-range wireless communication protocols, and combinations thereof.

11

DOCKET NO.: THERR18U01

The embodiments of the system and methods described herein are exemplary and numerous modifications, combinations, variations, and rearrangements can be readily envisioned to achieve an equivalent result, all of which are intended to be embraced within the scope of the appended claims.  Further, nothing in the above-provided discussions of the system and method should be construed as limiting the invention to a particular embodiment or combination of embodiments.  The scope of the invention is defined by the appended claims.

12

MYCHOICE000183

DOCKET NO.: THERR18U01

## ABSTRACT

A system and method for replacing undesirable content in a media stream provides viewers with a highly individualized video viewing experience. A monitoring station detects undesirable content and selects substitute content based upon user preferences stored in a system database. The substitute content may have attributes related to both the primary content being viewed and the user preferences. A first trigger signal is transmitted to an output device which transmits media to the user's display. In response to the first trigger signal, the output device switches from the first media stream to a second media stream containing the substitute content. In embodiments, undesirable content is detected and substituted for in real-time.

1

MYCHOICE000184

**CLAIMS**

I claim:

1.  A method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

    detecting, by a monitoring station, undesirable content in the first media stream, wherein the undesirable content corresponds to a user preference associated with the user and stored in a system database;

    selecting substitute content, by the monitoring station, wherein the substitute content has a substitute content attribute associated with the primary content attribute;

    responsive to detecting undesirable content in the first media stream, transmitting, from the monitoring station, a first trigger signal, and directing the output device to a second media stream containing the substitute content;

    wherein the output device switches from the first media stream to the second media stream in response to the first trigger signal;

    after transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for an end to undesirable content;

    responsive to detecting an end to undesirable content in the first media stream, transmitting, from the monitoring station, a second trigger signal to the output device; and,

    wherein the output device switches from the second media stream to the first media stream in response to the second trigger signal.

2.  The method of claim 1 wherein the substitute content has a substitute content attribute associated with a user preference stored in the system database.

3.  The method of claim 1, further including:

    prior to transmitting the first trigger signal, monitoring, by the monitoring station, the first media stream for undesirable content.

1

MYCHOICE000185

4.  The method of claim 1, further including:

    assigning, by the monitoring station, a substitute content attribute to substitute content and storing the substitute content attribute in the system database.

5   5.  The method of claim 1, further including:

    storing, in the system database, a plurality of substitute content attributes and a directory of substitute content, each substitute content having a substitute content attribute;

    associating, by the monitoring station, at least one of the plurality of substitute content attributes with the primary content attribute; and,

10      analyzing, by the monitoring station, substitute content attributes associated with the primary content attribute for correspondence to a user preference.

6.  The method of claim 1 wherein the step of detecting undesirable content in the first media stream is performed in real-time.

15

7.  The method of claim 1, further including:

    soliciting a user preference corresponding to the substitute content.

8.  The method of claim 1 wherein the substitute content attribute is an element of the group

20  consisting of an event attribute, a location attribute, a genre attribute, a temporal attribute, a participant attribute, a keyword attribute, an image attribute, and combinations thereof.

9.  The method of claim 1 wherein the substitute content is selected from the group consisting of broadcast network content, cable network content, satellite network content, internet

25  media, user generated content, shared content, and content stored in the system database.

2

MYCHOICE000186

10. An article comprising a tangible medium that is not a transitory propagating signal encoding computer-readable instructions that, when applied to a computer system, instruct the computer system to perform a method of replacing undesirable content in a first media stream being received by an output device which transmits media to a display viewable by a user, the first media stream containing primary content having a primary content attribute, the method comprising the steps of:

communicating to a monitoring station a user preference corresponding to undesirable content;

receiving a first trigger signal from the monitoring station after undesirable content corresponding to the user preference is detected in the first media stream by the monitoring station;

responsive to receiving the first trigger signal, signaling the output device to switch from the first media stream to a second media stream containing substitute content, wherein the substitute content has a substitute content attribute associated with the primary content attribute;

receiving a second trigger signal from the monitoring station after an end to undesirable content in the first media stream is detected by the monitoring station; and,

responsive to receiving the second trigger signal, signaling the output device to switch from the second media stream to the first media stream.

11. The article according to claim 10, wherein the method further comprises:

communicating to the monitoring station a user preference corresponding to the substitute content.

12. The article according to claim 11, wherein the method further comprises:

receiving a third trigger signal from the monitoring station after the user preference corresponding to the substitute content is received by the monitoring station; and,

responsive to receiving the third trigger signal, signaling the output device to switch from the second media stream to a third media stream.

3

MYCHOICE000187

13. An output device which transmits media to a display viewable by a user, the device comprising:

a network interface in communication with a monitoring station;

wherein the network interface receives a first media stream containing primary content having a primary content attribute;

wherein the output device transmits the first media stream to the display;

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting undesirable content in the first media stream, a first trigger signal and a second media stream containing substitute content, wherein the undesirable content corresponds to a user preference associated with the user and stored in a system database, and wherein the substitute content has a substitute content attribute associated with the primary content attribute;

wherein the output device switches the media being transmitted to the display from the first media stream to the second media stream in response to the first trigger signal;

wherein the network interface receives, from the monitor station, responsive to the monitor station detecting an end to undesirable content in the first media stream, a second trigger signal; and,

wherein the output device switches the media being transmitted to the display from the second media stream to the first media stream in response to the second trigger signal.

14. The output device according to claim 13, wherein:

the network interface receives a third trigger signal from the monitoring station, responsive to a user input corresponding to the substitute content; and,

the output device switches the media being transmitted to the display from the second media stream to a third media stream in response to the third trigger signal.

4

MYCHOICE000188

1/5



FIG. 1

MYCHOICE000189

2/5



FIG. 2

MYCHOICE000190

3/5

Content 1: NFL1

Attrb 1a: Football
Attrb 1b

Attrb 1n

User Profile 1

Pref 1a - :) Football

Content 2

Attrb 2a: Football
Attrb 2b: City 1

Attrb 2n: Sports

User Profile 2

Pref 2a- :) Sports
Pref 2b- :) Trivia

Pref 2n

Content 3: Trivia

Attrb 3a: Trivia
Attrb 3b

Attrb 3n: Metro area

User Profile N

Pref Na- :) City1
Pref Nb- :( Team 1

Pref Nn

Content N: Hockey

Attrb Na: Sports
Attrb Nb: City 1

Attrb Nn: Team 1

FIG. 3

MYCHOICE000191

4/5





FIG. 4

MYCHOICE000192

5/5



FIG. 5

MYCHOICE000193

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | VIDEO VIEWING EXPERIENCE ENHANCEMENT THROUGH CUSTOM CURATION |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☒ The attached application, or

☐ United States application or PCT international application number _____

filed on _____.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the  USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the  application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card  authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not  publicly available.

LEGAL NAME OF INVENTOR

Inventor: Richard Theriault _____    Date (Optional) : _____

Signature: /Richard Theriault/ _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed.  Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 62/523,661 | 06/22/2017 | | 130 | TPP37260 | | |

**CONFIRMATION NO. 6119**

Richard Theriault
5 Brooks Hill Rd
Lincoln, MA 01773

**FILING RECEIPT**


OC000000092433425

Date Mailed: 06/29/2017

Receipt is acknowledged of this provisional patent application. It will not be examined for patentability and will become abandoned not later than twelve months after its filing date. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Richard Theriault, Lincoln, MA;

**Applicant(s)**

Richard Theriault, Lincoln, MA;

**Power of Attorney:** None

**Permission to Access Application via Priority Document Exchange:** No

**Permission to Access Search Results:** No

Applicant may provide or rescind an authorization for access using Form PTO/SB/39 or Form PTO/SB/69 as appropriate.

**If Required, Foreign Filing License Granted:** 06/28/2017

The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 62/523,661**

**Projected Publication Date:**  None, application is not eligible for pre-grant publication

**Non-Publication Request:** No

**Early Publication Request:** No

**\*\* SMALL ENTITY \*\***

**Title**

VIDEO VIEWING EXPERIENCE ENCHANCEMENT THROUGH CUSTOM CURATION

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

page 1 of 3

MYCHOICE000196

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

MYCHOICE000197

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

### *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

MYCHOICE000198

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 1 of 2

This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR 1.53(c).

Express Mail Label No. _____

| INVENTOR(S) | | |
|---|---|---|
| Given Name (first and middle [if any]) | Family Name or Surname | Residence (City and either State or Foreign Country) |
| Richard | Theriault | Lincoln, MA |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Additional inventors are being named on the _____ separately numbered sheets attached hereto.

### TITLE OF THE INVENTION (500 characters max):

Video Viewing Experience Enhancement through Custom Curation

Direct all correspondence to:   **CORRESPONDENCE ADDRESS**

☐ The address corresponding to Customer Number: _____

**OR**

☑ Firm or Individual Name    Richard Theriault

Address    5 Brooks Hill Rd

| City    Lincoln | State    MA | Zip    01773 |
|---|---|---|
| Country  US | Telephone  617-438-4315 | Email  rich@sportsbarnetworks.com |

### ENCLOSED APPLICATION PARTS (*check all that apply*)

☐ Application Data Sheet. See 37 CFR 1.76.   ☐ CD(s), Number of CDs _____

☒ Drawing(s)  *Number of Sheets* _____   ☐ Other (specify) _____

☑ Specification (e.g., description of the invention)  *Number of Pages* _____

**Fees Due:** Filing Fee of $260 ($130 for small entity) ($65 for micro entity). If the specification and drawings exceed 100 sheets of paper, an application size fee is also due, which is $400 ($200 for small entity) ($100 for micro entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

### METHOD OF PAYMENT OF THE FILING FEE AND APPLICATION SIZE FEE FOR THIS PROVISIONAL APPLICATION FOR PATENT

☑ Applicant asserts small entity status. See 37 CFR 1.27.

☐ Applicant certifies micro entity status. See 37 CFR 1.29.
Applicant must attach form PTO/SB/15A or B or equivalent.

☐ A check or money order made payable to the *Director of the United States Patent and Trademark Office* is enclosed to cover the filing fee and application size fee (if applicable).

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The Director is hereby authorized to charge the filing fee and application size fee (if applicable) or credit any overpayment to Deposit Account Number: _____

| 130 |
|---|

**TOTAL FEE AMOUNT ($)**

*USE ONLY FOR FILING A PROVISIONAL APPLICATION FOR PATENT*

This collection of information is required by 37 CFR 1.51. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 10 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

MYCHOICE000199

PTO/SB/16 (03-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

## PROVISIONAL APPLICATION FOR PATENT COVER SHEET – Page 2 of 2

The invention was made by an agency of the United States Government or under a contract with an agency of the United States Government.

[✓] No.

[ ] Yes, the invention was made by an agency of the U.S. Government. The U.S. Government agency name is: _____

_____

[ ] Yes, the invention was made under a contract with an agency of the U.S. Government. The name of the U.S. Government agency and Government contract number are: _____

_____

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

SIGNATURE _____     DATE    06/22/2017 _____

TYPED OR PRINTED NAME    Richard Theriault ____     REGISTRATION NO. _____
                                                   (*if appropriate*)
                                                   TPP37260
TELEPHONE    617-438-4315 _____     DOCKET NUMBER _____

MYCHOICE000200

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (*i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

MYCHOICE000201

# VIDEO VIEWING EXPERIENCE ENCHANCEMENT THROUGH CUSTOM CURATION

5                          FIELD OF THE INVENTION

The present invention relates generally to a field of video viewing. More specifically, the present invention relates to methods and systems for facilitating an ideal video viewing experience reflective of personal tastes.

10

## BACKGROUND OF THE INVENTION

The goal of the present invention is to identify and integrate real time and non-real time short-form video content into traditional broadcast Live TV. Also, this invention

15    allows for the identification and integration of real time and non-real time short form video into long form video streams. This is done for the purposes of creating the ideal viewing experience as reflective of personal tastes and germaine to specific static and real-time event conditions.

20

## SUMMARY OF THE INVENTION

Using both automatic and/or manual means, potential content will be evaluated for how it enhances an existing specific broadcast event for a particular viewer. The

25    broadcast event will be classified by various characteristics including event class, teams or participants, specific condition of the events both statically and dynamically occurring.

One example in sports would be a football game, between two teams, where the specific static preexisting conditions and specific dynamic real-time conditions are occurring. As those conditions are known and then dynamically shift potential short-form

30    video content is selected and added to a pool for that specific viewing. The short form video content It is evaluated based on a best fit algorithm based on known, manually

1

MYCHOICE000202

acquired and/or calculated enjoyment characteristics. This video pool continues to be
dynamically re-created. Based on the best fit it is delivered in real time during desired
breaks from the long form content. These breaks are determined by the viewer or
convention to be either commercial breaks and or any other characteristic where there is a
5    desire of the viewer to omit or include.


## BRIEF DESCRIPTION OF THE DRAWINGS

10    FIG. **1** is a diagram drawing of the present invention; and
FIG. **2** is a diagram drawing of the present invention.


## DETAIL DESCRIPTIONS OF THE INVENTION

15

All illustrations of the drawings are for the purpose of describing selected
versions of the present invention and are not intended to limit the scope of the present
invention.

FIG. **1** presents a system that allows a user who subscribes to the system to avoid
20    viewing commercials with unacceptable content (e.g. alcohol related, sexual content)
during real-time television broadcasts. The system has a residential component consisting
of a control unit having a user interface a local database and a specialized router, a
remote processing component having monitoring stations where the monitored network
feeds are processed, and a system DBMS component that stores channel and user
25    information in real time. The control unit is connected to the internet, such as via a
wireless connection on the user's network, to retrieve remotely-stored data obtained
through monitored network feeds. The control unit retrieves real-time data associated
with viewable content and applies logic to switch the viewing channel or signal source
for display on the television. The monitored network feeds are viewed on the system's
30    monitoring stations and the earliest feed for each monitored channel determines the
channel content. The purpose of this application is to further the goal of enhancing

2

MYCHOICE000203

consumers viewing experiences by manually and/or automatically selecting preferred content to be viewed. The goal of the invention is to identify preferred real time and non-real-time video content. This preferred content is usually short form video content but can be any form of video and/or audio content. This invention applies to switching away from

5    traditional broadcast scheduled Live TV content and/or other long from content for the purposes of displaying preferred content to create the ideal viewing experience as reflective of personal tastes and germane to specific viewing event and changing real-time event conditions.

Using both automatic and/or manual means, potential content is evaluated for how

10   it enhances an existing specific broadcast event with related viewing event characteristics for a viewer. The broadcast event will be classified by various characteristics including but not limited to event class (sports, news, etc.), sub-classes (football, baseball, etc.), participating teams or participants, as well as specific condition of the events both statically (playoffs etc.) and dynamically (score, injuries, subject matter) occurring.

15   One example in sports would be a football game, between two teams, with specific static pre-existing conditions and specific dynamic real-time changing conditions. As those conditions are known and change potential preferred video is added and/or removed from candidate pool(s) for that specific viewing event (and event characteristics) and that specific viewer. The short form video content is continuously

20   evaluated and re-evaluated based on a best fit algorithm. This algorithm is based on known, manually acquired and/or calculated enjoyment criteria as they relate to the static and dynamic viewing event characteristics. This video pool continues to be dynamically re-created based on changing conditions. Based on a best fit enjoyment algorithm and/or manual determination the preferred substitute content is delivered in real time during

25   viewer designed and/or pre-designated break conditions. These breaks are determined by the viewer or by convention to be either commercial breaks and or any other characteristic where there is a desire of the viewer to change to preferred viewing of other content.

The present invention has a plurality of embodiments including but not limited to:

3

1) Referencing FIG. **2**. Using both automatic (B) and/or manual (C) means, potential content is evaluated for how it enhances an existing specific broadcast event with related viewing event characteristics for a viewer.

    a. The broadcast event will be classified by various characteristics (D) including but not limited to event class (sports, news, etc.), sub-classes (football, baseball, etc.), participating teams or participants, as well as specific condition of the events both statically (playoffs etc.) and dynamically (score, injuries, subject matter) occurring (F).

    b. One example in sports would be a football game, between two teams, with specific static pre-existing conditions and specific dynamic real-time changing conditions. Another example would be a news report, concerning politics, about a specific subject, with a certain characteristic (e.g. law, protest, speech, etc.). Another example would be a news report, concerning health, about a specific subject with certain characteristics (e.g. law, information)

    c. As those conditions are known and change potential preferred video is added and/or removed from a Preferred Pool (A) for that specific viewing event (J) (and event characteristics (D)) and that specific viewer(E).

    d. The short form video content is continuously evaluated and re-evaluated based on a best fit algorithm (B, C). This algorithm is based on known, manually acquired and/or calculated enjoyment criteria as they relate to the static and dynamic viewing event characteristics. This video pool (A) continues to be dynamically re-created based on changing conditions.

    e. Based on a best fit enjoyment algorithm (B) and/or manual determination (C) the preferred substitute content (H, I) is delivered in real time during viewer designed and/or pre-designated break conditions. These breaks are determined by the viewer or by convention to be either commercial breaks and or any other characteristic where there is a desire of the viewer to change to preferred viewing of other content.

2) A specific embodiment is outlined as reflected in Figure #2.  This embodiment reflects the final curation decision from the pool (A) being decided by automatic

4

MYCHOICE000205

(B) and/or manual curation (C) means in real time or ahead of the actual broadcast (J).

3) Other specific embodiments could be obtaining the user preferences from algorithmically based on pre-exiting data on the viewer and/or based on direct approval ratings supplied by the viewer in each instance.

4) Other specific embodiments could reflect the development of the automatic curation algorithm based on patterns or groups of patterns of viewer enjoyment determined empirically.

5) Other specific embodiments could reflect the development of the automatic curation algorithm based on patterns or groups of patterns of viewer enjoyment determined analytically from personal data.

6) Other specific embodiments have the content to be substituted elected from a pool of live real-time video streams. Once by any means automatic and/or manual the particular stream is deemed to preferable to the viewer it can optionally be played on a local mobile device during regular TV content. During commercial breaks (or any other preferred break criteria) the content is shared and/or switch to the TV screen as substitute content.

Although the invention has been explained in relation to its preferred embodiment, it is to be understood that many other possible modifications and variations can be made without departing from the spirit and scope of the invention.

MYCHOICE000206



# FIG. 1

MYCHOICE000207



# FIG. 2

MYCHOICE000208

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | |
| **Filing Date:** | |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENCHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard Theriault |
| **Filer:** | Richard Theriault |
| **Attorney Docket Number:** | TPP37260 |

Filed as Small Entity

**Filing Fees for   Provisional**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| PROVISIONAL APPLICATION FILING FEE | 2005 | 1 | 130 | 130 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

MYCHOICE000209

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **130** |

MYCHOICE000210

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29584213 |
| **Application Number:** | 62523661 |
| **International Application Number:** | |
| **Confirmation Number:** | 6119 |
| **Title of Invention:** | VIDEO VIEWING EXPERIENCE ENCHANCEMENT THROUGH CUSTOM CURATION |
| **First Named Inventor/Applicant Name:** | Richard  Theriault |
| **Correspondence Address:** | Richard Theriault<br>-<br>5 Brooks Hill Rd<br>-<br>Lincoln                              MA                  01773<br>US              -<br>- |
| **Filer:** | Richard Theriault |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | TPP37260 |
| **Receipt Date:** | 22-JUN-2017 |
| **Filing Date:** | |
| **Time Stamp:** | 18:52:49 |
| **Application Type:** | Provisional |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $130 |

MYCHOICE000211

063117JINTFESW18533500

| RAM confirmation Number | |
|---|---|
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Provisional Cover Sheet (SB16) | ProvisionalSB_TPP37260.pdf | 3478953 / 0543695ce207919aa1084ad378841aaf67171a1c | no | 3 |

**Warnings:**

This is not a USPTO supplied Provisional Cover Sheet SB16 form.

**Information:**

| 2 | Specification | specs_TPP37260.pdf | 31995 / 829eaf9f35c028244e41be087d875b6ea1136b520 | no | 5 |

**Warnings:**

**Information:**

| 3 | Drawings-only black and white line drawings | figues_TPP37260_emb.pdf | 149811 / 316dd2cc289d7f13d1316f4295a81b1de83035c1 | no | 2 |

**Warnings:**

**Information:**

| 4 | Fee Worksheet (SB06) | fee-info.pdf | 29545 / 2e8d1f2bf00be6fefcc94d139f668f850aa0c812 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 3690304 | | |

MYCHOICE000212

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

MYCHOICE000213