IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MYCHOICE, LLC *and* BARBOARDS, LLC, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CASE NO. 2:23-CV-00507-JRG-RSP |
| TAIV, INC., | § § § | |
| *Defendant*. | § | |

### REPORT AND RECOMMENDATION

Before the Court are two Motions by Plaintiffs: a Motion to Dismiss and Strike Defendant Taiv's Counterclaims and Affirmative Defenses Under Rules 12(b)(6) and 12(f) ("Motion to Dismiss"), **Dkt. No. 70**, and a Motion for Partial Summary Judgment on Defendant Taiv's Inequitable Conduct and Attempted Monopolization Counterclaims ("Motion for Summary Judgment"), **Dkt. No. 94**. Taiv's Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' First Amended Complaint is filed at Dkt. No. 65. The Motion to Dismiss is ripe, *see* Dkt. Nos. 73, 74, as is the Motion for Summary Judgment, *see* Dkt. Nos. 112, 124.

In the Motion to Dismiss, Plaintiffs request (1) dismissal under Federal Rule of Civil Procedure 12(b)(6) of Taiv's inequitable conduct and antitrust counterclaims (Counterclaim Nos. 3, 4, and 5) for failure to meet the heightened pleading standards, and (2) striking of a related inequitable conduct affirmative defense (Affirmative Defense No. 5) under Rule 12(f) for being immaterial. Dkt. No. 70 at 1–2, 18. In their subsequent Motion for Summary Judgment, Plaintiffs request summary judgment on the same set of four counterclaims and affirmative defenses because, with respect to inequitable conduct, Taiv cannot prove materiality or specific intent to deceive, and, with respect to monopolization, Taiv cannot prove injury or fraud. Dkt. No. 94 at 1.

For the reasons provided below, it is recommended that the Court deny the Motion to Dismiss and the Motion for Summary Judgment.

## I. BACKGROUND

The Court heard argument on the Motion for Summary Judgment, as well as the previous Motion to Dismiss, at the Pretrial Conference held on October 7, 2025. *See* Dkt. Nos. 156, 164. During that hearing, the Court stayed the counterclaims and affirmative defenses that deal with inequitable conduct and antitrust issues and ordered that those be tried separately after the patent infringement trial. *See* Dkt. No. 164 at 88:13–24.

## II. LEGAL STANDARD

A. <u>Motion to Dismiss Under Rule 12(b)(6)</u>

A party may move to dismiss an action when the complaint fails "to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). A complaint states a sufficient claim if it gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in original) (citations omitted).

When considering a Rule 12 motion to dismiss, a court must accept "all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) (citation omitted). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted). The court must then decide whether those facts "state a claim that is plausible on its face." *Bowlby*, 681 F.3d at 219. "A claim has facial plausibility when the pleaded factual content allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl.*, 550 U.S. at 556).

B. Motion to Strike Under Rule 12(f)

A party may move to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, . . . motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.) (collecting cases).

"Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982) (citations omitted). To find that an affirmative defense is insufficient as a matter of law, the Court considers whether the defense is applicable to the instant case and whether the pleadings give plaintiff fair notice of the defense. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999). This standard prevents a plaintiff from being a victim of "unfair surprise." *Id*.

3

C.  <u>Motion for Summary Judgment Under Rule 56(a).</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis added). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. "If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### III. DISCUSSION

Plaintiffs first argue for dismissal of Taiv's Third (inequitable conduct), Fourth (*Walker Process* attempted monopolization), and Fifth Counterclaims (sham litigation attempted monopolization), and striking of Taiv's Fifth Affirmative Defense (inequitable conduct), *see* Dkt. No. 70 at 4–18, and then for summary judgment of no inequitable conduct, and striking of Taiv's attempted monopolization claims, or, in the alternative, summary judgment of no attempted monopolization, *see* Dkt. No. 94 at 6–15. The Court first addresses the inequitable conduct counterclaim and affirmative defense.

A. <u>Dismissal of Taiv's Third Counterclaim for Inequitable Conduct and Striking of Taiv's Fifth Affirmative Defense for Inequitable Conduct</u>

Plaintiffs argue that Taiv's Third Counterclaim, for inequitable conduct, should be dismissed. Dkt No. 70 at 15. Plaintiffs first argue that there is no but-for materiality because the PTO considered Mr. Theriault's earlier '518 Patent, which is shown on the face of the '658 Patent. Dkt. No. 70 at 15. Plaintiffs then argue that Taiv failed to plead specific intent to the heightened standard by only alleging "on information and belief" that "Mr. Theriault knew the claimed invention to be in public use, on sale, or otherwise available . . . prior to June 2016, and intentionally failed to disclose such material information to the PTO." Dkt. No. 70 at 17. Separately, Plaintiffs argue that the Court should strike the inequitable conduct defense under Rule 12(f) because the defense is "immaterial," as Taiv has failed to sufficiently allege the but-for materiality required for inequitable conduct for any "commercial embodiment" sold prior to June 22, 2016. *Id.* at 18.

In response, Taiv argues that it properly pleaded in its counterclaim that Mr. Theriault "intentionally omitted from the PTO such information regarding the MyChoice system and related commercial activities." Dkt. No. 73 at 8 (citing Dkt. No. 65 ¶¶ 18–25). This was material, Taiv

5

says, because it allowed him to avoid the on-sale bar with respect to the '658 Patent. *Id.* at 8–9. Taiv then argues that the PTO's consideration of the '518 Patent did not absolve Mr. Theriault of his duty to disclose his sales activities that would have barred the '658 Patent. *Id.* at 9–10.

As summarized in *Delano Farms Co. v. Cal. Table Grape Comm'n*, a "charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." 655 F.3d 1337, 1350 (Fed. Cir. 2011) (first citing *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009); and then citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (*en banc*)).

Reviewing the pleadings, Taiv alleges that "Mr. Theriault . . . made available to the public, was selling and/or sold a commercial embodiment of the '658 [P]atent" before the June 22, 2016 grace period date. Dkt. No. 65 ¶ 22. The '658 Patent generally claims "a system and method for replacing undesirable content in a media stream." Dkt. No. 1-1 at 1. The patent has three independent claims, which all claim some scope thereof. *Id.* at 7:60–10:59. Taiv alleges that Plaintiffs' "2013 website . . . described its product as . . . a simple to use app and . . . [g]ateway . . . that automatically switch[es] to a broadcast channel of your choice when a commercial break begins and switches back when the break ends." Dkt. No. 65 ¶ 23. Taiv also alleges that "other ample publicly available evidence from before June 22, 2016 establish[es] that Mr. Theriault's . . . commercial embodiment of the ['658' Patent's] system was already available to the public," and goes on to cite several examples. Dkt. No. 65 ¶ 24. Taiv continues that Mr. Theriault "has, at all relevant times, been the founder, Chief Executive Officer, Managing Member, representative, and/or agent of [Plaintiffs]." Dkt. No. 65 ¶¶ 19. Taiv continues that, "on information and belief,"

Mr. Theriault "knew the claimed invention to be in public use, on sale, or otherwise available to the public prior to June 2016," knew of its materiality to the claims of the '658 Patent, and "intentionally with[held] [it] with the intent to deceive the PTO." *Id.* ¶ 25.

As to Plaintiffs' first argument—that Taiv insufficiently pleaded but-for materiality by not addressing the fact that the PTO did consider the '518 Patent, which seems to suggest that this patent covers the marketed products, not the '658 Patent—it does not negate the fact that these products may still read on the claims of the '658 Patent, and therefore, that these products are material. Plaintiffs' second argument also fails. Having reviewed Taiv's pleading, the Court finds that it recites sufficient facts from which the Court may reasonably infer that Mr. Theriault both knew of the commercial embodiments and withheld those embodiments from the PTO with the specific intent to deceive. *See Delano Farms*, 655 F.3d at 1350 (Fed. Cir. 2011). As to Plaintiffs' argument to strike Taiv's inequitable conduct affirmative defense, the materiality of a pleading under Rule 12(f) and the but-for materiality required to make out an inequitable conduct claim under *Therasense* are not the same. Moreover, as Taiv's pleading of the inequitable conduct affirmative defense treads the same ground as the counterclaim, and both pleadings provide fair notice, the Court finds that the defense is not insufficient as a matter of law. *See Kaiser*, 677 F.2d at 1057; *Woodfield*, 193 F.3d at 362. Accordingly, the motion to dismiss Taiv's third counterclaim for inequitable conduct, and the motion to strike Taiv's fifth affirmative defense for inequitable conduct should be **DENIED**.

B.  Summary Judgment of No Inequitable Conduct

Plaintiffs next argue that Taiv's inequitable conduct counterclaim and affirmative defense fail as a matter of law, making essentially the same points. Dkt. No. 94 at 6. First, they argue that Taiv cannot show materiality because the MyChoice product that was available prior to June 2016

7

was cumulative: it reads on the '518 Patent, which the PTO considered. *Id.* at 7. Plaintiffs continue that Taiv's positions are consistent with this understanding—in their words, Taiv took the positions that the MyChoice product reads on the '518 Patent, and that it is an NIA. *Id.* at 7–8. Plaintiffs next argue that Taiv cannot prove specific intent to deceive the PTO because Taiv did not identify or take the deposition of the attorney that prosecuted the '658 Patent, so it has no evidence to support this assertion. *Id.* at 9. They continue that the disclosure of the '518 Patent, which is cumulative, proves that the most reasonable inference was an intent not to deceive. *Id.*

Taiv first responds that the MyChoice product was not cumulative because it is not "substantially the same" as the '518 Patent. Dkt. No. 112 at 4. To this point, they argue that the '518 Patent does not disclose at least one step that the MyChoice system performed. *Id.* (citing Dkt. No. 112-3 ¶ 11; Dkt. No. 89-2 ¶ 205). Taiv also argues that the '518 Patent only disclosed a system that operates in a residence or home, but the MyChoice system was operating in businesses, such as Dave & Buster's. *Id.* at 5 (citing Dkt. No. 112-3 ¶ 15; Dkt. No. 89-2 ¶ 86). Taiv next argues that the system used in Dave & Buster's had "non-cumulative real-time features" that were not disclosed in the '518 Patent. *Id.* at 5–6 (citing Dkt. No. 89-2 ¶ 16). Taiv's final argument to this non-cumulative point is that Dr. Almeroth testified that the Dave & Buster's system "was virtually identical to . . . the claim limitations of the '658 patent." *Id.* at 6 (citing Dkt. No. 90-4 ¶118). Taiv also argues that its NIA position is a fallback position, not relevant to the materiality consideration. *Id.* at 7. Next, Taiv argues that the single most reasonable inference to be drawn is the specific intent to deceive the PTO because (1) Mr. Theriault knew about the MyChoice system, (2) knew that it was material because of his familiarity with the process, and (3) made a deliberate decision to withhold it. *Id.* at 7–9. Specifically, Taiv proffers that (i) Mr. Theriault is the sole inventor on both the '518 and '658 Patents, and submitted an IDS on the '518 Patent, so he knew the process

8

and the duty to disclose, and was familiar with the scope of each patent, (ii) he had personal knowledge of the development, promotion, and sale of the MyChoice product, so he knew of its materiality to the '658 Patent. *Id.* at 7–8. Taiv also argues that several examples from this litigation prove his intent in the previous instance, *id.* at 8–9, but this is both irrelevant and falls into the category of propensity evidence that the Court should not consider.

"Inequitable conduct resides in failure to disclose material information, or submission of false material information, with an intent to deceive, and those two elements, materiality and intent, must be proven by clear and convincing evidence." *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). "Intent and materiality are separate requirements." *See Therasense*, 649 F.3d at 1290. But-for materiality is required to establish inequitable conduct. *Id.* at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* "Hence, in assessing the materiality of a withheld reference, a court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference." *Id.* When examining the intent to deceive requirement, the alleged conduct must be "viewed in light of all the evidence, including evidence indicative of good faith." *Kingsdown*, 863 F.2d at 876. Intent may be shown from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290. Because of the inherently fact-intensive nature of both elements, summary judgment on inequitable conduct is "permissible, but uncommon." *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1317 (Fed. Cir. 2006); *see also M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1340 (Fed. Cir. 2006) ("Although it is not impermissible to grant summary judgment of inequitable conduct, this court 'urges caution' in making an inequitable conduct determination at the summary judgment stage.").

Here, on both the materiality and specific intent issues, factual questions preclude summary judgment. Specifically, regarding materiality, there are live questions as to whether the MyChoice system is in fact cumulative over the '518 Patent, and whether the MyChoice system reads on the claims of the '658 Patent—these are genuine factual issues that the Court cannot resolve at this point. *See Headwater Rsch. LLC v. Samsung Elecs. Co.*, No. 2:22-CV-422, 2024 WL 4332729, at *2 (E.D. Tex. Aug. 5, 2024). On the specific intent issue, Taiv has proffered enough circumstantial evidence to persuade this Court that a genuine factual question exists regarding Mr. Theriault's credibility and intent that cannot be resolved at the summary judgment stage. *See SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-CV-886, 2023 WL 5615780, at *3 (E.D. Tex. Aug. 30, 2023); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1321 (Fed. Cir. 2006); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (noting that a district court "may not make credibility determinations" in ruling on a motion for summary judgment). Accordingly, the motion for summary judgment of no inequitable conduct should be **DENIED**.

C. <u>Dismissal of Taiv's Fourth Counterclaim for Attempted Monopolization Under Walker Process and Fifth Counterclaim for Sham Litigation and Attempted Monopolization</u>

Plaintiffs assert several grounds for dismissal of the attempted monopolization counterclaims. Dkt. No. 70 at 4–14. The Court addresses each in turn.

First, Plaintiffs frame their arguments around the *Noerr-Pennington* doctrine, and argue, essentially, that dismissal is proper because Taiv has failed to sufficiently plead the "narrow" *Walker Process* and sham litigation exceptions to that doctrine. Dkt. No. 70 at 4–5. However, as Taiv correctly points out, Dkt. No. 73 at 21–22, the Fifth Circuit recognizes that doctrine as an affirmative defense, *see Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 860 (5th Cir. 2000); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 295 (5th Cir. 2000). An affirmative defense may authorize dismissal through Rule 12(b)(6) "only when its applicability appears on

10

the face of the pleadings." *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013). But a party is under no obligation to plead against a possible affirmative defense or the possible exceptions thereto. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Moreover, as this Court and many others have previously held, because the *Noerr-Pennington* defense requires fact-intensive inquiry, often pointing outside the pleadings, consideration in the 12(b)(6) context is generally disfavored. *See, e.g.*, *Teso LT, UAB v. Luminati Networks Ltd.*, No. 2:20-CV-73, at *7 (E.D. Tex. Dec. 15, 2020); *Constr. Cost Data, LLC v. Gordian Grp.*, No. H-16-114, 2017 WL 2266993, at *5–6 (S.D. Tex. Apr. 24, 2017). Similarly, here, the inquiry into whether Noerr-Pennington affirmatively prevents these claims from proceeding is going to require facts outside of Plaintiffs' pleadings. Accordingly, Plaintiffs' motion to dismiss these counterclaims on this ground should be **DENIED**.

Second, Plaintiffs argue that Taiv insufficiently pleaded its *Walker Process* attempted monopolization claim because Taiv (1) did not specify who, among Plaintiffs, engaged in the misconduct, (2) failed to identify or define the relevant market, (3) failed to allege a specific intent to monopolize the market, any exclusionary or predatory conduct in furtherance of that intent, or any danger that monopolization will occur absent judicial intervention, and (4) did not address the antitrust injury factors. Dkt. No. 70 at 7–12. Taiv counters that it has sufficiently pleaded the counterclaim because (1) pleading in the alternative, as it did, still accomplishes notice, (2) it has sufficiently defined market, including the geographical area as the United States, and the product scope as "technology and systems . . . [that] automate switching from advertisements and commercials during live television broadcasts such as sports events," (3) it has adequately alleged specific intent, exclusionary conduct, and a danger that Plaintiffs will achieve a monopoly without

11

court intervention, and (4) it has sufficiently alleged antitrust injury under the four factors. Dkt. No. 73 at 14–21.

Plaintiffs consistently argue, within the above points, that the standard for pleading a *Walker Process* claim is higher than that of an inequitable conduct claim. *See, e.g.*, Dkt. No. 70 at 6 ("*Walker Process* liability requires a higher, more specific showing of 'knowing and willful fraud' than the more inclusive inequitable conduct doctrine."), 7 ("Despite the heightened pleading standard required for *Walker Process* claims compared to inequitable conduct claims, Taiv merely incorporates by reference the deficient allegations in its inequitable conduct counterclaim, . . . [against] both MyChoice and BarBoards . . . ."). However, as Taiv points out in its response, looking at the full quote that Plaintiffs pulled out of context from *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295 (Fed. Cir. 2016), this statement of law is no longer true:

> We have previously explained that *Walker Process* liability requires a higher, more specific showing of "knowing and willful fraud" than the more inclusive inequitable conduct doctrine. . . . . After *Therasense,* the showing required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical.

812 F.3d at 1307. This misstatement is important because, as Plaintiffs admit, Taiv's pleading of the *Walker Process* counterclaim is referential and dependent upon its inequitable conduct counterclaim. In other words, the *Walker Process* counterclaim rises and falls with the inequitable conduct counterclaim. Noting that, it is difficult to see how Plaintiffs can claim they were not on notice of who is at the heart of the *Walker Process* claim. Considering that Taiv further alleges that Plaintiffs engaged in anticompetitive behaviors as a result of the inequitable conduct of Mr. Theriault and their knowledge of that, the Court finds those allegations to be sufficiently pleaded.

As to Plaintiffs market definition argument, "because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199–200 (2d Cir. 2001) (Sotomayor, J.) (collecting

cases); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481–82 (1992). The Court similarly finds that dismissal based on failure to properly define the market here, without consulting evidence outside of the pleadings—which the Court must view in the light most favorable to Taiv—would be inappropriate. Plaintiffs' other arguments for dismissal of the *Walker Process* counterclaim are even less availing. Accordingly, the motion to dismiss the Walker Process counterclaim should be **DENIED**.

Third, Plaintiffs argue that Taiv insufficiently pleaded its sham litigation counterclaim because (1) given the presumption of patent validity and the burden of clear and convincing evidence, it is rare that a plaintiff's claim meets the sham litigation exception requirements, which demand affirmative evidence of bad faith, and (2) Taiv's sham litigation counterclaim "amounts to conclusory assertions that this action is meritless and that it conceals [Plaintiffs'] attempt to interfere directly with the business of a competitor." Dkt. No. 70 at 13–14. To the first point, *Tyco Healthcare Grp. v. Mutual Pharma. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014), makes clear that it is rare for such claims to survive consideration of the *Noerr-Pennington* doctrine; however, as the Court noted earlier, it would be improper to consider that doctrine at this stage. To the second point, as Plaintiffs admit, the sham litigation counterclaim is once again dependent upon the inequitable conduct counterclaim. Dkt. No. 70 at 14. Dismissal is improper here because, if Plaintiffs' allegations are all true—namely those made in the inequitable conduct claim, with the added allegations that Plaintiffs knew "that the '658 [P]atent was fraudulently procured and is invalid or otherwise unenforceable" and "nevertheless" pursued this litigation to interfere with Taiv's business, see Dkt. No. 65 ¶ 38—then a sham litigation claim may be established. *See C.R. Bard, Inc. v. M3 Sys.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) (The Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.* "established the two-part criteria of

'sham' litigation: (1) the lawsuit must be objectively meritless such that 'no reasonable litigant could expect success on the merits' and (2) it must be found that 'the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor."'" (citations omitted)). Accordingly, the motion to dismiss the sham litigation counterclaim should be **DENIED**.

### D. Striking of Taiv's Fifth Counterclaim for Sham Litigation and Attempted Monopolization

Plaintiffs argue that Taiv's attempted monopolization claims, under both *Walker Process* and sham litigation theories, should be stricken as untimely. Dkt. No. 94 at 10. In support of this argument, Plaintiffs state that Taiv only disclosed these theories two days before the close of fact discovery, offered no justification for their late addition, and that they have been prejudiced by the inability to conduct fact discovery. *Id.* (first citing Dkt. No. 30 (Discovery Order); then citing Dkt. No. 71 (Docket Control Order); and then citing Dkt. No. 94-8 at *6–7 (Taiv's Second Amended Initial and Additional Disclosures)). In response, Taiv argues that there is no basis to strike because Plaintiffs failed to timely disclose BarBoards until three months after an exclusive licensing agreement was signed, Taiv did not discover the facts giving rise to its attempted monopolization claims until that disclosure, and Plaintiffs have had time to investigate since May. Dkt. No. 112 at 10. Plaintiffs do not continue to argue for striking in their reply. *See* Dkt. No. 124.

The sole authority cited by Plaintiffs is *Personalized Media Comm'cs, LLC v. Apple, Inc.*, No. 2:15-CV-1366, 2021 WL 357495, at *5 (E.D. Tex. Feb. 2, 2021). This Court in that case considered striking under Federal Rule of Civil Procedure 37 for a Rule 26 violation. *Id.* at *3. In that case, the Court only analyzed striking under Rule 37 due to a violation of the operative discovery order supplanting Rule 26 disclosures, which included a stipulated date of "January 5, 2016," by which the defendant was required to disclose the "legal theories" supporting its

14

"defenses." *Personalized Media Comm'cs, LLC v. Apple, Inc.*, No. 2:15-CV-1366, Dkt. No. 56 at 1 (E.D. Tex. Dec. 28, 2015). Here, however, no such stipulated date exists in the Discovery Order. *See* Dkt. No. 30. Plaintiffs argued no sufficient basis for this Court to strike Taiv's attempted monopolization counterclaims as untimely. Accordingly, the motion to strike the attempted monopolization counterclaims should be **DENIED**.

### E.  Summary Judgment of No Attempted Monopolization

Alternatively, Plaintiffs argue that Taiv's *Walker Process* and sham litigation counterclaims fail as a matter of law because there is no evidence of injury and Taiv cannot support the underlying attempted monopolization claim. Dkt. No. 94 at 10–15. Plaintiffs again assert *Noerr-Pennington* as a defense. Dkt. No. 94 at 10–12. Plaintiffs then argue that Taiv cannot show injury because (1) it has not disclosed its computation of damages or provided an expert report addressing damages from any attempted monopolization, and (2) has not shown that it has been injured, or that any relevant market (not competitor) may be injured. *Id.* at 12–13. Plaintiffs continue that the *Walker Process* theory specifically fails because it is dependent upon the inequitable conduct claim but requires a heightened showing of intent and materiality that Taiv cannot meet with the same, inadequate inequitable conduct evidence. *Id.* at 13–14. Plaintiffs then argue that the sham litigation theory fails because patents come with a presumption of validity, there is no evidence that this action is objectively meritless beyond Taiv's CEO's statements. *Id.* at 14–15. Plaintiffs conclude by arguing that Taiv's counterclaims fail for a lack of evidence for the underlying attempted monopolization claim. *Id.* at 15.

In response, Taiv argues that genuine issues of material fact preclude summary judgment on its attempted monopolization counterclaims. Dkt. No. 112 at 11–14. Taiv first argues that *Noerr-Pennington* is inapplicable because it has shown triable issues on its *Walker Process* and

15

sham litigation counterclaims. *Id.* at 11–12. Taiv then argues that it can establish injury because it seeks reasonable attorneys' fees for defending against the patent infringement action, trebled by statute, and for the antitrust claims it brought, and these damages will be calculated if Taiv prevails after the case has concluded. *Id.* at 12–13. Taiv points out that the standard is not higher, as the Court discussed earlier, for *Walker Process* claims post-*Therasense*. *Id.* at 12 n.2. Taiv finally argues that there is sufficient evidence to support the remaining antitrust issues because Mr. Theriault's emails show that "he leveraged patent assertions and this lawsuit . . . to solicit and attract commercial interest and promote his patent and 'exclusive' position among third-party TV streaming services, all while ignoring that he secured the '658 [P]atent by hiding information from the [PTO]. . . . And he did so . . . with BarBoards." *Id.* at 14. Taiv also states that its CEO, Mr. Palansky, will testify that "based on his personal knowledge, how Taiv has been harmed by their conduct and this lawsuit." *Id.* Taiv also argues that several pieces of evidence from Plaintiffs' own interrogatory responses support its claims: (1) BarBoards' "great commercial success" after promoting itself as the "only" patented solution, (2) the "market" includes only BarBoards and Taiv, who "directly compete" and impact each other's "market share," and (3) competition results in "price erosion" of BarBoards' products and services. *Id.*

Starting with Plaintiffs' argument that Taiv cannot show injury, the Federal Circuit considered and rejected similar arguments, facing similar facts, in *TransWeb*, 812 F.3d at 1310. The Federal Circuit there held that the antitrust-plaintiff's attorneys fees were "themselves both injury-in-fact and sufficiently stemming from the competition-reducing aspect of [antitrust-defendant]'s [patent enforcement] behavior to qualify as antitrust injury." *Id.* There, the antitrust defendant refused to license the antitrust plaintiff, a competitor, and that competitor was forced to cease competition altogether or defend a patent suit. *Id.* at 1311. The Federal Circuit concluded

16

that "harmful effects on competition would have resulted and [antitrust-plaintiff] would have undoubtably suffered an antitrust injury" because it "would have been forced out of the market and higher prices would have resulted." *Id.* Similarly, here, it is undisputed that the patent cannot be licensed to Taiv, and Taiv faces no option but to defend against this suit or cease operating. Taiv seeks recuperation of attorneys' fees, which the Federal Circuit has recognized as a sufficient antitrust injury in similar circumstances. Thus, a genuine issue of material fact exists, based on the evidence that Taiv presented in response, as to whether market harm would result from these circumstances, precluding summary judgment here. As to Plaintiffs' argument that these fees have not yet been calculated, that is not required at this stage.

Next, as Plaintiffs admit, *Walker Process* and sham litigation are exceptions to the *Noerr-Pennington* doctrine, so the Court considers whether summary judgment is proper on those first. As this Court just noted, based on Taiv's response, and previously addressed above, post-*Therasense*, the burden of proof is not higher for *Walker Process* claims compared to inequitable conduct claims. In fact, both the *Walker Process* and sham litigation claims, as Plaintiffs argue, are dependent upon the inequitable conduct claim, and the Court has already recommended denial of summary judgment of no inequitable conduct. The question is whether the elements of *Walker Process* and sham litigation, and the underlying attempted monopolization claim, are met, and the Court finds that there are still genuine issues of material fact as to whether they are, precluding summary judgment on both claims. Plaintiffs' other arguments are unavailing. Accordingly, the Court recommends that the motion for summary judgment of no attempted monopolization be **DENIED**.

## IV.   CONCLUSION

Accordingly, for the reasons provided above, it is recommended that the Court **DENY** the Motion to Dismiss and the Motion for Summary Judgment.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report **by noon on December 4, 2025**, may bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 28th day of November, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE