# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MYCHOICE, LLC and BARBOARDS, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 2:23-CV-00507-JRG-RSP |
| TAIV, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike Portions of Plaintiffs' Expert Reports filed by Defendant Taiv, Inc. (Dkt. No. 89). In the Motion, Defendant moves to strike various portions of the expert report of Joseph C. McAlexander III, Plaintiffs' technical expert. (*Id*. at 1). Having considered the motion and its related briefing, and for the reasons set forth herein, the motion is **GRANTED** only in part.

## I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making

Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting FED. R. EVID. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.   ANALYSIS

Defendant raises two grounds to exclude portions of the Mr. McAlexander's report: (a) he offers testimony that is inconsistent with the Court's claim construction and (b) he offers infringement positions that were not disclosed and/or are inconsistent with Plaintiffs' infringement contentions. (Dkt. No. 89 at 1). The Court addresses each in turn.

**(a) Claim construction**

Defendant moves to exclude certain portions of Mr. McAlexander's Rebuttal Report on the grounds that these paragraphs "address[] invalidity on [an] improper interpretation" of "detecting in real time." (Dkt. No. 89 at 2–5). The Court addresses each group of paragraphs below.

### (1) "real-time" opinions

Defendant first moves to exclude Mr. McAlexander's opinions that the MyChoice prior art system does not teach or suggest "real-time" detection. (Dkt. No. 89 at 2–4). Defendant argues that exclusion is warranted because the expert ties "real-time" to when a content stream will be displayed to a user, not the detection of undesirable content. (*Id.*; Dkt. No. 118 at 3). As support, Defendant points to Mr. McAlexander's opinions that the MyChoice system "intentionally delay[s]" a TV broadcast to account for lags in the detection process. (Dkt. No. 89 at 2 (citing Dkt. No. 102-3 ¶ 153)).

Plaintiffs argue in response that exclusion is unwarranted here. (Dkt. No. 102 at 1). Plaintiffs point out that the expert opines that "time-shifting" means "intentionally insert[ing] delays" in a stream. (*Id.* at 2 (citing Dkt. No. 102-4 at 43:5–12). Further, Plaintiffs assert that Mr.

3

McAlexander provides that the MyChoice system intentionally delays (time-shifts) content streams to account for lags in the detection process, rendering the content "no longer 'in real time.'" (*Id*.; Dkt. No. 132 at 2). According to Plaintiffs, these opinions "fall squarely within the Court's construction." (Dkt. No. 132 at 1).

Mr. McAlexander's report is consistent with the Court's claim construction. The Court construed "real-time" detection to be detection "without the content being time-shifted." (Dkt. No. 72 at 13). In accordance with the Court's construction, Mr. McAlexander opines that the MyChoice system "intentionally delay[s]" a "user's TV broadcast" to account for the time it takes to transmit the manual flagging of the beginning and end of commercial breaks from a central facility to the system. (Dkt. No. 102-3 ¶ 153).

Additionally, none of Defendant's arguments have persuaded the Court otherwise. The Court notes that, to reach its position, Defendant itself alters the Court's construction. (Dkt. No. 118 at 2). Specifically, Defendant asserts that the Court has construed "real-time" detection to mean "detecting undesirable content in a media stream as a stream is happening rather than detecting the undesirable content from a recorded version of the content that was previously streamed." (*Id*.). But that is not what the Court has said. (*See* Dkt. No. 72 at 13). Further, Mr. McAlexander has not improperly "connect[ed] the detecting step to the user." (*Id*. at 11). Instead, Mr. McAlexander's opinions are properly cabined to the content and are silent on the user's perception of that content. (Dkt. No. 102-3 ¶ 153). Exclusion on these grounds is improper.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### (2) "analyzing" opinions

Defendant then moves to exclude Mr. McAlenxder's opinions that differentiate the asserted claims from the Candelore and Durden prior art patents. (Dkt. No. 89 at 4). Defendant argues that

4

these opinions apply an interpretation of "detecting in real time" that is inconsistent with this Court's construction of the term. (*Id.*). Specifically, Defendant asserts that the expert improperly opines that the prior art patents do not meet the asserted claims because they do not "**analyze** the content stream in real time." (*Id.*). According to Defendant, "the claim does not require 'analyzing' anything." (*Id.*).

Plaintiffs argue in response that Defendant "manufacture[s] a conflict with the Court's construction." (Dkt. No. 102 at 4). Plaintiffs assert that, consistent with the Court's construction, these opinions provide that Candelore and Durden do not detect anything in real-time. (*Id.*). Instead, Plaintiffs contend that the prior art patents replace content that has been marked in advance of streaming. (*Id.*). According to Plaintiffs, "Mr. McAlexander's opinion that pre-analyzing the content to insert markers does not constitute 'detecting in real-time' is consistent with the Court's construction. (*Id.*).

The Court agrees with Plaintiffs. As noted above, detection must occur "without time-shifting the content." (Dkt. No. 72 at 13). In accordance with the Court's construction, Mr. McAlexander opines that the prior art patents do not disclose "detecting [undesirable content] in real time" because they disclose analyzing a content stream for undesirable content "**before** [content] is streamed," or, in other words, not in real time. (Dkt. No. 89-3 ¶¶ 192, 203). Defendant's arguments have not persuaded the Court otherwise.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**

**(b) Infringement contentions**

Defendant then moves to exclude three (3) portions of Mr. McAlexander's Infringement Report on the grounds that these portions "were not disclosed in Plaintiffs' infringement contentions. (Dkt. No. 89 at 6, 10, 12). The Court addresses each in turn.

*(1) "Taiv user" / "Advertiser user"*

Defendant first moves to exclude Mr. McAlexander's opinions that "user[s]" are Defendant's employees and advertisers. (Dkt. No. 89 at 6). Defendant asserts that these opinions exceed the scope of Plaintiffs' infringement contentions, which identify a "user" as an owner, manager, or employee of a bar, restaurant or venue using of Defendant's system. (*Id.*). Additionally, Defendant contends that, while Plaintiffs' amended infringement contentions clarified that "user[s]" are Defendant's employees and advertiser clients, the Court has excluded the amended infringement contentions. (*Id.* (citing Dkt. No. 84)). Plaintiffs do not oppose this portion of the motion. (*Id.*, fn. 3; Dkt. No. 102 at 4, fn. 1).

Accordingly, and as Plaintiffs do not oppose this portion of the motion, the Court finds that the same should be **GRANTED**.

*(2) Mode/scheduling and Advertiser Blacklist infringement theories*

Defendant then moves to exclude Mr. McAlexander's opinions that the (i) "modes" and (ii) "Advertising Blacklist" categories in Defendant's systems constitute the claimed "user preference indicating undesirability" that is stored in a database. (Dkt. No. 89 at 7). The Court addresses each of these opinions below.

*(i) "Mode" Theories*

Defendant first argues that Mr. McAlexander goes beyond Plaintiffs' infringement contentions by opining that the "Taiv box" (hardware between the venue's television and cable box) has "modes" that constitute "user preferences." (Dkt. No. 89 at 7). Defendant contends that, while the infringement contentions allege that the Taiv box detects undesirable content (commercials), the contentions are silent on any "user preference indicating undesirability." (*Id.* at 8). As support, Defendant alleges that Mr. McAlexander conceded that the "capability of

6

detecting commercials does not disclose any user preferences" when differentiating the segOne prior art system from the asserted claims. (*Id*. (citations omitted)).

Plaintiffs argue that Mr. McAlexander's opinions are consistent with their infringement contentions. (Dkt. No. 102 at 5–7; Dkt. No. 132 at 3). As support, Plaintiffs note that their infringement contentions allege that the Taiv box detects undesirable content (commercials) and stores user preferences (relevant and interesting content). (Dkt. No. 102 at 6 (citing Dkt. No. 102-5 at 2, 4)). Additionally, Plaintiffs argue that Defendant has not shown any inconsistencies between the infringement contentions and Mr. McAlexander's Rebuttal Report and deposition testimony. (*Id*. at 7 (citing Dkt. No. 102-4 at 97:18–20)).

Defendant has not shown that Mr. McAlexander has introduced a new infringement theory. *See Sol IP, LLC v. AT&T Mobility LLC*, 2020 WL 10045985, at *2 (E.D. Tex. Apr. 23, 2020). For example, Defendant asserts that Mr. McAlexander has conceded that detecting commercials does not disclose the existence of "user preferences," but the expert has not made such a concession. (Dkt. No. 89 at 8). Rather, Mr. McAlexander opines that the segOne prior art system's detection of commercials did not constitute "user preferences" because a "user had no ability to input user preferences." (Dkt. No. 89-3 ¶¶ 128; *see also* Dkt. No. 102-4 at 97:18–20). In other words, the prior art system detects and replaces all commercials, regardless of whether they are desirable to a user or not. These arguments do not bear upon Plaintiffs' infringement contentions, which clearly allege that the Taiv box considers "user preferences." (*See* Dkt. No. 102-5 at 2). As such, Defendant has not met its burden of showing that exclusion is warranted here.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### *(ii) "Blacklist" theories*

Defendant next argues that Mr. McAlexander goes beyond Plaintiffs' infringement contentions by opining that the Taiv box's advertising blacklist constitutes a "user preference indicating undesirability." (Dkt. No. 89 at 7). For the same reasons as above, Defendant asserts that Plaintiffs' infringement contentions are silent on these "user preferences." (*Id*.). Additionally, Defendant contends that, even if the infringement contentions have identified "user preferences," the advertising blacklist is unrelated to detecting commercials. (*Id*. at 9). Rather, Defendant insists that the advertising blacklist "merely allows a user to select categories of advertisements that the user does not want included in the Taiv substitute content loop used as the replacement content for 'commercials' in the live broadcast feed." (*Id*.).

Plaintiffs respond that Mr. McAlexander has not exceeded the scope of their infringement contentions. (Dkt. No. 102 at 6–8). For the same reasons as above, Plaintiffs assert that their infringement contentions do disclose "user preferences." (*Id*.). Plaintiffs also assert that a "blacklist" is related to "undesirable content," such as commercials. (Dkt. No. 102 at 8). As support, Plaintiffs note that Mr. McAlexander opines that a user may add undesirable content (commercials) to a "blacklist." (*Id*. (citing Dkt. No. 102-2 ¶ 139)).

Again, Defendant has failed to show that exclusion is warranted here. As discussed above, Defendant has not shown that the detection of commercials does not disclose user preferences. Moreover, the Court is not persuaded that blacklists and the detection of undesirable content are unrelated.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### *(3) Output device infringement theories*

Finally, Defendant moves to exclude Mr. McAlexander's opinions that the Taiv box is both the claimed "output device" and "monitoring station." (Dkt. No. 89 at 10). Defendant argues that these opinions exceed the scope of Plaintiffs' infringement contentions, which identify a cable box as the output device and the monitoring station as the Taiv box. (*Id*. (citing Dkt. No. 75-2)). Defendant insists that allowing Plaintiffs' new theories now would prejudice Defendant. (Dkt. No. 118 at 5).

Plaintiffs respond that Mr. McAlexender's opinion that the Taiv Box is an "output device" is not new. (Dkt. No. 102 at 9). As support, Plaintiffs point to their infringement contentions, which identify "[Defendant's] cable box" as an "output device." (*Id*. at 10 (citing Dkt. No. 102-5 at 2)). According to Plaintiffs, "[Defendant's] cable box" refers to the Taiv box as Defendant does not manufacture cable boxes. (*Id*.). Additionally, Plaintiffs argue that Defendant had sufficient notice of its Taiv Box theory through the infringement contentions. (*Id*. at 11). Plaintiffs note that Defendant identifies the same hardware as being the output device and monitoring station in the prior art reference "[b]ased on Plaintiffs' Infringement Contentions." (*Id*. at 12 (citations omitted)).

The Court is not persuaded that exclusion is appropriate here. Infringement contentions must "provide fair notice of a party's infringement theories." *RMail Limited v. Amazon.com, Inc.*, No. 2:10-cv-00258-JRG, 2019 WL 10375642, at *2 (E.D. Tex. Jun. 12, 2019). Plaintiffs provided such notice for this infringement theory. Indeed, Defendant has not disputed that it identified the same hardware as being both the output and monitoring station in the prior art reference based on Plaintiffs' infringement contentions. (*See* Dkt. No. 118).

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### III.   CONCLUSION

For the foregoing reasons, the motion (Dkt. No. 89) is **GRANTED** as to Mr. McAlexander's opinions that "user[s]" include Defendant's employees and advertisers and **DENIED** in all other respects.

Accordingly, it is **ORDERED** that ¶¶ 121-125, 144-155, 169-170, and 235-238 of Mr. McAlexander's Infringement Report are hereby **STRICKEN**.

**SIGNED this 1st day of December, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE